UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| **V.O.S. SELECTIONS, INC.**, et al.,<br><br>       Plaintiffs,<br><br>    v.<br><br>**DONALD J. TRUMP**, et al.,<br><br>       Defendants. | COURT NO. 25-00066 |

**BRIEF OF AMICI CURIAE**
**PRINCESS AWESOME, LLC, ET AL.**

MOLLY E. NIXON
JOSHUA M. ROBBINS
Pacific Legal Foundation
3100 Clarendon Boulevard, Suite 1000
Arlington, VA 22201
(202) 888-6881
MNixon@pacificlegal.org
JRobbins@pacificlegal.org

OLIVER J. DUNFORD
Pacific Legal Foundation
4440 PGA Blvd., Suite 307
Palm Beach Gardens, FL 33410
(916) 503-9060
ODunford@pacificlegal.org

*Attorneys for Amici Curiae*
*Princess Awesome, LLC, et al.*

**TABLE OF CONTENTS**

Table of Authorities ................................................................................................................ii

Interest of Amici Curiae ........................................................................................................ 1

Introduction ........................................................................................................................... 1

Law & Argument ................................................................................................................... 2

    I.    Amici and Plaintiffs Here Are Threatened With Existential Harm ................. 2

    II.   The New Tariffs Are Unlawful ........................................................................... 4

        A.    The President's actions are ultra vires ....................................................... 4

        B.    The Government's interpretation that the President has unbounded authority under IEEPA is dangerous ....................................................... 8

Conclusion ............................................................................................................................ 10

Certificate of Compliance .................................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

### Cases

*CPC Int'l Inc. v. United States*,
   896 F. Supp. 1240 (Ct. Int'l Trade 1995) .............................................................. 3

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ............................................................................................ 5–6

*Gibbons v. Ogden*,
   22 U.S. 1 (1824) ...................................................................................................... 6

*Gundy v. United States*,
   588 U.S. 128 (2019) ................................................................................................ 8

*Invenergy Renewables LLC v. United States*,
   422 F. Supp. 3d 1255 (Ct. Int'l Trade 2019) .......................................................... 4

*Metalcraft of Mayville, Inc. v. The Toro Co.*,
   848 F.3d 1358 (Fed. Cir. 2017) .............................................................................. 3

*In re Section 301 Cases*,
   524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021) .......................................................... 2

*United States v. Yoshida Int'l, Inc.*,
   526 F.2d 560 (C.C.P.A. 1975) ................................................................................ 7

*Yakus v. United States*,
   321 U.S. 414 (1944) ................................................................................................ 9

### Constitutional Provisions

U.S. Const. art. I, § 8, cl. 1 ............................................................................................ 4, 6

U.S. Const. art. I, § 8, cl. 3 ................................................................................................ 6

### Statutes

19 U.S.C. § 2132(a) ........................................................................................................ 7

28 U.S.C. § 2643(a)(1) .................................................................................................... 2

International Emergency Economic Powers Act of 1977

   50 U.S.C. §§ 1701–02 ............................................................................................ 5

   50 U.S.C. §§ 1701–10 ............................................................................................ 5

   50 U.S.C. § 1702(a)(1)(A), (B) .............................................................................. 5

   50 U.S.C. § 1702(b) ................................................................................................ 6

Nicaragua Human Rights and Anticorruption Act of 2018,
   Pub. L. No. 115-335 § 5, 132 Stat. 5019 (2018) .................................................... 8

Pub. L. No. 99-529 § 204, 100 Stat. 3010 (1986) .......................................................................... 7

The Tariff Act of 1922,
    ch. 356, § 315, 42 Stat. 858 ................................................................................................... 4

The Tariff Act of 1930,
    19 U.S.C. § 1338(a) ............................................................................................................... 4

The Trade Act of 1974,
    19 U.S.C. § 2132 .................................................................................................................... 4

**Other Authorities**

Campbell, Tom, *Presidential Authority to Impose Tariffs*,
    83 LA. L. REV. 595 (2023) ...................................................................................................... 6

