**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:     THE HONORABLE GARY S. KATZMANN, JUDGE
            THE HONORABLE TIMOTHY M. REIF, JUDGE
            THE HONORABLE JANE A. RESTANI, JUDGE

| | | |
|---|---|---|
| V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | Court No. 25-00066 |
| v. | ) ) | |
| DONALD J. TRUMP in his official capacity, EXECUTIVE OFFICE OF THE PRESIDENT, THE UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES in his official capacity, JAMIESON GREER in his official capacity, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, and HOWARD LUTNICK in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

| | | |
|---|---|---|
| THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, and THE STATE OF VERMONT, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Court No. 25-00077 |
| v. | ) ) ) | |
| DONALD J. TRUMP, in his capacity as President of the United States; DEPARTMENT OF HOMELAND | ) ) ) ) | |

SECURITY; KRISTI NOEM, in her official          )
capacity as Secretary of the Department of       )
Homeland Security; UNITED STATES                 )
CUSTOMS AND BORDER PROTECTION;                   )
PETER R. FLORES, in his official capacity as     )
Acting Commissioner for U.S. Customs and         )
Border Protection; and THE UNITED                )
STATES,                                          )
                                                 )
          Defendants.                            )
_____)

## **<u>ORDER</u>**

Upon consideration of defendants' motion for a stay of the enforcement of judgments entered May 28, 2025, to permanently enjoin the United States from collecting tariffs collected pursuant to Executive Orders, it is hereby

ORDERED that defendants' motion is granted, and it is further

ORDERED that the effectuation of Slip Op. 25-66 and judgments (*V.O.S. Selections, Inc. v. Trump*, Court No. 25-00066, ECF No. 56; *Oregon v. Trump*, Court No. 25-00077, ECF No. 66) is hereby stayed pending the entry of a final and conclusive judgment after all appeals.

SO ORDERED.

Dated:_____                    _____
          New York, New York                              JUDGE

## TABLE OF CONTENTS

BACKGROUND ................................................................................................................ 3

ARGUMENT ..................................................................................................................... 4

    I.    Legal Standards................................................................................................. 4

    II.    Defendants Will Suffer Irreparable Harm Absent A Stay ................................. 5

    III.    A Stay Will Not Substantially Injure Other Parties ........................................ 8

    IV.    The Public Interest Is Served By A Stay ....................................................... 9

CONCLUSION.................................................................................................................. 11

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Vance,*
570 F.2d 950 (D.C. Cir. 1978) ........................................................................................ 6

*Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States,*
751 F.2d 1239 (Fed. Cir. 1985) ..................................................................................... 11

*Califano v. Yamasaki,*
442 U.S. 682 (1979) ........................................................................................................ 7

*Florsheim Shoe Co. v. United States,*
744 F.2d 787 (Fed. Cir. 1984) ...................................................................................... 11

*Gill v. Whitford,*
585 U.S. 48 (2018) .......................................................................................................... 7

*Global Dynamics, LLC v. United States,*
138 Fed. Cl. 207 (2018) ................................................................................................. 9

*Heraeus-Amersil, Inc. v. United States,*
1 C.I.T. 270 (1981) ......................................................................................................... 9

*Hilton v. Braunskill,*
481 U.S. 770 (1987) ........................................................................................................ 5

*Holder v. Humanitarian L. Project,*
561 U.S. 1 (2010) ............................................................................................................ 7

*Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.,*
17 F.3d 691 (4th Cir. 1994) ........................................................................................... 8

*Humane Soc. of U.S. v. Clinton,*
236 F.3d 1320 (Fed. Cir. 2001) ................................................................................. 5, 11

*Labrador v. Poe ex rel. Poe,*
144 S. Ct. 921 (2024) ...................................................................................................... 7

*Maple Leaf Fish Co. v. United States,*
762 F.2d 86 (Fed. Cir. 1985) ........................................................................................ 11

*Marshall Field & Co. v. Clark,*
143 U.S. 649 (1892) ........................................................................................................ 6

*MediNatura, Inc. v. FDA,*
998 F.3d 931 (D.C. Cir. 2021) ....................................................................................... 9

*Nken v. Holder,*
    556 U.S. 418 (2009)...................................................................................... 4

*PrimeSource Bldg. Prods., Inc. v. United States,*
    535 F. Supp. 3d 1327 (Ct. Int'l Trade 2021) ................................................ 9

*Scripps-Howard Radio, Inc. v. FCC,*
    316 U.S. 4 (1942)........................................................................................... 4

