IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Gary S. Katzmann, Judge; Honorable
Timothy M. Reif, Judge; Honorable Jane A. Restani, Judge

| | |
|---|---|
| V.O.S. Selections, Inc., *et al.*<br><br>    Plaintiffs,<br><br>v.<br><br>Donald J. Trump, *et al.*,<br><br>    Defendants. | Case No. 25-00066-GSK-TMR-JAR |

**Plaintiffs' Response in Opposition to Defendants' Motion
for a Stay of Enforcement of Judgment Pending Appeal**

# Table of Contents

Table of Authorities....................................................................................... ii

Introduction ...................................................................................................1

Legal Standard ..............................................................................................1

Argument .......................................................................................................2

   I.     Plaintiffs will suffer irreparable harm if a stay is granted. ...........2

   II.    The Government will not suffer irreparable harm........................6

      A.    The Government's legitimate foreign policy and national
            security initiatives will not be harmed. ......................................6

      B.    A stay as to nonparties is unwarranted....................................9

   III.   The public interest will be harmed if the stay is granted. ..........12

   IV.   Defendants have failed to make a strong showing that they are
         likely to succeed on the merits on appeal....................................14

Conclusion....................................................................................................17

Certificate of Compliance ...........................................................................18

Proposed Order............................................................................................19

# Table of Authorities

**Cases**

*Ala. Ass'n of Realtors v. HHS,*
594 U.S. 758 (2021) ..................................................................................... 6

*Am. Signature, Inc. v. United States,*
598 F.3d 816 (Fed. Cir. 2010) .................................................................... 13

*Biden v. Nebraska,*
600 U.S. 477 (2023) ...................................................................................... 7

*Califano v. Yamasaki,*
442 U.S. 682 (1979) .................................................................................... 11

*Ceramica Regiomontana, S.A. v. United States,*
7 Ct. Int'l Trade 390 (1984) ......................................................................... 9

*Crowell v. Benson,*
285 U.S. 22 (1932). ..................................................................................... 15

*Doe v. Trump,*
284 F.Supp.3d 1172 (W.D. Wash. 2018) .................................................... 12

*Florsheim Shoe Co. v. United States,*
744 F.2d 787 (Fed. Cir. 1984) .................................................................... 15

*Gill v. Whitford,*
585 U.S. 48 (2018) ................................................................................. 9, 10

*Haig v. Agee,*
453 U.S. 280 (1981) .................................................................................... 12

*Head Money Cases,*
112 U.S. 580 (1884) ..................................................................................... 9

*In re Section 301 Cases,*
524 F. Supp. 3d 1355 (Ct. Int'l Trade 2021)............................................... 13

*Labrador v. Poe,*
144 S. Ct. 921 (2024) .................................................................................. 11

*Nken v. Holder,*
556 U.S. 418 (2009) ............................................................................. 1, 2, 7

*United States v. Bush & Co.,*
310 U.S. 371 (1940) .................................................................................... 16

*United States v. U.S. Coin & Currency*,
401 U.S. 715 (1971) ............................................................................................... 6

*United States v. Yoshida Int'l, Inc.*,
526 F.2d 560 (C.C.P.A. 1975) ............................................................................ 14

**Other Authorities**

Akrur Barua and Michael Wolf, *Tariffs will impact the economy and so will* .......... 13

Ruth Simon, *Small Sellers of Fireworks, Ski Apparel and Other Imports Can't
Escape Tariff War*, WALL St. J., Apr. 11, 2025 ....................................................... 13

## Introduction

This Court held that Congress did not delegate to the President the power to unilaterally impose tariffs on any country, at any time, at any rate, for any reason when it passed the International Emergency Economic Powers Act (IEEPA). Defendants seek a stay of this Court's order entering summary judgment for Plaintiffs and permanently enjoining the tariffs the President imposed under IEEPA pending appeal because, they say, the President could do some really important things with unlimited tariff power.

