**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP in his official capacity, EXECUTIVE OFFICE OF THE PRESIDENT, THE UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES in his official capacity, JAMIESON GREER in his official capacity, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, and HOWARD LUTNICK in his official capacity, <br><br> Defendants. | Court No. 25-00066 |

**DEFENDANTS' MOTION TO AMEND ORDER**

Pursuant to Rule 7(b), defendants respectfully request that the Court amend its May 27, 2026 order, which currently requires Customs and Border Protection Commissioner Rodney S. Scott to appear in court for live testimony on June 9, 2026.  The Court has *sua sponte* directed Commissioner Scott—a Presidentially-nominated and Senate-confirmed Executive Branch official—"to appear to answer the court's questions as to the anticipated timing of Customs' compliance with the court's order," a subject that defendants have addressed through the submitted declarations in recent months.  *Id.*  Because Commissioner Scott is a high-ranking Government official, he cannot be ordered to testify except under extraordinary circumstances where he has first-hand knowledge of the issues and where there are no alternative witnesses.

That is clearly and indisputably not the case: there are no such extraordinary circumstances here and there are two alternative witnesses who are more directly involved with the issues the Court wishes to discuss.

1.    On April 17, 2026, this Court entered an injunction that directed tariff refunds but suspended immediate compliance.  There are three general categories of IEEPA tariffs[1] subject to the Court's suspended injunction.  *First*, tariffs that were paid on entries that are unliquidated or nonfinal and therefore still in CBP's control.  Relying on its own authorities, CBP is already in the process of refunding approximately $85 billion of these tariffs—over half the total amount of IEEPA tariffs paid.  *Euro-Notions Florida, Inc. v. Customs and Border Protection*, 25-595, ECF 30.  And more claims are being filed, which means additional refunds will be processed in the coming weeks.[2]

*Second*, tariffs that were paid on entries that are finally liquidated and for which parties have filed cases in this Court.  Once an entry is finally liquidated, CBP has no authority to reliquidate or refund money without a court order.  *See Shinyei Corp. of Am. v. United States*, 355 F.3d 1297, 1314 (Fed. Cir. 2004) (finding a limited exception to finality for Administrative Procedure Act claims and granting the relief of reliquidation).  Defendants have maintained that refunds for such imports must be handled through importer-specific orders requiring reliquidation once CBP has completed programmatic changes for other categories of refunds the Court has directed it to prioritize.  The Court has so far declined to issue importer-specific

---

[1]  We use the term IEEPA tariffs to mean those that assessed under the International Emergency Economic Powers Act.  As the Court has recognized, "nothing in" its injunction "addresses issues concerning duty free de minimis treatment under 19 U.S.C. § 1321 that are otherwise before this Court."  ECF 82 (citing *Axle of Dearborn, Inc. v. Department of Commerce et al.,* 25-00091).

[2]  CBP is now deploying programmatic enhancements that will allow the vast majority of entries flagged for reconciliation to be processed.

relief.[3]  And as far as immediate compliance goes for the second category, CBP's biweekly declarations make clear that immediate compliance cannot be accomplished without additional system enhancements that will be rolled out in phases.[4]  *Atmus,* ECF 31.

*Third*, tariffs that were paid on entries that are finally liquidated and for which parties have not filed cases in this Court.  As noted above, CBP has no authority to reliquidate or refund money without a court order.  This Court has entered a universal injunction ordering CBP to reliquidate final entries including entries made by importers who have not sued in this Court.  But defendants have explained, and as they will explain in their forthcoming response to the Court's order to show cause, the universal injunction exceeds the Court's jurisdiction and equitable authority under *Trump v. CASA, Inc.*, 606 U.S. 831, 839 (2025).  For that reason, defendants intend to appeal the Court's universal injunction and to seek a stay of the injunction except as to the particular importer plaintiffs in each case in which the Court has entered the injunction.

