IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE
Before Richard K. Eaton, Judge

| | |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.,*<br><br>Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>Defendants. | Case No. 25-00066-RKE |

**Plaintiffs' Response to Order to Show Cause**

There is no real dispute that the United States must promptly refund the many billions of dollars in tariffs it unlawfully collected under the International Emergency Economic Powers Act ("IEEPA"). In *Learning Resources, Inc.* v. *Trump*, 146 S. Ct. 628 (2026), the Supreme Court held that the President had no authority to impose tariffs under IEEPA, such that all of the IEEPA tariffs were unlawfully collected. *Id.* at 637. Before the Supreme Court issued its decision, the Government repeatedly stipulated that, "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Mot. for Stay at 25, *V.O.S. Selections, Inc.* v. *Trump*, No. 25-1812 (Fed. Cir. May 29, 2025), Dkt. No. 6. On March 4, 2026, this Court issued the first in a series of preliminary orders vindicating those stipulations and the basic principle that the government may not retain taxes it unlawfully collected. Those refund orders are currently stayed to allow the CBP to develop its administrative scheme for issuing IEEPA refunds: the Consolidated Administration and Processing of Entries ("CAPE").

1

Since this Court's order to show cause why it should not lift the stay of its refund order in this case, the government made several filings in this Court and the Federal Circuit, but it has never disputed the fundamental fact that it must refund *all* of the money it illegally collected under IEEPA. To the contrary, the government recently told the Federal Circuit that, on April 20, 2026, it began processing refunds under Phase 1 of CAPE, which covers unliquidated entries and entries that liquidated within 80 days. Mandamus Pet. at 9, *In re United States*, No. 26-144 (Fed. Cir. June 2, 2026), Dkt. No. 2 ("Mand. Pet."). According to the government, it has already fully processed approximately $20 billion in refunds and interest, with another $65 billion more in the works. *Id.* at 9-10. Moreover, the government told the Federal Circuit that "CBP will move to other types of entries in later phases of CAPE." *Id.* at 9.

The government has, however, asserted two *substantive* objections to making CAPE available for processing and paying refunds with interest on all unlawfully collected IEEPA tariffs. First, the government suggests (wrongly) that it has no "authority" to reliquidate entries that are more than 90 days past liquidation without individualized court orders. Dkt. No. 88 at 2.[1] But the only source the government cites for that proposition is the Federal Circuit's decision in *Shinyei Corp. of America* v. *United States*, 355 F.3d 1297 (Fed. Cir. 2004), which actually held that there is no statutory bar on reliquidation in cases like this one. Second, the government suggests

---

[1] While the government asserts it lacks authority to reliquidate entries that liquidated more than 90 days ago, the government, as of now, has limited the availability of CAPE to entries that liquidated "within the preceding 80 days." Decl. of Brandon Lord ¶ 15(c), *Atmus Filtration, Inc.* v. *United States*, No. 26-01259 (Ct. Int'l Trade Mar. 31, 2026), Dkt. No. 51.

that, if this Court were to lift the stay of its order, that would require the government to pay all IEEPA refunds immediately, which it is incapable of doing.  Mand. Pet. 2.

In light of the apparently limited scope of the government's substantive objection to refunding all IEEPA tariffs through CAPE, there is no need for this Court to lift the stay of its preliminary order, which has now been appealed.  Instead, this Court can issue a new order permanently enjoining the government to make CAPE available to process and issue refunds on *all* entries on which IEEPA tariffs were paid as soon as practicable.  In that order, the Court can explain that the government has the authority to reliquidate entries as necessary, regardless of when they were liquidated, and it can further observe that the mandate to process and pay refunds as soon as practicable provides the government with the necessary flexibility to avoid having to issue all the refunds at once.

