**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:    THE HONORABLE RICHARD K. EATON, SENIOR JUDGE

|  |  |
|---|---|
| V.O.S. SELECTIONS, INC., PLASTIC SERVICES AND PRODUCTS, LLC d/b/a GENOVA PIPE, MICROKITS, LLC, FISHUSA INC., TERRY PRECISION CYCLING LLC, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD J. TRUMP in his official capacity, EXECUTIVE OFFICE OF THE PRESIDENT, THE UNITED STATES, U.S. CUSTOMS AND BORDER PROTECTION, PETE R. FLORES in his official capacity, JAMIESON GREER in his official capacity, OFFICE OF THE UNITED STATES TRADE REPRESENTATIVE, and HOWARD LUTNICK in his official capacity, <br><br> Defendants. | Court No. 25-00066 |

**DEFENDANTS' RESPONSE TO ORDER TO SHOW CAUSE
AND MOTION FOR A STAY PENDING APPEAL**

Defendants respond to the Court's May 27, 2026 order, directing the parties "to show cause as to why the court should not remove the suspension of immediate compliance with its order that U.S. Customs and Border Protection liquidate or reliquidate, without regard to IEEPA duties, all entries entered subject to IEEPA duties."  ECF 86.

The suspension of immediate compliance should remain in place for at least three reasons. *First*, equity requires injunctive relief to be feasible, but the injunction remains logistically impossible for CBP to comply with for certain entries—namely entries lacking Consolidated Administrative and Processing of Entries (CAPE) functionality and entries where

no declaration or case has been filed. *Second*, injunctive relief is not warranted for entries that can be refunded under CBP's statutory and regulatory authority. Importers have already received billions of dollars in refunds through CBP's exercise of its authorities, and CBP will continue to process refund claims while the injunction is suspended. Injunctions are a drastic and extraordinary remedy—never the default—and such relief should not be issued when it is not needed. *Finally*, the Court's order granting universal relief to all importers—even importers who have not filed a case—suffers from multiple legal flaws. It violates Supreme Court precedent precluding universal relief, the Federal Circuit's remand order in this case, and the party-presentation principle. The Court should not lift the suspension of the injunction. Alternatively, it should stay the injunction pending appeal.

## BACKGROUND

On March 4, 2026, the Court issued a universal injunction order requiring, among other things, CBP to liquidate without IEEPA duties all unliquidated entries. *Atmus Filtration, Inc. v. United States*, No. 26-01259, ECF 21. The Court issued this injunction without receiving briefing from the parties on the propriety of this relief. No party requested the injunction, and the plaintiff withdrew its motion for a temporary restraining order the day before the Court acted. *See Atmus*, ECF 16-1. After the injunction issued, defendants explained that immediate compliance was impossible because CBP's import-processing system (the Automated Commercial Environment or ACE) could not accommodate the enormous volume of liquidations and refunds without significant programmatic changes, and the Court suspended the requirement of immediate compliance.[1] *Atmus*, ECF 33. The Court then amended the order several more

---

[1] The Court has held a series of closed, off-the-record "settlement conferences." *Atmus*, ECF 34, 40, 41, 49, 52; *Euro-Notion Fla., Inc. v. United States*, 25-00595, ECF 13, 25, 27, 29. Because these meetings are unrecorded, defendants have been careful not to make statements for

2

times, including to require reliquidation of all liquidated entries without IEEPA duties. *Atmus* ECF 50. The Court later issued the same injunction (and suspension of the injunction) in four other cases, including this case.

Since issuing its first injunction, the Court has met privately with the parties to some or all of these cases to discuss and oversee CBP's progress toward refunding IEEPA duties. These conferences, which the Court has called "settlement conferences," have been off-the-record, but the Court has required CBP to file public declarations—nine in total—advising of its progress. These declarations make clear that CBP has invested significant resources in the refund effort, and that effort has succeeded. CBP first prioritized programmatic changes to its system so it could process liquidations or reliquidations and issue refunds for most entries that had not yet liquidated. Now, CBP has turned to expanding functionality for entries that are flagged for reconciliation. After that, CBP intends to turn to entries that have finally liquidated and for which there is an action pending in this Court. Despite this progress, the Court issued its order to show cause as to why CBP should be required to immediately comply with the entirety of the order.