Casey, Christopher A. & Elsea, Jennifer K., Cong. Rsch. Serv., R45618,
    *The International Emergency Economic Powers Act: Origins,*
    *Evolution, and Use* (2024) ................................................................................................. 7–8

H.R. Rep. No. 95-459 ..................................................................................................................... 7

Mem. in Supp. of Defs.' Mot. to Dismiss, ECF No. 15-1, *Vassiliades v.*
    *Blinken* (No. 1:24-cv-01952) (Sept. 17, 2024) ................................................................... 8–9

## INTEREST OF AMICI CURIAE

Princess Awesome, LLC; Stonemaier, LLC; 300 Below, Inc.; Upward Glance, LLC d/b/a Quent Cordair Fine Art; KingSeal Corporation d/b/a Wesco Enterprises, Inc.; Mischief, LLC d/b/a Mischief Toy Store; Spielcraft Games, LLC; Rookie Mage Games, LLC; XYZ Game Labs, Inc.; Tinkerhouse, Inc.; and Reclamation Studio, LLC d/b/a WitsEnd Mosaic, are Plaintiffs in the related case *Princess Awesome, LLC, et al. v. U.S. Customs & Border Protection, et al.*, Ct. Int'l Trade No. 1:25-cv-00078 (filed Apr. 24, 2025). Amici are small businesses in various fields—clothing, board games, and mechanical services. All but one directly import goods from abroad, and some have already paid additional tariffs under the President's new policies. Amici therefore raise claims similar to the claims raised in this case and in another related case, *State of Oregon, et al. v. Trump, et al.*, Ct Int'l Trade No. 1:25-cv-00077.

Amici submit this brief to emphasize the irreparable harm caused by the President's arbitrary and ever-changing tariff policy, and to supplement arguments presented by V.O.S. Selections, et al. By emphasizing certain points here, Amici do not waive, and expressly reserve, their right to raise all arguments against the President's new tariffs. Amici will present full arguments in support of their motion for summary judgment, to be filed next week in Case No. 1:25-cv-00078.

## INTRODUCTION

Amici import goods from Bangladesh, China, Italy, Peru, and Turkey. The President's sudden and dramatic increases in tariff amounts, together with the uncertainty of an ever-changing policy, threaten immediate and existential harm to Amici's ability to stay in business. Amici find it all but impossible to plan. They have

spent years developing relationships with overseas manufacturers, some of whom make specialized products that are unavailable domestically. Further, even if comprehensive domestic manufacturing were feasible in today's competitive global economy, it would take many years to re-establish these domestic industries—time that Amici do not have. Amici are doing everything they can to avoid passing the costs to their customers and to save their employees' jobs.

The uncertainty that exists is caused directly by the unilateral and arbitrary power arrogated by the President, who is acting either without congressional authorization or in unjustifiable reliance on a statute that transfers quintessentially legislative power to the President in violation of the Constitution.

## LAW & ARGUMENT

### I. AMICI AND PLAINTIFFS HERE ARE THREATENED WITH EXISTENTIAL HARM

Like plaintiffs, Amici filed their case under 28 U.S.C. § 1581. Amici seek both tariff refunds and damages pursuant to 28 U.S.C. § 2643(a).[1] Refunds are a well-established remedy in this Court. Some uncertainty exists, however, whether this Court may award refunds after liquidation, and the Government has advised Amici's counsel that it will not agree to suspend liquidation. The "potential unavailability of reliquidation or refund in this case sufficiently demonstrates irreparable harm." *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1362 (Ct. Int'l Trade 2021) (footnote omitted).

---

[1] Section 2643 provides: "The Court of International Trade may enter a money judgment" "against the United States in any civil action commenced under section 1581 … of this title." 28 U.S.C. § 2643(a)(1).