*Standard Havens Prods., Inc. v. Gencor Indus., Inc.,*
    897 F.2d 511 (Fed. Cir. 1990) ...................................................................... 5

*Sunpreme Inc. v. United States,*
    2017 WL 65421 (Ct. Int'l Trade Jan. 5, 2017) ............................................ 8

*Trump v. Hawaii,*
    585 U.S. 667 (2018)....................................................................................... 7

*United States v. Bush & Co.,*
    310 U.S. 371 (1940)..................................................................................... 11

*United States v. Yoshida Int'l, Inc.,*
    526 F.2d 560 (C.C.P.A. 1975) .................................................................... 10

*Winter v. NRDC,*
    555 U.S. 7 (2008)........................................................................................... 9

*Ziglar v. Abbasi,*
    582 U.S. 120 (2017)....................................................................................... 5

**Constitutional Provisions**

U.S. Const. art. II, § 2 ........................................................................................ 5

**Statutes**

50 U.S.C. § 1702................................................................................................ 10

**Rules**

USCIT Rule 62(d)................................................................................................ 4

USCIT Rule 62(e)................................................................................................ 5

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:      THE HONORABLE GARY S. KATZMANN, JUDGE
             THE HONORABLE TIMOTHY M. REIF, JUDGE
             THE HONORABLE JANE A. RESTANI, JUDGE

|  |  |  |
|---|---|---|
| V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Court No. 25-00066 |
| v. | ) ) ) | |
| DONALD J. TRUMP in his official capacity, EXECUTIVE OFFICE OF THE PRESIDENT, THE UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES in his official capacity, JAMIESON GREER in his official capacity, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, and HOWARD LUTNICK in his official capacity, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) ) | |

|  |  |  |
|---|---|---|
| THE STATE OF OREGON, THE STATE OF ARIZONA, THE STATE OF COLORADO, THE STATE OF CONNECTICUT, THE STATE OF DELAWARE, THE STATE OF ILLINOIS, THE STATE OF MAINE, THE STATE OF MINNESOTA, THE STATE OF NEVADA, THE STATE OF NEW MEXICO, THE STATE OF NEW YORK, and THE STATE OF VERMONT, | ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Court No. 25-00077 |
| v. | ) ) ) | |

DONALD J. TRUMP, in his capacity as          )
President of the United States;              )
DEPARTMENT OF HOMELAND                       )
SECURITY; KRISTI NOEM, in her official       )
capacity as Secretary of the Department of   )
Homeland Security; UNITED STATES             )
CUSTOMS AND BORDER PROTECTION;               )
PETER R. FLORES, in his official capacity as )
Acting Commissioner for U.S. Customs and     )
Border Protection; and THE UNITED            )
STATES,                                      )
                                             )
     Defendants.                            )
_____)

## MOTION FOR A STAY
## OF ENFORCEMENT OF JUDGMENT PENDING APPEAL

Pursuant to Rule 62 of the Rules of this Court, defendants respectfully request that the Court stay the enforcement of its judgments of May 28, 2025, pending defendants' appeal. *V.O.S. Selections, Inc. v. Trump*, Court No. 25-00066, ECF No. 56; *Oregon v. Trump*, Court No. 25-00077, ECF No. 66. We have already filed notices of appeal in both cases. Given the significance of these issues and the effects of this Court's order, defendants intend to expeditiously seek a stay from the Federal Circuit and will of course relay the Court's decision on this motion to the Federal Circuit immediately.

It is critical, for the country's national security and the President's conduct of ongoing, delicate diplomatic efforts, that the Court stay its judgment. The harm to the conduct of foreign affairs from the relief ordered by the Court could not be greater. Absent a stay, the Secretary of State warns that the Court's decision "would cause significant and irreparable harm to U.S. foreign policy and national security" and "threaten broader U.S. strategic interests internationally." Rubio Decl. ¶ 3. The U.S. Trade Representative notes that the Court's decision will cause a "foreign policy disaster scenario." Greer Decl. ¶ 12. It "would destroy" a carefully negotiated agreement with China and "severely disrupt the Department of Commerce's

coordination of foreign policy-related economic actions on behalf of the President," according to the Secretary of Commerce.  Lutnick Decl. ¶¶ 15, 19.  And it will threaten to "shatter our negotiations with dozens of countries" and will create an immediate risk that our trading partners "feel a renewed boldness to take advantage of" a perceived "new vulnerability by retaliating against the United States," as the Treasury Secretary warns.  Bessent Decl. ¶¶ 10-11.