But the President is not harmed by the denial of authority he does not legally possess, nor is he harmed by courts holding him to the statutory requirements Congress imposed. And a stay would cause irreparable harm not only to the Plaintiffs, but to thousands of businesses and millions of consumers across the country. Defendants' argument that the President has virtually unlimited unilateral tariff authority under IEEPA that is unreviewable by the judiciary is not likely to succeed on appeal. Defendants' motion for a stay should be denied.

## Legal Standard

A stay depends on four factors: "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (quote and citation omitted). These factors substantially overlap with the factors governing preliminary injunctions "because similar concerns arise whenever a court order may

allow or disallow anticipated action before the legality of that action has been conclusively determined." *Id.* at 434.

## Argument

All four factors that this Court considers when addressing a motion for a stay pending appeal favor denying the stay. Most importantly, Plaintiffs will suffer irreparable harm if a stay is granted. Denying a stay will cause no irreparable harm to Defendants, whereas granting a stay would harm the public interest. And Defendants are unlikely to succeed on the merits of their appeal because IEEPA does not give the President the unilateral tariff power he asserts.

## I.    Plaintiffs will suffer irreparable harm if a stay is granted.

Plaintiffs[1] start with the third factor because of its great importance. They made clear in their briefing that the irreparable harm they face as a result of the President's unlawful tariffs is irreparable; it goes beyond the monetary loss of paying the tariffs. *See* Pls.' Appl. for TRO and Mot. Prelim. Inj. and/or Summ. J., No. 25-66, ECF No. 10 ("VOS MSJ"), 26–28, Exs. A–E; Pls.' Reply Br. in Support of Prelim. Inj. and Mot. Summ. J. for Permanent Inj., No. 25-66, ECF No. 35, ("VOS Reply"), 26–31. Indeed, because of that harm, Plaintiffs filed their Application for Temporary Restraining Order and Motion for Preliminary Injunction and/or Summary Judgment for Permanent Injunction ("Motion"), shortly after initiating this lawsuit. While this Court denied the application for a temporary restraining

---

[1] Unless otherwise noted, the term "Plaintiffs" refers to the plaintiffs in *V.O.S. Selections, Inc. et al, v. Trump et al.*, Case No. 25-66.

order, it expedited the briefing of Plaintiffs' motion for preliminary injunction and/or summary judgment, giving Defendants seven days to file a response, Plaintiffs seven days to file a reply, and holding a hearing seven days later. ECF No. 13. And this Court entered judgment granting summary judgment and a permanent injunction in favor of Plaintiffs a little over two weeks after holding oral argument. *See* Slip Op. 25-66, ECF No. 55; ECF No. 56.

Defendants assert that a stay would only subject Plaintiffs to monetary harm from paying tariffs. But this Court's expedited consideration of this case belies Defendants' contention that Plaintiffs' harm is merely monetary. And the record before this Court shows that Plaintiffs will suffer irreparable harm if the Liberation Day tariffs are allowed to continue: their relationships with their suppliers and customers will suffer and eventually be lost. VOS MSJ 26–28. Their reputations will suffer. *Id*. They will lose business opportunities and may eventually have to go out of business entirely. *Id*.

Plaintiff V.O.S. Selections, Inc. will suffer irreparable harm if a stay is granted allowing the Liberation Day tariffs to continue because it "will be unable to plan its import orders, will suffer harm to its relationships with wholesale customers and its farmers who produce the wine, will suffer harm to its reputation and goodwill, and eventually will become unable to operate the business." VOS MSJ 27, Ex. A, ¶¶ 35–39.

Plaintiff Genova Pipe will suffer irreparable harm if a stay is granted allowing the Liberation Day tariffs to continue. "Because of the tariffs, it will be unable to

source the raw materials—including plastic resins—and manufacturing equipment that are necessary to manufacture its American-made plastic pipe, conduit, and fittings; its cost of raw materials will increase; it may lose foreign customers, such as those in Canada; and it will suffer harm to its reputation." VOS MSJ 27, Ex. B, ¶¶ 6–9, 13.