2.     The Court has set the June 9 hearing to consider whether to lift the stay it has maintained on the universal injunction entered in this and other cases.  Defendants' brief will show that the stay should remain in place based on facts that CBP has already established

---

[3]  Since March 2026, the Court has held what it calls "settlement conferences" in a handful of test cases that it has chosen *sua sponte*.  See *Atmus Filtration, Inc. v. United States*, 26-1259, ECF 31, 36, 38, 39, 47; Euro-Notions, ECF 15, 26, 30.  Because these conferences are off-the-record, we are careful not to make statements for which we have no transcript citation.  Nevertheless, to explain the issues still left to be decided, it is necessary here to explain some limited history of these conferences.

[4] CBP has developed a new electronic module (the Consolidated Administration and Processing of Entries (CAPE)) within its Automated Commercial Environment (ACE).  Since CAPE's launch, CBP has devoted enormous resources to increase the CAPE functionality, at the specific direction of the Court.  At each phase, CBP has diligently apprised the Court of its progress without any indication from the Court that it was dissatisfied with the speed with which CBP has complied, or the prioritization that CBP has applied.

through declarations, including that immediate compliance with the injunction is impossible for CBP and that CBP is moving as quickly as it can to process refunds in a phased approach.  No party has suggested a need for live testimony in next month's hearing; the Court instead *sua sponte* directed the Commissioner of CBP—a Presidentially-nominated and Senate-confirmed Executive Branch official, *see* 6 U.S.C. § 113(a)(1)(C)—to testify.  *See* https://www.senate.gov/legislative/LIS/roll_call_votes/vote1191/vote_119_1_00321.htm; https://www.congress.gov/nomination/119th-congress/12/40.  We respectfully request that the Court amend the order to allow one of two officials to testify in the Commissioner's place: Susan Thomas, CBP's Executive Assistant Commissioner for Trade, or Brandon Lord, the CBP official who has already submitted multiple declarations to the Court.  Requiring the Commissioner's testimony would clearly and indisputably contradict law, and if the Court denies this motion, the government will promptly seek mandamus relief from the Federal Circuit.

"[A] district court should rarely, if ever, compel the attendance of a high-ranking official in a judicial proceeding." *In re United States (Jackson)*, 624 F.3d 1368, 1376 (11th Cir. 2010). In *United States v. Morgan*, the Supreme Court held that the Secretary of Agriculture should not have been subjected to a deposition because it was improper "to probe [his] mental processes[.]" 313 U.S. 409, 421-22 (1941).  Since then, the Federal Circuit and other courts across the nation have routinely held that high-ranking government officials should not—absent exceptional circumstances—be deposed or called to testify regarding an agency's reasons for taking, or facts regarding, official action.  Such testimony can be compelled only when the official has "first-hand knowledge" of the information and "other persons cannot provide the necessary information."  *In re United States* (*Bernanke*), 542 F. App'x 944, 948 (Fed. Cir. 2013) (setting forth the "extraordinary circumstances" standard and explaining that testimony should be

required); *see, e.g.*, *In re Musk*, 169 F.4th 445, 448-49 (4th Cir. 2026).  This is sometimes known as the "apex doctrine."

Heads of government offices, including those of sub-Cabinet rank, fall within the core protection of the doctrine restricting depositions of high-level officials.  *See, e.g.*, *In re Murthy*, No. 22-30697, 2022 U.S. App. LEXIS 38050, at *4 (5th Cir. Nov. 21, 2022) (Surgeon General and Director of the Cybersecurity and Infrastructure Security Agency (CISA), a component of the Department of Homeland Security (DHS)); *Musk*, 169 F.4th at 448 (officials of the Department of Government Efficiency (DOGE)); *In re Noem*, No. 25-2936 (7th Cir. Oct. 31, 2025) (CBP official);  *In re Commodity Futures Trading Comm'n*, 941 F.3d 869, 873 (7th Cir. 2019) (Commodity Futures Trading Commission Chairman, Commissioners, and staff); *In re FDIC*, 58 F.3d 1055, 1060 (5th Cir. 1995) (Directors of the Federal Deposit Insurance Corporation); *In re United States*, 985 F.2d 510, 512-513 (11th Cir. 1993) (per curiam) (FDA Commissioner); *In re Office of Inspector Gen., R.R. Ret. Bd.*, 933 F.2d 276, 277-78 (5th Cir. 1991) (Inspector General of Railroad Retirement Board).  Commissioner Scott plainly qualifies, as the head of an agency (like CISA, a component of DHS) that employs more than 60,000 people and carries out vital national functions.