Given that the government has never offered any reason why it would be entitled to keep the approximately $166 billion dollars in IEEPA tariffs it unlawfully collected, and given that it has repeatedly touted the advantage of processing and paying refunds through CAPE, one would think that the government would have no objections to such an order.  But the government has advanced a procedural argument against this Court's efforts to facilitate the refunds for all the unlawfully collected IEEPA tariffs, asserting that—under *Trump* v. *CASA, Inc.*, 606 U.S. 831 (2025)—this Court lacks the authority to issue injunctive relief that applies to any importer other than the plaintiffs before it.  That is wrong several times over.

Even assuming *CASA* applies to the CIT, broad injunctive relief is appropriate

3

here because the Constitution's Uniformity Clause requires that all tariffs be uniform throughout the country. U.S. CONST. art I, § 8, cl. 1 ("all Duties, Imposts and Excises shall be uniform throughout the United States"). It thus would be unconstitutional for this Court to effectively order that the five plaintiffs here pay lower tariffs than all other importers. The judiciary cannot remedy one "constitutional problem by creating a new one." *Off. of the U.S. Tr.* v. *John Q. Hammons Fall 2006, LLC*, 602 U.S. 487, 504 (2024). Moreover, even if the Court were to limit its injunction to plaintiffs, the practical effect of the order would be the same because the government has no right to violate the Uniformity Clause by affording refunds to only certain parties. Nor is there any possibility that the government might get a different decision from another court even if the injunction were limited to plaintiffs: The CIT has exclusive jurisdiction, and all refund cases have been assigned to same judge.

In any event, *CASA* does not apply to the CIT. *CASA* held that under the Judiciary Act of 1789, district courts generally lack the power to issue universal injunctions. But Congress created the CIT two hundred years later through a different statute that gave this Court exclusive jurisdiction to ensure the nationwide, uniform treatment of tariffs that the Constitution requires. Neither *CASA*'s holding nor its logic applies. Further, to resolve any ambiguity on the issue, plaintiffs are simultaneously filing a motion for certification of a class under Rule 23(b)(2) consisting of all importers who paid IEEPA tariffs and have efforts to facilitate the refunds for all the unlawfully collected IEEPA tariffs.

Plaintiffs therefore respectfully request that, rather than lifting the stay of its

4

current order, this Court issue a new permanent injunction requiring the government to process and pay all IEEPA refunds through the CAPE system as soon as practicable. Plaintiffs also request that this Court grant their accompanying motion to certify a class under Rule 23(b)(2) to resolve any ambiguity about the applicability of this injunctive relief to *all* importers who paid the unlawful IEEPA tariffs.

<strong>Argument</strong>

**I. The Government Has The Authority To Reliquidate Entries That Liquidated More Than 90 Days Ago.**

In its Motion to Clarify, the government suggested that it could not make CAPE available for processing and paying refunds of entries that liquidated more than 90 days ago because "[o]nce an entry is finally liquidated, CBP has no authority to reliquidate or refund money without a court order." Dkt. No. 88 at 2. That is wrong. The government does not cite any statute barring reliquidation. Instead, it cites a single case, *Shinyei Corp. of America* v. *United States*, 355 F.3d 1297 (Fed. Cir. 2004). *Ibid.* But that case held that there is no barrier to reliquidation here.

In *Shinyei*, the Federal Circuit rejected the argument that a statutory reliquidation prohibition applied in a case where (as here) this Court's jurisdiction rested on 28 U.S.C. § 1581(i), as opposed to Section 1581(a) or (c). *Id.* at 1309-10. The Court explained that in cases under Section 1581(a) or (c), there are express statutory bars on reliquidation after a certain deadline. *Id.* at 1308-09. In particular, Section 1581(a) cases arise from administrative protests that are governed by 19 U.S.C. § 1514(a), which makes liquidation final after 90 days unless the importer files a protest during that window. But the Court explained that Section 1514 had no

application in *Shinyei* because the plaintiffs were challenging a tariffs decision *by Commerce*, and Section 1514 covers challenges to "*decisions of the Customs Service*" alone. *Id.* at 1311. The Court then expressly "reject[ed] the suggestion that the statute's silence as to reliquidation" in contexts outside of Section 514 "can be construed as a prohibition of reliquidation in such cases." *Id.* at 1311-12.