**ARGUMENT**

The Court should not disturb the suspension of the injunction. First, immediate compliance with the injunction remains a logistical impossibility for CBP as to many entries, and lifting the suspension would thus violate principles of equity. Second, for entries where refund functionality presently exists, there is no need to lift the suspension because CBP has and will continue to process refunds. Third, the Court should not lift the suspension of the injunction as to non-parties. The Court's order issuing universal relief for non-party importers violates

---

which there is no transcript citation. Still, to present a full picture, we have had to occasionally refer to impressions from the conferences.

Supreme Court precedent, the Federal Circuit's mandate, and the party-presentation principle. CBP has succeeded in accepting for processing nearly $90 billion in refunds while the suspension has remained in place.  It remains committed to the project as it has shown in its regular updates to the Court. The Court should thus maintain the suspension.

1.      The Court should not alter the suspension of the injunction as to any entry for which compliance would create a logistical impossibility.  Every injunction must give "due regard for . . . feasibility." *Dep't of State v. AIDS Vaccine Advocacy Coal.*, 145 S. Ct. 753 (2025).  Because compliance with this injunction is not feasible for CBP for two categories of entries, lifting the suspension of the injunction as to these entries would exceed the Court's equitable authority.  *First*, CBP cannot at present process refunds for which it has not yet created the CAPE functionality.  "CBP is facing an unprecedented volume of refunds, and . . . CBP's typical refund mechanisms were insufficient to address this volume."  Thomas Decl. ¶ 5.  CBP has met this challenge by developing and deploying refund processing capabilities in phases. "Phased development allows CBP to begin refunding IEEPA duties paid on the largest groups of entries, by refund amount, faster."  *Id.* at ¶ 7.  Consistent with CBP's goal of making refunds available to importers in the most expeditious and efficient manner possible, CBP prioritized refund processing capability for unliquidated and nonfinal entries.  The refund functionality for such entries launched in April and has been administered with success since then.  More than 16 million entries have been processed, and more than $89 billion in both potential and certified refunds of IEEPA duties have been accepted for processing.  *Id.* at ¶ 8.  Approximately $22 billion in refunds have been completed and sent to the Department of the Treasury for disbursement.  *Id.*

Consistent with its phased approach, CBP has turned its focus to other categories of entries, but refund functionality is not yet available for all entries. CBP is currently developing functionality for entries flagged for reconciliation. *Id.* at ¶ 10. "CBP anticipates deploying this enhanced capability for entries flagged for reconciliation on June 29, 2026." *Id.* Once the reconciliation functionality is deployed, CBP intends to expand CAPE functionality to cover additional categories of entries, including entries filed by plaintiffs to actions in this Court and for which reliquidation is needed. These functionalities, however, are not presently available. Thus, CBP's Executive Assistant Commissioner has concluded "[i]mmediate compliance with the Court's order is not possible." *Id.* at ¶ 4. "CBP cannot program for all functionalities at once, and it is simply not technically possible to program CAPE to immediately refund all IEEPA duties for all categories of entries for all importers." *Id.* at ¶ 17.

*Second*, CBP cannot process refunds for entries where no declaration has been filed in CAPE. As CBP explained in March, "CBP does not have the capability of separating out which entries scheduled to liquidate are subject to IEEPA duties from those that are not for purposes of stopping the liquidation process . . . ." *Atmus*, ECF No. 31, at ¶ 14. That is among the reasons why the refund functionality that CBP has deployed requires "[t]he importer [to] file[] a declaration in ACE that includes a list of entries on which IEEPA duties were paid." *Id.* at ¶ 27. An importer's filing of a declaration also helps guard against the risk of erroneous refund payments. Similarly, CBP cannot process refunds of finally liquidated entries where the importer has not filed a complaint in this Court. Given these limitations, the Court should not lift the suspension of the injunction for entries where the importer has not made a filing.