Additionally, calculating damages—from the loss of customers, loss of customers' good will, loss of business opportunities, costs of transferring manufacturing among foreign countries or from foreign countries to domestic manufacturers, time spent on these concerns rather than growing and expanding their businesses and maintaining client relationships, challenges to obtaining insurance and lines of credit during an ever-changing tariff regime, and the uncertainty throughout—is unreasonably difficult, if not impossible, in these circumstances. The inability to calculate losses is a well-recognized form of irreparable harm. *See, e.g.*, *Metalcraft of Mayville, Inc. v. The Toro Co.*, 848 F.3d 1358, 1368–69 (Fed. Cir. 2017); *c.f. also CPC Int'l Inc. v. United States*, 896 F. Supp. 1240, 1242–44 (Ct. Int'l Trade 1995) (Irreparable harm includes "costs, expenditures, business disruption or other financial losses" that plaintiff has "no legal redress to recover in court.").[2]

Finally, the tariffs themselves—and the President's arbitrary imposition and modifications—are causing significant uncertainty to Amici and plaintiffs here. As shown in the declarations attached to V.O.S. Selections' motion, small businesses subject to the tariffs make decisions many months in advance to account for customer orders, regulatory restrictions, expected costs and demand, and many other factors. *See, e.g.*, Mot. for PI, Ex. A (ECF No. 10, pp. 42–48), ¶¶ 20–24, 32–35; Ex. D (ECF

---

[2] Plaintiffs V.O.S. Selections, et al., confirm that American businesses would make efforts to buy domestic products if they were available at competitive prices. *See, e.g.*, Mot. for PI, Ex. D (ECF No. 10, pp. 57–62), ¶¶ 15–16; Ex. E (ECF No. 10, pp. 63–68), ¶¶ 8–10, 14–16. And American businesses cannot easily shift to domestic production because, among other reasons, the infrastructure does not exist, foreign manufacturers offer specialized services unavailable domestically, and additional cost. *See, e.g.*, Ex. D ¶ 13; Ex. E ¶¶ 12, 18–23. Amici face the same challenges and constraints.

No. 10, pp. 57–62), ¶¶ 19–23; Ex. E (ECF No. 10, pp. 63–68), ¶¶ 18–19. The arbitrarily imposed and ever-changing tariff policy presents business owners with vast uncertainty that threatens their ability to stay in business. This uncertainty also qualifies as irreparable harm. *See Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1291–92 (Ct. Int'l Trade 2019).

## II. THE NEW TARIFFS ARE UNLAWFUL

The dispositive question before the Court is whether the President has the authority to impose and modify tariffs under IEEPA. This case presents important questions concerning statutory interpretation, the Constitution's delegation of powers to specific branches, the nondelegation doctrine, the major questions doctrine, and the President's inherent authority under Article II. As a result, this Court may rule in plaintiffs' favor under any one of these rationales. Here, Amici will not reiterate the arguments already presented but will offer several points of emphasis.

### A. The President's actions are ultra vires

The Constitution delegated to Congress the power to "lay and collect . . . Duties [and] Imposts." U.S. Const. art. I, § 8, cl. 1. Consistent with this power, Congress has enacted many laws establishing tariffs and, under prescribed circumstances, authorizing the President to impose and adjust tariffs. *See, e.g.*, The Tariff Act of 1922, ch. 356, § 315, 42 Stat. 858, 941 (President may adjust "duties fixed in this Act"); Tariff Act of 1930, 19 U.S.C. § 1338(a) (President may "declare new or additional duties" upon a certain finding); Trade Act of 1974, 19 U.S.C. § 2132 (President may impose "a temporary import surcharge . . . in the form of duties").

But the statute on which the President relies for the tariffs at issue here—the International Emergency Economic Powers Act of 1977, 50 U.S.C. §§ 1701–10 (IEEPA)—says nothing at all about tariffs. Rather, IEEPA authorizes the President to "deal with an unusual and extraordinary threat with respect to" a declared national emergency. *Id.* §§ 1701–02. In this circumstance, the President may, "by means of instructions, licenses, or otherwise . . . investigate, regulate, or prohibit . . . any transactions in foreign exchange" and "regulate . . . any . . . importation [] of any property in which any foreign country or a national thereof has any interest by any person." *Id.* § 1702(a)(1)(A), (B).