By contrast, a stay will not harm plaintiffs. Even if the judgments were affirmed on appeal, plaintiffs still would not be harmed because defendants will issue refunds as directed by the Court, including any post-judgment interest that accrues during the pendency of the appeal. A stay of the enforcement of judgment would merely preserve the *status quo* during the pendency of our appeal.

If the Court denies this motion, defendants respectfully request an administrative stay of the judgment for seven days to allow time for the Federal Circuit and, if necessary, the Supreme Court to consider a stay.

## BACKGROUND

Plaintiffs, several purported importers and 12 states, filed separate suits in April 2025, challenging the President's invocation of the International Emergency Economic Powers Act (IEEPA) to impose tariffs on imports in response to reciprocal trade barriers and the flow of illicit drugs like fentanyl across through the nation's borders.  *V.O.S.*, Compl., ECF No. 2; *Oregon*, Compl., ECF No. 2.  Specifically, plaintiffs argued that Executive Orders 14,257, 14,193, 14,194, 14,195, and other amending orders, are unlawful.  *Id.*

The *V.O.S.* plaintiffs filed an omnibus motion for a temporary restraining order, preliminary injunction, and summary judgment.  This Court denied the request for a temporary restraining order, recognizing that plaintiffs did not face imminent irreparable harm.  *V.O.S.*,

ECF No. 13.  On May 6, 2025, the parties completed briefing the motion.  *V.O.S.*, ECF No. 47.

The Court held a hearing on May 13, 2025.  *V.O.S.*, ECF No. 50.

The *Oregon* plaintiffs, meanwhile, filed a motion for a preliminary injunction, which the

Court construed as a motion for summary judgment.  *Oregon*, ECF Nos. 14, 15, and 18.  On May

20, 2025, the parties completed briefing the motion.  *Oregon*, ECF No. 47.  The Court held a

hearing on May 21, 2025.  *Oregon*, ECF No. 59.

On May 28, 2025, the Court granted judgment in favor of plaintiffs, holding invalid as

contrary to law Executive Orders 14,193, 14,194, 14,195, 14,257, and all modifications and

amendments thereto.  Slip Op. 25-66; *V.O.S.*, ECF Nos. 55, 56; *Oregon*, ECF Nos. 65, 66.  The

Court held that IEEPA does not authorize the tariffs first imposed by Executive Order 14,257,

and that the opioid-related tariffs do not deal with the declared threats.  *Id.* at 48.  The

accompanying judgments further enjoined the operation of the Executive Orders on a nationwide

basis, ignoring the requirements for class certification under the Court's rules.  *V.O.S.*, ECF No.

56; *Oregon*, ECF No. 66.

## ARGUMENT

### I.    Legal Standards

"The power to stay a judgment pending appeal is part of a court's 'traditional equipment

for the administration of justice.'"  *Nken v. Holder*, 556 U.S. 418, 427 (2009) (quoting *Scripps-

Howard Radio, Inc. v. FCC*, 316 U.S. 4, 9-10 (1942)).  The purpose of a stay pending appeal is

to preserve the *status quo* so that the appellate court may take the necessary time to make a

reasoned decision.  *Id.* at 429-30.  Rule 62(d) of the Rules of this Court applies to stays of

judgments granting injunctions pending an appeal.  Rule 62(d) provides that "the court may

suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the

opposing party's rights."  Rule 62(e) eliminates the bond requirement "when granting a stay on an appeal by the United States."

The four factors relevant to issuance of a stay of judgment pending appeal are well established:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Hilton v. Braunskill*, 481 U.S. 770, 776 (1987) (citations omitted); *see also Standard Havens Prods., Inc. v. Gencor Indus., Inc.,* 897 F.2d 511, 512 (Fed. Cir. 1990).  As discussed below, all four factors support granting defendants' motion.

## II.    Defendants Will Suffer Irreparable Harm Absent A Stay

The United States faces irreparable harm absent a stay of the Court's judgments enjoining the challenged tariffs on a nationwide basis and granting relief to countless parties that are not before the Court.  The Constitution grants the President the power to conduct foreign affairs and manage national security.  U.S. Const. art. II, § 2; *see also Ziglar v. Abbasi*, 582 U.S. 120, 123 (2017) ("National-security policy . . . is the prerogative of Congress and the President."); *Humane Soc. of U.S. v. Clinton*, 236 F.3d 1320, 1329 (Fed. Cir. 2001) ("in cases in which international relations are concerned, the President plays a dominant role").  Respectfully, the Court erred by interfering with the President's ability to conduct foreign affairs and manage national security.  It should at minimum enter a stay to limit the irreparable harm to national security and ongoing diplomatic efforts while defendants appeal.