Plaintiff MicroKits will suffer irreparable harm if a stay is granted allowing the Liberation Day tariffs to continue by forcing a longer pause of manufacturing operations, which will cause it to run out of inventory, preventing it from competing with copycats. VOS MSJ 27, Ex. C, ¶¶ 9, 15. Because the Liberation Day tariffs will cause MicroKits to raise prices, *id.* ¶ 8, while the tariffs are in place, the copycats will maintain a price advantage over MicroKits for markets outside of the U.S. *Id.* ¶ 15. MicroKits estimated that as of April 18, 2025, because it would likely be unable to order more parts to make its products due to the tariffs, it would have to shut down operations within seven weeks. *Id.* ¶¶ 9–11. It has now been six weeks.

Plaintiff FishUSA will suffer irreparable harm if a stay is granted allowing the Liberation Day tariffs to continue because it has already been forced to delay imports of some products, pause orders, postpone expansion projects, it has or will lose business opportunities, will suffer damage to its reputation, and will lose goodwill. VOS MSJ 27, Ex. D, ¶¶ 21–28.

Plaintiff Terry Cycling will suffer irreparable harm if a stay is granted allowing the Liberation Day tariffs to continue because "Terry Cycling has been forced to increase prices to attempt to mitigate the tariffs and cannot confirm costs with its

4

wholesale customers, which will result in the loss of business opportunities, harm to reputation and goodwill," and the continued tariffs "constitute an existential threat to Terry Cycling's business." VOS MSJ 27–28, Ex. E, ¶¶ 5, 19, 28–35.

Despite this evidence set forth plainly in the record before this Court, the motion for a stay fails to even acknowledge these harms to Plaintiffs and cites no evidence to contradict the multiple irreparable harms set forth in Plaintiffs' declarations beyond the monetary cost of paying tariffs. And the remedy Defendants propose—a "refund, plus interest," Mot. Stay 8—is insulting. It would not cure these irreparable harms to Plaintiffs in the slightest. An eventual refund is of little comfort to Plaintiffs, who face imminent irreparable harm, including existential threats of bankruptcy and permanent damage to their business, whether by reputational damage, loss of goodwill, or harm to relationships with suppliers and customers. What good is a refund of the tariffs paid to a business that is bankrupt and no longer exists? How can a refund address the loss of customers, reputational damage, or loss of good will caused by having to cut back on certain products or having to raise prices? And what good is a refund for tariffs paid to a company that spent millions of dollars and hours redesigning its supply chain because the tariffs made it difficult or impossible to continue their relationships with existing suppliers?

## II.     The Government will not suffer irreparable harm.

### A.     The Government's legitimate foreign policy and national security initiatives will not be harmed.

The government is not harmed by an injunction preventing it from imposing unlawful tariffs because "[o]f course the government has no legitimate interest in upholding an unconstitutional system" or requirement. *United States v. U.S. Coin & Currency*, 401 U.S. 715, 726 (1971) (Brennan J., concurring). The government isn't harmed just because it may have supposedly compelling policy reasons to do something unlawful or unconstitutional; "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. HHS*, 594 U.S. 758, 766 (2021).

The Government relied on its unlawful interpretation of IEEPA to further its foreign policy and national security goals. Mot. Stay 5. Defendants argue that "the President declared national emergencies in light of what he found to be unusual and extraordinary threats to national security." *Id.* But the President's determination was in error. "Persistent annual U.S. goods trade deficits," 90 Fed. Reg. 15041, are not an unusual or extraordinary threat. *See* VOS MSJ at 18–19; Slip. Op. at 35–36.

Defendants assert that this "Court erred by interfering with the President's ability to conduct foreign affairs and manage national security." Mot. Stay 5. But this Court did no such thing. Rather, this Court held that IEEPA does not grant the President the broad power to impose tariffs that he claims. Under the Constitution, the power to tariff is given to Congress, not the President. The President cannot do

whatever he wants simply because it might affect foreign affairs and national security. *See e.g., Biden v. Nebraska*, 600 U.S. 477, 494 (2023) (holding that the Secretary of Education does not have authority to cancel $430 billion of student loan principal under the HEROES Act—a statute enacted to address national security crises—by deeming it necessary in connection with a national emergency). And the President's claim that his ability to unilaterally impose tariffs is necessary to conduct foreign affairs and manage national security is belied by the fact that no previous president has ever claimed or used it.