Because Commissioner Scott plainly falls within the protections of the apex doctrine, he can properly be required to testify only under the exceptional circumstance of his having relevant first-hand knowledge that cannot be obtained from another source.  That is clearly and indisputably not the case here.  Indeed, Commissioner Scott is not even the official with the most direct first-hand knowledge of the answers to the Court's questions.  The people with the most direct knowledge are Susan Thomas and Brandon Lord.  Executive Assistant Commissioner Thomas reports to the Commissioner and is the senior-most official for trade matters.  Thomas

Decl. ¶ 6. She is also the senior-most person with direct knowledge of the answers to the Court's question. *Id.* She has direct knowledge about the impractability of immediate compliance, as well as specific information about refunds plaintiffs either has or will soon receive. *Id.*

As the Court is aware, Mr. Lord is the Executive Director, Trade Programs Directorate, Office of Trade, at CBP. He has so far submitted eight refund-status declarations in *Atmus* and *Euro-Notions*, both of which were or are now subject to the Court's "settlement conferences" held over the last three months. *Atmus,* ECF 31, 36, 38, 39, 47; *Euro-Notions*, ECF 15, 26, 30. Executive Director Lord's declarations have covered the range of CBP's extraordinary efforts to refund IEEPA duties, addressing issues including CBP's programmatic capabilities and obstacles as well as the time required to implement various aspects of the Court's wishes. Both Executive Assistant Commissioner Thomas and Executive Director Lord are available to testify on June 9th.

In this scenario—when there are clearly alternative ways of obtaining the facts on which a high-level official has been called to testify—it is unlawful to compel the testimony of Commissioner Scott. Appellate courts routinely grant mandamus relief from such orders. *See, e.g.*, *In re Paxton*, 60 F.4th 252, 258 (5th Cir. 2023) (no extraordinary circumstances justified subpoena of Texas Attorney General where another official could provide the necessary information on the Attorney Generals behalf); *In re United States*, 985 F.2d 510, 512 (11th Cir. 1993) (holding that the case did "not present extraordinary circumstances or a special need for the Commissioner's testimony" where the "record discloses that testimony was available from an alternate witness); *In re Commodity Future Trading Comm'n*, 941 F.3d 869, 874 (7th Cir. 2019). There is simply no reason to require Commissioner Scott's presence when the Court has appropriately relied on Executive Director Lord for three months to provide exactly the type of

6

information it now seeks at a public hearing, and when both Executive Assistant Commissioner

Thomas and Executive Director Lord are available.

For these reasons, we respectfully request that the Court amend its order to substitute

Executive Assistant Commissioner Thomas or Executive Director Lord for Commissioner Scott.

We also respectfully request that the Court rule on this motion by Tuesday, June 2, 2026, at

12:00 p.m. eastern time, to allow defendants time to seek mandamus relief in the Federal Circuit

if the motion is denied.  If the Court denies this motion, we ask that it stay the June 9th hearing

to allow the Federal Circuit time to rule on the mandamus petition.

<div style="margin-left:50%">

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063
claudia.burke@usdoj.gov

</div>

May 29, 2026                                    *Attorneys for Defendants*

7

## CERTIFICATE OF SERVICE

I hereby certify that, on May 29, 2025, I caused the foregoing "DEFENDANTS'

MOTION TO AMEND ORDER" to be filed and served electronically via the Court's CM/ECF

system.


/s/Claudia Burke