The government appears to be relying on precisely that already-rejected statutory silence argument here because it does not cite any statute barring reliquidation after more than 90 days that fall outside Section 1514. Nor can the government rely on Section 1514 itself because—as in *Shinyei*—plaintiffs are not challenging a determination by the CBP. Rather, plaintiffs successfully challenged the tariff orders of the President. Moreover, this Court already rejected the applicability of Section 1514 in *AGS* based on the government's own stipulations that liquidation would not impede refunds. *See AGS Co. Auto. Sols.* v. *CBP*, 813 F. Supp. 3d 1298, 1302 (Ct. Int'l Trade 2025). And the Supreme Court has recognized that jurisdiction over these cases arises under Section 1581(*i*). *Learning Res.*, 146 S. Ct. at 637 n.1. That would not be so if these cases were governed by Section 1514 because jurisdiction over Section 1514 cases arises under Section 1581(*a*).

The government's authority to reliquidate and pay refunds with respect to all IEEPA tariffs is further confirmed by 19 U.S.C. § 1520. Section 1520(a)(1) expressly authorizes the government "to refund duties or other receipts . . . [w]henever it is ascertained on liquidation *or reliquidation* of an entry or reconciliation that more money has been deposited or paid as duties than was required by law to be so

6

deposited or paid" (emphasis added).  Section 1520 therefore confirms that Congress

anticipated reliquidation where—as here—"more money has been . . . paid . . . than

was required by law."  The statute nowhere suggests that individualized court orders

are necessary to process and pay refunds.  There is no impediment to the government

opening the CAPE system for all entries on which IEEPA tariffs were paid, regardless

of when they liquidated.

**II.    The Supreme Court's Decision In *CASA* Does Not Bar The Court From Ordering The Government To Process And Pay All IEEPA Refunds Through CAPE.**

**A.    The proposed order is necessary to ensure plaintiffs receive complete relief and to conform with the Uniformity Clause.**

The Supreme Court made clear in *CASA* that a court may issue the injunctive

orders necessary to ensure that the plaintiffs receive "complete relief."  606 U.S. at

851.  Affording the *V.O.S.* plaintiffs complete relief requires enjoining the government

to process and pay refunds on *all* entries through CAPE.  While many of plaintiffs'

tariffs were eligible for Phase 1 treatment, at least one plaintiff—Terry Precision

Cycling, LLC—has entries that liquidated more than 90 days ago.  *See* Decl. of Nik

Holm ¶ 3.  An injunction compelling the government to process and pay those entries

through CAPE is necessary to afford "complete relief to the plaintiffs before the

court."  *CASA*, 606 U.S at 852 (emphasis omitted).

Nor can that injunction be limited solely to plaintiffs.  For starters, such an

order would violate the Uniformity Clause, which requires that "all Duties, Imposts

and Excises shall be uniform throughout the United States."  U.S. CONST. art. I, § 8,

cl. 1.  If the Court limited its relief purely to plaintiffs, that would amount to an

unconstitutional order allowing the five plaintiff companies to pay lower tariffs than all other importers.  The judiciary cannot remedy one "constitutional problem by creating a new one." *John Q. Hammons*, 602 U.S. at 504.

Moreover, an injunction that merely granted plaintiffs access to CAPE for all of their entries would not fully remedy their injuries.  First, several plaintiffs paid their duties through third-party importers such as FedEx and UPS, so any order limited to plaintiffs would not remedy the harm they suffered from those third-party-importer payments.  Second, as a result of the estimated $166 *billion* in IEEPA tariffs imposed on importers throughout the country, plaintiffs inevitably paid higher prices on goods purchased from other direct importers.  To ensure those prices for goods are returned to pre-IEEPA-tariff levels, it is necessary that *all* importers receive refunds.  An injunction that requires the government to pay refunds to all importers is "what is necessary, what is fair, and what is workable" to provide complete relief here. *North Carolina* v. *Covington*, 581 U.S. 486, 488 (2017) (citation omitted).