CBP cannot achieve full compliance with the injunction if the suspension is lifted. And if the suspension were lifted, CBP's efforts at compliance would jeopardize the agency's ability to

deliver on the national security tasks that Congress has entrusted with CBP.  As Executive Assistant Commissioner Thomas explains, "[a]ny additional diversion of resources, which are already strained, would prevent personnel from fully carrying out the agency's critical trade enforcement mission."  Thomas Decl. ¶ 22.  "Personnel would be redirected from responsibilities that serve to mitigate imminent threats to national and economic security."  *Id.*  "Those activities include, but are not limited to, detecting and disrupting goods imported into the United States with a false declaration of country of origin to avoid payment of duties found by the courts to be lawful, . . . protecting against free trade agreement abuse, preventing goods made with forced labor from entry into the United States, detecting evasion of duties lawfully imposed under the nation's antidumping and countervailing duty laws, and other illicit actions that threaten U.S. domestic industry and the safety of individuals within the United States."  *Id.*

On the other side of the ledger, lifting the suspension is not necessary to protect the *V.O.S. Selections* plaintiffs or any other plaintiffs in cases with stayed injunctions.  In fact, the *V.O.S.* plaintiffs who are owed IEEPA duties have already filed for 98.5% of their refunds.  *Id.* at ¶ 16.  Two of the five *V.O.S.* plaintiffs did not pay any IEEPA duties.  *Id.*  In addition, importers of all sizes have opportunities to seek refunds on unliquidated or nonfinal entries.  The show-cause briefing order appears to mistakenly presume that small importers are disadvantaged.  ECF No. 86 at 2 ("[M]ost of the refunds that have been processed so far have gone to large importers, not small.").  But "CAPE is designed to operate consistently for all importers, whether large or small."  Thomas Decl. ¶ 15.  "CBP designed CAPE as a web-based portal to ensure that all parties have equal access, and to ensure large businesses do not gain an unfair advantage."  *Id.*  "CBP has engaged in extensive messaging" to notify "all parties" of CAPE, including offering webinars for small businesses who may be unfamiliar with international trade processes.  *Id.*

CBP's efforts at processing refunds have already succeeded in returning tens of billions of dollars to importers. CBP looks forward to continuing its phased approach to enhancing the availability of refund processing capability. Lifting the suspension on the injunction would divert resources away from CBP's work to deliver on its national security mission while jeopardizing the agency's ability to protect against attempted fraud. Given the present impossibility of full compliance, the Court should not alter the suspension of the injunction.

2.    The suspension of the injunction should also remain undisturbed as to entries for which CAPE functionality exists. An injunction should not go beyond "reasonable and necessary implementations of federal law." *Frew v. Hawkins*, 500 U.S. 431, 441 (2004); *see also Horne v. Flores*, 557 U.S. 433, 450 (2009). As explained above, CBP has already accepted for processing more than $89 billion in refunds—while the Court has maintained its suspension of the injunction. An injunction is not required for CBP to refund duties paid on unliquidated or nonfinal entries. CBP can and will make valid refunds available to such importers under its own authorities (where they file a declaration with CBP). CBP's success in processing refunds in the last three months favors maintaining the status quo.

3.    By contrast, Congress has not given CBP the authority to pay refunds on entries that are liquidated and final. To make refunds available for such entries, an importer must file suit in this Court, and the Court must enter an importer-specific order. CBP shares the Court's desire to facilitate the availability of refunds for importers with liquidated and final entries. But such importers must sue. And the Court's disposition of those importers' claims through universal relief exceeds its equitable authority. Instead, importer-specific relief must be ordered for CBP to process refunds for importers with liquidated and final entries. Each of the injunction's components suffer from multiple cross-cutting flaws, and the suspension of it should

7

remain in place for that reason.  Defendants wish to work with the Court and plaintiffs in the stayed cases on a way through which importer-specific relief may be entered in cases that importers have filed.

a.       The Supreme Court has long recognized that, because a federal court's "constitutionally prescribed role is to vindicate the individual rights of the people appearing before it," any remedy the court enters "must be tailored to redress the plaintiff's particular injury." *Gill v. Whitford*, 585 U.S. 48, 72-73 (2018).  And in *CASA*, the Supreme Court confirmed that a district court's remedial power under the Judiciary Act is limited to granting relief to the parties before the court.  606 U.S. at 856.  Universal injunctions—which "prohibit enforcement of a law or policy against *anyone*"—exceed that proper scope, and "federal courts lack authority to issue them." *Id.* at 837, 856.

Defendants respectfully disagree with the Court's distinction of *CASA*.  The en banc Federal Circuit already recognized *CASA*'s applicability to this Court in *V.O.S. Selections* by vacating the universal injunction based on *CASA*.  149 F.4th 1312, 1339-40 (Fed. Cir. 2025). This Court suggested that *CASA* does not apply because the Court "was established pursuant to the Customs Courts Act of 1980," "[n]early 200 years after the Judiciary Act of 1789."  ECF 82 at 2. But Congress has specified that this Court "shall possess all the powers in law and equity of, or as conferred by statute upon, a district court of the United States."  29 U.S.C. § 1585.  And as *CASA* explains, it is the Judiciary Act of 1789 that "still today 'is what authorizes the federal courts to issue equitable remedies.'"  606 U.S. at 841.  That is true regardless of the date on which a particular court was created.