Here, the President has not ordered an investigation or prohibited any transaction. The Government thus points to the President's authority to "regulate" certain transactions and the "importation" of certain "property," and the Government claims that these authorizations include the power to impose or modify tariffs. *See* Defs.' Resp. in Opp. to Mot. for Prelim. Inj. and Summ. J. (ECF No. 32), pp. 23–34. Amici Princess Awesome, et al., will explain in detail in their forthcoming dispositive motion the defects in the Government's argument. But some key points in addition to those submitted by plaintiffs (ECF No. 10) and other amici (ECF No. 31) are worth emphasizing.

First, the term "regulate" must be read in its "context and with a view to [its] place in the overall statutory scheme." *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (citation omitted). The Government's attempt to conflate the power over tariffs and the power to regulate foreign commerce runs afoul of the

Constitution, which grants those powers to Congress—distinctly. As noted above, Congress is delegated the power to "lay and collect . . . Duties[ and] Imposts." U.S. Const. art. I, § 8, cl. 1. *Separately*, the Constitution delegates to Congress the power to "regulate Commerce with foreign Nations." *Id.* art. I, § 8, cl. 3. The Supreme Court long ago recognized that the power to impose taxes and tariffs and the power to regulate commerce are "substantive, and distinct from each other." *Gibbons v. Ogden*, 22 U.S. 1, 201 (1824). Accordingly, considering the distinction between IEEPA—which nowhere provides for tariffs, duties, taxes, or any like term—and statutes that do authorize tariffs, there is no reason to assume that Congress intended to sweep the *tariff* power within the distinct power to *regulate* commerce. *See Brown & Williamson*, 529 U.S. at 143–44.

Second, IEEPA deals with sanctions necessitated by emergent and distinct threats. It has nothing to do with broad tax and economic policy. The nature of the exceptions to what the President can control pursuant to IEEPA reinforces that its authority is narrowly targeted. *See, e.g.*, Tom Campbell, *Presidential Authority to Impose Tariffs*, 83 LA. L. REV. 595, 606 (2023). IEEPA specifically excludes regulation of communications, "information or informational materials," donations, and "transactions ordinarily incident to travel" like baggage. 50 U.S.C. § 1702(b). None of these are the kinds of goods on which tariffs would be imposed. Thus, IEEPA authorizes the President to regulate or prohibit the importation or exportation of certain transactions and property. *See, e.g.*, Campbell, *supra* at 599–605. The President's tariffs, however, do nothing of the kind. He has not regulated or barred any *transactions* or

*property*; he has not sanctioned any individual nation, foreign national, or enemy group. Instead, the President has (purportedly) *taxed* all imports from all nations—while arbitrarily exempting certain industries or product lines.

Third, Congress itself has confirmed the limited scope of the President's authority—which does not include tariffs—under both IEEPA and its predecessor, the Trading with the Enemy Act (TWEA). Under TWEA, when Congress ratified related Presidential actions after the fact, it did so by amending TWEA itself rather than by passing a separate statute. Christopher A. Casey & Jennifer K. Elsea, Cong. Rsch. Serv., R45618, *The International Emergency Economic Powers Act: Origins, Evolution*, and Use 4 (2024) (1933 ratification of bank holiday); H.R. Rep. No. 95-459, at 5 (1941 ratification of "consumer credit controls"). The notable exception was the passage of the Trade Act of 1974, which gave the President temporary tariff authority to address balance-of-payments problems *separate* from TWEA, 19 U.S.C. § 2132(a), after President Richard Nixon imposed a 10% ad valorem tariff globally and defended it in court as an exercise of TWEA. *United States v. Yoshida Int'l, Inc.*, 526 F.2d 560, 567–68, 571 (C.C.P.A. 1975). There, Congress made a point of *not* ratifying the tariffs under TWEA.