In the underlying Executive Orders, the President declared national emergencies in light of what he found to be unusual and extraordinary threats to national security.  Those findings touched off negotiations with dozens of countries to address the emergencies.  Bessent ¶ 7; Greer

Decl. ¶ 9; Lutnick Decl. ¶ 11; Rubio Decl. ¶ 9.  Those negotiations have been one of the country's top foreign policy priorities and the focus of much of the country's diplomatic efforts since early April.  Bessent Decl. ¶ 9; Greer Decl. ¶ 10; Lutnick Decl. ¶ 10; Rubio Decl. ¶ 11.

A stay is critical to avoid immediate irreparable harm to United States foreign policy and national security.  The Court's ruling that IEEPA does not authorize the President's tariffs and that the President's chosen means to deal with unusual and extraordinary threats are not only reviewable by courts but somehow unauthorized by IEEPA, undermines these foreign policy objectives and jeopardizes ongoing negotiations with dozens of countries by severely constraining the President's leverage and undermining the premise of the ongoing negotiations. Lutnick Decl. ¶ 15; Greer Decl. ¶¶ 11-12; Rubio Decl. ¶ 12; Bessent Decl. ¶ 11.  If a stay is not entered, an injunction "creates a foreign policy disaster scenario," Greer Decl. ¶ 12, causing "significant and irreparable harm to U.S. foreign policy and national security," and "threaten[ing] broader U.S. strategic interests nationally."  Rubio Decl. ¶ 3.  *See Marshall Field & Co. v. Clark*, 143 U.S. 649, 691 (1892) ("it is often desirable, if not essential . . . to invest the "[P]resident with large discretion in matters arising out of the execution of statutes relating to trade and commerce with other nations").   As the D.C. Circuit has explained, "[t]his country's interests in regard to foreign affairs and international agreements may depend on the symbolic significance to other countries of various stances and on what is practical with diplomatic interaction and negotiation. Courts are not in a position to exercise a judgment that is fully sensitive to these matters." *Adams v. Vance*, 570 F.2d 950, 954-55 (D.C. Cir. 1978).

Moreover, the Court's ruling precludes the President from using his powers under IEEPA to meaningfully respond to other threats.  The very point of IEEPA, as distinct from the President's other tariff authorities, is to enable swift and flexible action in response to national

emergencies.  The Supreme Court has repeatedly recognized that the national security and foreign policy areas present "evolving threats," *Holder v. Humanitarian L. Project*, 561 U.S. 1, 34 (2010), and the President must therefore have "flexible authority" to address foreign policy interests, *Trump v. Hawaii*, 585 U.S. 667, 696 (2018).  But this Court's ruling removes all such flexibility.  Other tariff tools do not provide emergency authority to deal with serious threats in real time.  Because they were not designed to address emergencies, their procedural prerequisites inject substantial delay into the Government's response—for instance, up to 375 days, more than a whole year, under Section 232.  Lutnick Decl. ¶ 14.  Where the emergencies confronting our nation include those that in the President's judgment have "hollow[ed] out" our manufacturing base, rendered "U.S. supply chains vulnerable to geopolitical disruption," and "rendered our defense-industrial base dependent on foreign adversaries," Executive Order 14257, 90 Fed. Reg. 15,041 (Apr. 7, 2025), the irreparable harm caused by the invalidation of the IEEPA tariffs is self-evidently immediate, grave, and enduring.

At a minimum, the Court should stay injunctive relief as it applies to nonparties.  As the Supreme Court has explained, the touchstone of appropriate relief is the injury to the plaintiff: Article III requires that "a plaintiff's remedy must be limited to the inadequacy that produced his injury," *Gill v. Whitford*, 585 U.S. 48, 66 (2018) (quotation omitted), while traditional principles of equity require that an injunction be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs."  *Califano v. Yamasaki*, 442 U.S. 682, 702 (1979).  The Supreme Court has accordingly stayed relief running solely to nonparties that was unnecessary to provide relief to the plaintiffs.  *See Labrador v. Poe ex rel. Poe*, 144 S. Ct. 921 (2024).