Defendants complain that this Court's ruling "jeopardizes ongoing negotiations with dozens of countries by severely constraining the President's leverage and undermining the premise of the ongoing negotiations." Mot. Stay 6. But the "foreign policy disaster scenario," *id.*, is speculative,[2] and one of the President's own making. The President has legitimate means of conducting foreign policy; imposing illegal tariffs is not one of them. The President cannot act illegally as a matter of policy convenience, be ordered to stop, and then plead prior reliance on his illegal acts. If Defendants' arguments were adopted, an injunction barring virtually any illegal action could be stayed by virtue of claiming that the illegality might create useful leverage: If the President illegally detained innocent people without due process, he could argue for a stay of an injunction against that action on the ground that

---

[2] Simply showing some possibility of irreparable injury fails to satisfy this factor. *Nken v. Holder*, 556 U.S. 418, 434-435.

detention could be useful leverage against the detainees or their families, and thereby advance some claimed U.S. foreign policy or national security interests.

Nothing prevents the President from utilizing the many other tools in his foreign policy toolkit during the pendency of the appeal. Even though IEEPA does not delegate Congress's constitutional tariff power to the President—allowing him to impose tariffs unilaterally, on any country, at any rate, at any time, for any reason—the President can impose more limited tariffs under other statutes. He simply prefers a blank check.

Under Defendants' own logic, the consequences to the President's power to negotiate with foreign powers on the issues he claims are important will be much *more* significant if this Court issues a stay and the Court of Appeals upholds this Court's ruling several months from now—after an investment of vast resources in an endeavor this Court unanimously found *ultra vires*—than they would be if this Court's injunction were allowed to continue. That is because the President would then have spent even more time engaging in negotiations based on an illegal premise, using his unlawful tariff power as a bargaining chip, moving further along, and presumably having negotiated with even more countries. U.S. credibility would then suffer still greater damage. Better to end the travesty as soon as possible.

Additionally, a stay of the judgment does not erase the judgment itself. Foreign leaders and their negotiators can read; they know that this Court has held that "the President's chosen means" to conduct foreign policy, Mot. Stay 6, are unlawful, and

that such a decision is likely to be upheld on appeal. A stay, therefore, would not significantly enhance the President's negotiating position or his leverage.

**B.    A stay as to nonparties is unwarranted.**

But a stay will make a difference—a hugely detrimental one—to the millions of small businesses Defendants would prefer continue to suffer simply because they do not have the resources to file a lawsuit. Mot. Stay 7–8. The public interest is best served when "our international trade statutes" are applied "uniformly and fairly." *Ceramica Regiomontana, S.A. v. United States,* 7 Ct. Int'l Trade 390, 397 (1984).

As this Court observed in its ruling granting summary judgment:

> There is no question here of narrowly tailored relief; if the challenged Tariff Orders are unlawful as to Plaintiffs they are unlawful as to all. "[A]ll Duties, Imposts and Excises shall be uniform throughout the United States," U.S. Const. art. I, § 8, cl. 1, and "[t]he tax is uniform when it operates with the same force and effect in every place where the subject of it is found."

Slip Op. 48–49 (quoting *Head Money Cases*, 112 U.S. 580, 594 (1884)). A non-uniform tariff imposed as a result of a ruling staying the injunction for nonparties would be unconstitutional, since it would, by definition *not* "*operate* with the same force and effect" everywhere. *Id*. (emphasis added). In addition, it would necessarily create a highly non-uniform tariff schedule, thus rendering that schedule unconstitutional. Defendants' assertion that this Court should stay injunctive relief as to nonparties, Mot. Stay 7, should be rejected.