Further, even if this Court were to limit its declaratory and injunctive relief to plaintiffs, any order granting complete relief would functionally grant universal relief.  For one thing, the government cannot violate the Uniformity Clause by effectively allowing some importers to pay lower tariffs than others.  For another, this Court has nationwide, exclusive jurisdiction, 28 U.S.C. § 1581(i), and all of the IEEPA refund cases have been assigned to a single judge.  Accordingly, this Court's legal determination that the government is obligated to process and pay all IEEPA refunds through CAPE necessarily governs for everyone.  In such circumstances, the practical

effect of this Court's order will be universal relief, even if it is cabined to only the *V.O.S.* plaintiffs. This aligns with *CASA* itself, which acknowledges that a court's injunction may benefit non-parties "incidentally." 606 U.S. at 851. And once this Court has determined that the government has a legal obligation to process all payments through CAPE, that precedent governs all cases, so the government lacks a non-frivolous basis for refusing to process any payments through the CAPE system.

### B.    *CASA* does not limit the equitable powers of this Court.

In any event, *CASA* does not apply to the CIT. *CASA* held that, "under the Judiciary Act of 1789," federal district courts generally lack the "equitable authority to issue universal injunctions." 606 U.S. at 839. And the Court made very clear that its holding "rest[ed] solely on the statutory authority that federal courts possess under the Judiciary Act of 1789." *Id.* at 841 & n.4. But the CIT's remedial authority is not governed by the Judiciary Act of 1789. Rather, the CIT is a specialized Article III court that was created almost two hundred years later in an effort to vindicate the Constitution's command that tariffs must be "uniform throughout the United States."

Congress therefore granted the CIT exclusive nationwide jurisdiction over tariffs, 28 U.S.C. § 1581, demonstrating its intent to empower the Court to issue orders that conclusively resolve any issues it confronts. To exercise that power, the CIT must have the ability to impose broader injunctive relief than traditional district courts. And Congress expressly granted the CIT that authority by enacting two separate provisions regarding the CIT's equitable powers. The first, 28 U.S.C. § 1585, grants the CIT "all the powers in law and equity of . . . a district court of the United States." But the second, 28 U.S.C. § 2643(c)(1), goes further—separately granting

the CIT the power to "order *any* other form of relief that is appropriate in a civil action, including, but not limited to . . . *injunctions*" (emphasis added). That provision expressly authorizes the CIT to issue injunctive relief without tying its authority to the traditional equitable powers of district courts under the Judiciary Act of 1789—the sole focus of *CASA*.

Finally, in an abundance of caution, plaintiffs are simultaneously filing a motion to certify a class under Rule 23(b)(2), consisting of all importers who paid IEEPA tariffs and are not yet eligible to have their refunds processed and paid through CAPE. As that motion explains, all of the requirements for a Rule 23(b)(2) class are satisfied here, and granting plaintiffs' motion will remove any doubt about this Court's authority to issue the permanent injunctive relief plaintiffs request.

## Conclusion

For the reasons set forth herein, plaintiffs respectfully request that—instead of lifting the stay on the preliminary refund order—this Court enter a permanent injunction requiring the government to process and pay all IEEPA refunds through CAPE. Plaintiffs further request that this Court grant their accompanying motion to certify and grant other just relief as this Court may deem just or proper.

Dated: June 4, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

## Certificate of Compliance

I, Neal Kumar Katyal, hereby certify that this brief complies with the 14,000 word limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because this brief contains 2,738 words. In making this certification, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

Dated: June 4, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

## Certificate of Service

I, Neal Kumar Katyal, one of the attorneys for Plaintiffs, certify that the foregoing document was filed electronically with the Court's Case Management/ Electronic Case Filing (CM/ECF) system on June 4, 2026. The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.

Dated: June 4, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, Texas 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*