The Court also invoked its exclusive jurisdiction over tariff-related matters, and the corresponding interest in judicial uniformity. *Id.*  But those are policy arguments, and as the

8

Supreme Court explained in *CASA,* after considering the policy arguments for and against universal injunctions, such arguments "are beside the point." 606 U.S. at 856. Commandeering the refund process, including through uniform supervision, is simply not within any trial court's power because courts are empowered to grant "'complete relief *between the parties*,'" not between the defendant and the world at large. *Id.* at 851. The Court thus answers the wrong question when it asserts that "[a]ll importers of record whose entries were subject to IEEPA duties are entitled to the benefit of the *Learning Resources* decision." ECF 82. The relevant "question is not whether an injunction offers complete relief to *everyone* potentially affected by an allegedly unlawful act" but "whether an injunction will offer complete relief *to the plaintiffs before the court*." 606 U.S. at 852 (emphasis in original). The Chief Judge's order assigning all IEEPA refund cases to a single judge also does not override limits on equity. And nothing about the assignment of pending cases reaches claims held by importers who have not sued.

  b.  The injunction is also unlawful because the Court did not apply the equitable factors for injunctive relief that the Federal Circuit explicitly mandated that it apply in the *en banc* IEEPA decision. *V.O.S. Selections*, 149 F.4th 1312, 1339 (Fed. Cir. 2025) (citing *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006)). If the Court had considered and applied the mandated equitable factors, it could not properly have concluded that a universal injunction was warranted. CBP has been refunding tariffs that it can refund administratively, and for entries that have been finally liquidated, it will refund tariffs in individual cases brought by plaintiffs with standing, once final orders have been entered.

  c.  The injunction also disregarded party-presentation principles. No party has a pending request for preliminary injunction. Notably, the plaintiffs in this case, V.O.S. Selections, clarified in seeking a permanent injunction—which the Court denied—that it did not "seek to

defend the nationwide scope of the injunction" it had originally received from this Court.  ECF 72, at 3; ECF 83.  The Federal Circuit has recognized that a court abuses its discretion when it "disregard[s] the longstanding principle of party presentation" by "rendering its decision on a ground not raised by any party at any stage of the proceedings."  *Astellas Pharma, Inc. v. Sandoz Inc.*, 117 F.4th 1371, 1377 (Fed. Cir. 2024).  If the party-presentation principle means anything, it means that a court cannot issue the drastic and extraordinary remedy of a universal injunction without a motion before the court and without any party asking for such radical relief.

4.       Finally, if this Court is disinclined to maintain the suspension, it should at least enter a stay pending appeal.  A stay pending appeal requires the Court to consider "'(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.'" *Nken v. Holder*, 556 U.S. 418, 426 (2009).  Defendants' arguments against lifting the suspension also satisfy each of these factors for a stay pending appeal.  As noted in our mandamus papers, we intend to seek a stay pending appeal from the Federal Circuit if this Court denies one, and to facilitate the Federal Circuit's orderly consideration of that request, the Court should administratively stay the injunction for seven days even if it denies a stay pending appeal.

## CONCLUSION

The Court should not lift the suspension of immediate compliance.  Alternatively, it should stay the injunction pending appeal.  If the Court  lifts the suspension, it should administratively stay its injunction for seven days to permit orderly proceedings in the Federal Circuit.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

ERIC J. HAMILTON
Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

/s/ Claudia Burke
CLAUDIA BURKE
Deputy Director

JUSTIN R. MILLER
Attorney-In-Charge
International Trade Field Office
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
PO Box 480, Ben Franklin Station
Washington, DC 20044
(202) 353-9063
claudia.burke@usdoj.gov

June 4, 2026                    *Attorneys for Defendants*

11

## CERTIFICATE OF SERVICE

I hereby certify that, on June 4, 2026, I caused the foregoing "**DEFENDANTS'**

**RESPONSE TO ORDER TO SHOW CAUSE AND MOTION FOR A STAY PENDING**

**APPEAL"** to be filed and served electronically via the Court's CM/ECF system.


/s/Claudia Burke