Consistent with this approach, after the passage of IEEPA, Congress has enacted laws allowing the President to use his *economic-sanctions* power in non-emergency situations. Casey & Elsea, *supra* at 23. In 1986, Congress cross-referenced the presidential authorities in IEEPA "to assist the Government of Haiti in its efforts to recover" "assets" allegedly stolen by members of a former regime. Pub. L. No. 99-529

§ 204, 100 Stat. 3010 (1986). In 2018, Congress directed the President to use IEEPA "to block and prohibit" all property transactions of those the President determined supported human rights violations, the undermining of democratic processes and press outlets, and corruption in Nicaragua. Nicaragua Human Rights and Anticorruption Act of 2018, Pub. L. No. 115-335 § 5, 132 Stat. 5019 (2018). Indeed, authorizing the President to impose economic sanctions in nonemergency situations using his IEEPA authorities is a decades-long practice of Congress. Casey & Elsea, *supra*, at 23–24 (compiling statutes). Congress's marked silence with respect to tariffs under IEEPA is deafening.

### B. The Government's interpretation that the President has unbounded authority under IEEPA is dangerous

If, however, the Government is correct that IEEPA allows the President to make tariff policy, IEEPA violates the nondelegation doctrine. The Government's arguments, rather than showing a narrow delegation, offer a striking theory of nearly unbridled executive discretion that clashes with the Constitution and poses a long-term threat to individual liberty.

First, IEEPA provides no principle—much less an intelligible principle—to "guide the [President's] use of discretion." *Gundy v. United States*, 588 U.S. 128, 132, 135 (2019). The government, however, finds this defect a feature, not a bug. Less than a year ago, the government asserted that IEEPA "sets forth *no standards* from which the Court could judge the President's selection of designation criteria [for sanctioned individuals] or determine whether specific criteria effectively address an unusual and extraordinary threat to the United States' interests[.]" Mem. in Supp. of Defs.' Mot.

to Dismiss at 13, ECF No. 15-1, *Vassiliades v. Blinken* (No. 1:24-cv-01952) (Sept. 17, 2024) (emphasis added). The government went on: "Congress did not define the terms 'national emergency' or 'deal with,' nor impose any conditions or restrictions in IEEPA that would limit the President's authority to decide the circumstances in which individuals' property and interests in property should be blocked pursuant to a national emergency." *Id.* at 19.

But if courts have no standards by which to judge the President's actions, then no intelligible principles exist to guide the President's actions, much less "sufficiently definite and precise" standards "to enable Congress, the courts and the public to ascertain whether the" President has conformed to the law. *Yakus v. United States*, 321 U.S. 414, 427 (1944).

If the government's contention, that IEEPA places effectively no limits on the President's authority is correct, then it's both an admission that Congress delegated power without providing an intelligible principle and a dangerous argument for virtually unlimited executive discretion.

\* \* \*

## CONCLUSION

Amici respectfully urge the Court to rule that the new tariffs imposed by the President are unlawful—and to do so expeditiously in this case and in the related cases.

DATED MAY 8, 2025.

                                        Respectfully submitted,

                                        */s/ Oliver J. Dunford*
                                        OLIVER J. DUNFORD
                                        Pacific Legal Foundation
                                        4440 PGA Blvd., Suite 307
                                        Palm Beach Gardens, FL 33410
                                        (916) 503-9060
                                        ODunford@pacificlegal.org

                                        MOLLY E. NIXON
                                        JOSHUA M. ROBBINS
                                        Pacific Legal Foundation
                                        3100 Clarendon Boulevard, Suite 1000
                                        Arlington, VA 22201
                                        (202) 888-6881
                                        MNixon@pacificlegal.org
                                        JRobbins@pacificlegal.org

                                        *Attorneys for Amici Curiae*
                                        *Princess Awesome, LLC, et al.*

## CERTIFICATE OF COMPLIANCE

Pursuant to U.S. Court of International Trade's Standard Chambers Procedures, undersigned counsel certifies this brief complies with the Court's type-volume limitation rules. This brief contains no more than 2,393 words. This brief also complies with all typeface and margin requirements.

*/s/Oliver J. Dunford*
OLIVER J. DUNFORD