The Court did not reconcile its sweeping relief with those principles or conclude that such relief was necessary to protect the plaintiffs before it.  It instead declared that there is "no

question here of narrowly tailored relief" because the tariffs would be equally unlawful as to both plaintiffs and non-plaintiffs. Slip Op. 25-66 at 48. But the mere fact that a court might reach the same legal conclusion as to non-parties does not justify the entry of relief wholly unnecessary to remedy a plaintiff's injury. Nor does the Tax Uniformity Clause operate to expand the powers of federal courts to grant relief wholly unnecessary to remedy the injury to the plaintiffs before the court. Particularly given the substantial harms to the government and the public interest from the Court's order and the absence of any consideration of the equities by the Court, narrowing the injunction to focus on the parties actually before the Court is imperative.

## III.    A Stay Will Not Substantially Injure Other Parties

In sharp contrast to the extraordinary harm to defendants, a stay will not substantially injure the plaintiffs. For any plaintiff who is an importer, even if a stay is entered and we do not prevail on appeal, plaintiffs will assuredly receive payment on their refund with interest. "[T]here is virtually no risk" to any importer that they "would not be made whole" should they prevail on appeal. *See Sunpreme Inc. v. United States*, 2017 WL 65421, at *5 (Ct. Int'l Trade Jan. 5, 2017). The most "harm" that could incur would be a delay in collecting on deposits. This harm is, by definition, not irreparable. *See Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994). Plaintiffs will not lose their entitlement to refund, plus interest, if the judgment is stayed, and they are guaranteed payment by defendants should the Court's decision be upheld. And defendants do not oppose the reliquidation of any entries of goods subject to IEEPA duties paid by plaintiffs that are ultimately found to be unlawful after appeal. Defendants have filed a stipulation to that effect with other importer-plaintiffs in *Princess Awesome v. CBP*, No. 25-cv-78 (Ct. Int'l Trade) ECF No. 17.

In contrast, if defendants subsequently prevail on appeal, the unpaid tariffs during the pendency of the appeal may not be fully recoverable. Indeed, in the Section 232 litigation,

*Transpacific Steel LLC v. United States*, 19-cv-00009 (Ct. Int'l Trade), the United States issued refunds pursuant to the trial court's injunction, and was unable to recover payment for those duties from some importers after the tariffs were ultimately upheld on appeal.

As a result, plaintiffs would not be substantially injured and a stay would appropriately preserve the *status quo* until the appeals process has been finalized.

## IV.    The Public Interest Is Served By A Stay

The balance of equities and the public interest—which merge where, as here, "the government is the party" against whom an injunction is sought, *MediNatura, Inc. v. FDA*, 998 F.3d 931, 945 (D.C. Cir. 2021)—strongly favor a stay. The public interest requires that the President be able to take all appropriate and feasible action to swiftly address identified threats to the United States' economy, military preparedness, and national security.  *See Winter v. NRDC*, 555 U.S. 7, 24 (2008); *PrimeSource Bldg. Prods., Inc. v. United States*, 535 F. Supp. 3d 1327, 1335 (Ct. Int'l Trade 2021) (concluding that "the public interest favors allowing the government to exercise its lawful authority" and granting stay pending appeal).  But the Court's injunction hamstrings the President, preventing him from exercising his judgment as to what action is most likely to address a particular emergency.  This is particularly harmful in trade negotiations.  It does not serve the public interest for sensitive trade negotiations to grind to a halt, or result in unfavorable terms for the United States, before appellate review of this Court's decision.

Further, protecting the public fisc is an important consideration in deciding whether to stay the enforcement of a judgment pending the resolution of an appeal.  *See, e.g., Heraeus-Amersil, Inc. v. United States*, 1 C.I.T. 270, 270 (1981); *Global Dynamics, LLC v. United States*, 138 Fed. Cl. 207, 211 (2018) ("protecting the public fisc is . . . a strong public interest" (cleaned up)).  Any potentially irrecoverable funds (and, to the extent refunds and entries without the tariffs are recoverable, what would essentially be an extended loan) continue to perpetuate the

circumstances that have atrophied the domestic manufacturing industry, the national emergency and national security objectives that the tariffs were designed to protect.