Defendants rely on *Gill v. Whitford*, 585 U.S. 48, 66 (2018), for the proposition that "a plaintiff's remedy must be limited to the inadequacy that produced his injury." Mot. Stay 7. *Gill* was a constitutional challenge to Wisconsin's redistricting

plan that plaintiffs alleged to be partisan gerrymandering. The plaintiffs claimed, "a constitutional right not to be placed in legislative districts deliberately designed to 'waste' their votes." *Gill,* 585 U.S. at 66. The Court noted that the plaintiffs' alleged injury was "district specific. An individual voter in Wisconsin is placed in a single district. He votes for a single representative. . . . The disadvantage to the voter as an individual therefore results from the boundaries of the particular district in which he resides. And a plaintiff's remedy must be limited to the inadequacy that produced his injury in fact." *Id.* (quotes omitted). In that case, each individual district was separately designed, and the plaintiffs only had standing to challenge the drawing of their particular district: "A plaintiff who complains of gerrymandering, but does not live in a gerrymandered district, asserts only a generalized grievance against governmental conduct of which he or she does not approve." *Id.* (quote omitted). And the proper remedy to a challenge to the drawing of a particular district would therefore be "the revision of the boundaries of the individual's own district." *Id.*

That is not the case here. Unlike the plaintiffs in *Gill*, which are limited to one legislative district—the district in which they reside—Plaintiffs are not limited to importing from one country. Nor are they limited to importing from only the countries that they have done so to date. And Plaintiffs are not harmed solely by the tariffs imposed on countries from which they import. *See* Reply 26–31, 35 ("the harm to Plaintiffs is not simply the cost of paying the Liberation Day tariffs. The application of those tariffs across the economy harms them"). Thus, unlike the

plaintiffs in *Gill*, to whom the harm was limited only to the individual district in which they each resided, the harm to Plaintiffs in this case is not limited to the countries from whom they import. The broad, across-the-board Liberation Day tariffs harm them because they make it more difficult for them to expand their imports from countries where they do not currently import, and the tariffs applied to Plaintiffs' suppliers and customers will affect their businesses, even if the Plaintiffs are not required to directly pay the tariffs themselves.

Thus, Defendants' assertion that an injunction be "no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs," Mot. Stay at 7, quoting *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979)), doesn't avail them. Defendant's reliance on *Califano* for this proposition also fails because the quote is part of the Court's summary of an argument that it rejects: "[T]he Secretary . . . argues that nationwide class relief is inconsistent with the rule that injunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs." 442 U.S. at 702. The Court held that "a nationwide class" is not "inconsistent with principles of equity jurisprudence, since the scope of injunctive relief is dictated by the extent of the violation established." *Id.* The extent of the violation established here is vast because the Liberation Day tariffs are vast and have broad economic consequences that harm Plaintiffs' businesses.

Similarly, Defendants' reliance on *Labrador v. Poe,* 144 S. Ct. 921 (2024), for the proposition that the Supreme Court has stayed relief running solely to nonparties that was unnecessary to provide relief to the plaintiffs, Mot. Stay 7, is inapposite.

11

As stated, the permanent injunction on all the Liberation Day tariffs was necessary to provide relief to Plaintiffs.

III.    **The public interest will be harmed if the stay is granted.**

While it is true that "[t]he public interest requires that the President be able to take all appropriate and feasible action to swiftly address identified threats to the United States' economy, military preparedness, and national security," Mot. Stay 9, this Court correctly found that there is no such threat here. Slip. Op. 34 ("The President's imposition of the Worldwide and Retaliatory Tariffs responds to an imbalance in trade—a type of balance-of-payments deficit—and thus falls under the narrower, non-emergency authorities in Section 122."). "Further, although the Government has a "compelling" interest in national security, *see Haig v. Agee*, 453 U.S. 280, 307 (1981), "Defendants cannot simply rely on unspecified security concerns." *Doe v. Trump*, 284 F.Supp.3d 1172, 1179 (W.D. Wash. 2018). Indeed, the Government's own characterization of the so-called emergency as one arising from "circumstances that have atrophied the domestic manufacturing industry," Mot. Stay 15, underscores that this is not an emergency. A process that causes something to "atrophy" is a gradual decline, not a sudden emergency or extraordinary or unusual threat.