## IV.    The United States Is Likely To Succeed On Appeal

The Court should also stay its order because defendants are likely to prevail on appeal. These Executive Orders are valid exercises of the broad authority Congress granted the President in IEEPA.  The statute expressly authorizes the President to "regulate . . . importation."  50 U.S.C. § 1702.  The Court held—in contravention of binding precedent—that the President acted outside his delegated authority in IEEPA when implementing the reciprocal tariffs.  Slip Op. 25-66 at 35-36.  The Court also improperly reviewed the merits of the President's chosen means to address the national emergency related to fentanyl trafficking, holding that those tariffs fell outside the authority granted by IEEPA.  *Id.* at 46-47.

There is a substantial likelihood that the Federal Circuit will disagree with this Court's decision on appeal.  That is precisely what occurred in *Yoshida*.  After the trial court originally held that the "regulate . . . importation" language in TWEA did not authorize tariffs, the appellate court reversed.  The Federal Circuit's predecessor concluded that the very same language that today exists in IEEPA gave President Nixon the power to impose an import duty surcharge. *United States v. Yoshida Int'l, Inc.*, 526 F.2d 560, 576 (C.C.P.A. 1975).

Although this Court agreed that *Yoshida* concluded that "regulate . . . importation" in TWEA authorizes tariffs, it determined that *Yoshida* "upheld the tariffs on the basis that they were limited, 'which is quite different from imposing whatever tariff rates he deems desirable.'" Slip Op. 25-66 at 29 (quoting *Yoshida*, 526 F.2d at 578).  The Court concluded that IEEPA's text must be read narrowly, to not authorize the reciprocal tariffs, in order to avoid separation of powers and non-delegation concerns.  *Id.* at 28.  The Court reached this conclusion without

explaining why the major-questions doctrine could apply here or identifying any similar law that raised non-delegation problems.

The Court's review of the President's chosen means to address the threats he identified, for its part, contravened Federal Circuit precedent that, following the Supreme Court's lead, has repeatedly concluded that the President's "motives, his reasoning, his finding of facts requiring the action, *and his judgment*, are immune from judicial scrutiny." *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 796 (Fed. Cir. 1984) (emphasis added); *see, e.g., Am. Ass'n of Exporters & Importers-Textile & Apparel Grp. v. United States*, 751 F.2d 1239, 1248 (Fed. Cir. 1985); *Maple Leaf Fish Co. v. United States*, 762 F.2d 86, 89 (Fed. Cir. 1985) (same); *Humane Society*, 236 F.3d at 1330; *United States v. Bush & Co.*, 310 U.S. 371, 380 (1940) ("For the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains."). And even if the Court could review the question, the Court did not justify its conclusion that IEEPA does not permit the use of tariffs to pressure another country to directly "deal with" a problem within that country.

The Federal Circuit will review questions regarding the interpretation of IEEPA, Presidential powers, and constitutional matters *de novo* and is likely to hold that the President acted within his properly delegated authority and did not clearly misconstrue IEEPA in imposing the challenged tariffs. This Court should grant a stay pending appeal.

## CONCLUSION

For these reasons, we respectfully request that Court stay enforcement of its judgments pending resolution of all appeals.

If the Court denies this motion, defendants respectfully request an administrative stay of the judgments for seven days to allow time for the Federal Circuit to consider a motion to stay and request for administrative stay.

DATED: May 28, 2025                                 Respectfully submitted,

OF COUNSEL:                                         YAAKOV M. ROTH
                                                    Acting Assistant Attorney General
ALEXANDER K. HAAS
Director                                            ERIC J. HAMILTON
                                                    Deputy Assistant Attorney General
STEPHEN M. ELLIOTT
Assistant Director                                  PATRICIA M. McCARTHY
U.S. Department of Justice                          Director
Civil Division
Federal Programs Branch                             /s/ Claudia Burke
                                                    CLAUDIA BURKE
                                                    Deputy Director

                                                    /s/ Justin R. Miller
                                                    JUSTIN R. MILLER
                                                    Attorney-In-Charge
                                                    International Trade Field Office

                                                    /s/ Sosun Bae
                                                    SOSUN BAE
                                                    Senior Trial Counsel
                                                    LUKE MATHERS
                                                    CATHERINE M. YANG
                                                    BLAKE W. COWMAN
                                                    COLLIN T. MATHIAS
                                                    Trial Attorneys
                                                    U.S. Department of Justice
                                                    Civil Division
                                                    Commercial Litigation Branch
                                                    PO Box 480, Ben Franklin Station
                                                    Washington, DC 20044
                                                    (202) 305-7568
                                                    sosun.bae@usdoj.gov

                                                    *Attorneys for Defendants*

12

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 3,131 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

/s/ Sosun Bae
SOSUN BAE