Immediate implementation of the permanent injunction serves the public interest because many other businesses are suffering and will continue to suffer from the Liberation Day tariffs if a stay is granted. Small businesses are particularly vulnerable, as they are less equipped to absorb these extra costs. Close to two thirds of small businesses have reported that tariffs and other trade issues

12

would hurt their businesses. Ruth Simon, *Small Sellers of Fireworks, Ski Apparel and Other Imports Can't Escape Tariff War*, WALL St. J., Apr. 11, 2025.[3] American consumers, too, will face dire consequences if the tariffs are not enjoined. Prices will increase for nearly every product purchased by everyday Americans. And tariffs are likely to lead to higher inflation, which will decrease the purchasing power of everyday American consumers, exacerbating the rising cost of consumer goods already facing American households.[4]

As to any interest the public may have in the policy underlying the Executive Order, "[t]he issuance of an injunction does not undermine that interest, it merely maintains the status quo." *In re Section 301 Cases*, 524 F. Supp. 3d 1355, 1372 (Ct. Int'l Trade 2021). "The public interest is served by ensuring that governmental bodies comply with the law, and interpret and apply trade statutes uniformly and fairly." *Am. Signature, Inc. v. United States*, 598 F.3d 816, 830 (Fed. Cir. 2010). Because the tariffs are unlawful, the government's concerns about irrecoverable funds and guarding the public fisc are baseless; the government is not permitted to collect these funds in the first place, as this Court has already held.

---

[3] Available at https://www.wsj.com/economy/trade/smallest-businesses-are-biggest-losers-in-global-tariff-war-f4df62d5

[4] Akrur Barua and Michael Wolf, *Tariffs will impact the economy and so will uncertainty*, Deloitte Global Economics Research Center, April 11, 2025, available at https://www2.deloitte.com/us/en/insights/economy/spotlight/united-states-tariffs-impact-economy.html

**IV.    Defendants have failed to make a strong showing that they are likely to succeed on the merits on appeal.**

Defendants' argument that they are likely to succeed on appeal simply rehashes the arguments that this Court has already rejected. Defendants accuse this Court of acting "in contravention of binding precedent"—namely *United States v. Yoshida Int'l, Inc.*, 526 F.2d 560, 576 (C.C.P.A. 1975)—without explaining how this Court did so. Mot. Stay 10. But this Court did no such thing. This Court held that "[t]hough the appellate court in *Yoshida II* interpreted TWEA so as to include tariff authority, the court also repeatedly noted the constitutional concerns that would arise if the President exercised unlimited tariff authority based on the words "regulate . . . importation." Slip Op. 29.

*Yoshida II* did not read the words "regulate . . . importation" in IEEPA to authorize whatever tariff the president wants whenever he wants at whatever rates he deems desirable. As this Court correctly found, the Liberation Day tariffs do not include the limitations that the court in *Yoshida II* relied upon in upholding President Nixon's actions under TWEA. Where President Nixon's tariffs were expressly limited by the rates established in the HTSUS, *see* Proclamation No. 4074, 85 Stat. at 927, the tariffs here have no such limit. Indeed, this is exactly the scenario that the lower court warned of in *Yoshida I*—and that the appellate court said would be unconstitutional in *Yoshida II*. The precedent of this circuit—and the *only* substantive precedent upon which Defendants rely in their stay request—is that the words "regulate . . . importation" cannot grant the President unlimited tariff authority. *See* Slip Op. 30–31. Thus, this Court held that Defendants

14

exercised unlimited tariff authority in contradiction to the limits set in *Yoshida II*. *Id*. at 26.

Defendants also fault this Court for concluding that "IEEPA's text must be read narrowly, to not authorize the reciprocal tariffs, in order to avoid separation of powers and non-delegation concerns . . . without explaining why the major-questions doctrine could apply here or identifying any similar law that raised non-delegation problems." Mot. Stay 10. But this Court simply held that "[r]egardless of whether the court views the President's actions through the nondelegation doctrine, through the major questions doctrine, or simply with separation of powers in mind, any interpretation of IEEPA that delegates unlimited tariff authority is unconstitutional." Slip Op. 28. Defendants provide no basis for concluding that the President is exempt from separation of powers concerns or that this Court was wrong to interpret IEEPA so as to avoid constitutional problems. "[I]t is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." *Crowell v. Benson*, 285 U.S. 22, 62 (1932).

Defendants further accuse this Court of contravening Federal Circuit precedent holding that "the President's 'motives, his reasoning, his finding of facts requiring the action, and his judgment, are immune from judicial scrutiny.'" Mot. Stay 11 (quoting *Florsheim Shoe Co. v. United States*, 744 F.2d 787, 796 (Fed. Cir. 1984)). The President's motives and reasoning may be immune from judicial scrutiny, but his actions are certainly not, and this Court's opinion did not question the

President's motive or reasons—rather it held that the method the President adopted here was improper, in excess of the statutory authority delegated, or that even could be delegated, by Congress.

Defendants cite *United States v. Bush & Co.*, 310 U.S. 371, 380 (1940), for the proposition that "[f]or the judiciary to probe the reasoning which underlies this Proclamation would amount to a clear invasion of the legislative and executive domains." Mot. Stay 11. But that case held that "where Congress has authorized a public officer to take some specified legislative action when in his judgment that action is necessary or appropriate *to carry out the policy of Congress,* the judgment of that officer . . . is not subject to review." 310 U.S. at 380 (emphasis added). But here this Court held that the President has operated outside of the authority Congress has authorized. And the President is emphatically not carrying out "the policy of Congress." *Id.* Congress has neither declared a trade war nor expressed via legislation any concern about the atrophy of the nation's "domestic production capacity" or "military readiness." Resp. Opp. Mot. Prelim. Inj. and Summ. J., ECF No. 32, 2. The President is concerned with safeguarding *his* supposed prerogative "to conduct foreign affairs and manage national security," Mot. Stay 5, and *his* ability "to take all appropriate and feasible action to swiftly address identified threats," *id.* at 9.

Defendants have failed to make a showing that they are likely to prevail on appeal.

## Conclusion

Defendants' Motion for a Stay should be denied. Plaintiffs and businesses and consumers across the country will be irreparably harmed by a stay. Defendants will not be harmed without a stay. And Defendants have not made a strong showing that they are likely to succeed on appeal. This Court's ruling should immediately be permitted to go into effect. A proposed order is attached.

Dated: June 2, 2025

                                    Respectfully submitted,

                                    /s/ Jeffrey M. Schwab

Jeffrey M. Schwab                   Ilya Somin
Reilly Stephens                     Antonin Scalia Law School
James McQuaid                       George Mason University
Bridget F. Conlan                   3301 Fairfax Dr.
Liberty Justice Center              Arlington, Virginia, 22201
7500 Rialto Blvd.                   773-993-8069
Suite 1-250                         isomin@gmu.edu
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org
bconlan@ljc.org

17

# Certificate of Compliance

I, Jeffrey M. Schwab, hereby certify that this brief complies with the 5,000-word limitation set forth in the Court's May 30, 2025, Order, ECF No. 61, because this brief contains 4,318 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

Respectfully submitted

Dated: June 2, 2025                    /s/ Jeffrey M. Schwab

18

IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE

Before Honorable Gary S. Katzmann, Judge, Honorable
Timothy M. Reif, Judge, Honorable Jane A. Restani, Judge

| | |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.*<br><br>                    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>                    Defendants. | Case No. 25-00066-GSK-TMR-JAR |

**Proposed Order**

Upon consideration of Defendants' motion for a stay of the enforcement of judgments entered May 28, 2025, to permanently enjoin the United States from collecting tariffs collected pursuant to Executive Orders, and after due deliberation, it is hereby

ORDERED that Defendants' motion is DENIED.

_____
JUDGE

Dated: _____

19