UNITED STATES COURT OF INTERNATIONAL TRADE

Case No. 25-00066

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

In the Matter of:

V.O.S. SELECTIONS, INC., et al,

Plaintiff,

v.

UNITED STATES, et al,

Defendants,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

U.S. Court of International Trade

One Federal Plaza

New York, NY 10278

June 9, 2026

1:30 p.m.

B E F O R E :

HON RICHARD K. EATON

U.S. INTERNATIONAL TRADE JUDGE

A P P E A R A N C E S :

MILBANK LLP
Attorney for V.O.S. Selections Inc.
1101 New York Avenue NW
Washington, DC 20005

BY: COLLEEN ELIZABETH ROH SINZDAK

U.S. DEPARTMENT OF JUSTICE, COMMERCIAL LITIGATION BRANCH
Attorney for the United States
P.O. Box 480
Ben Franklin Station
Washington, DC 20044

BY: CLAUDIA BURKE

U.S. DEPARTMENT OF JUSTICE, INTERNATIONAL TRADE FIELD OFFICE
Attorney for the United States
26 Federal Plaza
New York, NY 10278

BY: JUSTIN REINHART MILLER

U.S. CUSTOMS & BORDER PROTECTION
Attorney for the United States
1300 Pennsylvania Avenue
Washington, DC 20004

BY: PAULA SMITH

P R O C E E D I N G S

CLERK: The United States Court of International Trade is now in session. The Honorable Richard K. Eaton presiding before Court No. 25-00066, V.O.S. Selections, Inc. et al. versus the United States et al. Will the attorneys please state their names for the record, starting with the Plaintiff?

MS. SINZDAK: Colleen Sinzdak for the V.O.S. Plaintiffs.

MS. BURKE: Claudia Burke for the Government.

MR. MILLER: Justin Miller for the Government.

MS. SMITH: Paula Smith, U.S. Customs and Border Protection.

THE COURT: Okay. Thank you all. It's my understanding that Ms. Thomas is here. Is that true?

MS. THOMAS: Yes.

THE COURT: Could you actually come up, and we'll swear her in.

CLERK: Raise your right hand. Do you solemnly swear or affirm that the testimony you give in this action is the truth, the whole truth, and nothing but the truth?

MS. THOMAS: I do.

CLERK: Please state your full name for the record.

THE WITNESS: Susan S. Thomas.

CLERK: Please be seated.

THE WITNESS: Thank you.

THE COURT: And what's your job title?

THE WITNESS: I am the Executive Assistant Commissioner for the Office of Trade at U.S. Customs and Border Protection.

THE COURT: Well, thank you for coming all this way. I know it's a big pain in the neck. We've sworn you in, but that's just what we do here. There aren't going to be any got you questions. We're not going to put you on the spot. We're not going to ask you to make any policy while you're sitting here.

However, sometimes it's useful to have someone from the client here at what -- part of what's going to happen today is it's going to be sort of a settlement discussion in open court. It's occasionally useful to have someone from the client at a settlement discussion because in fact, it's often someone we'd like to have with a settlement authority, though you're not going to be asked to settle anything today.

And part of that is because occasionally lawyers, and you have excellent legal counsel, sometimes lawyers push legal positions beyond what is actually useful to the client.

And so, it may turn out in our discussions today

that it would be possible to take back to Washington the notion that some of the legal positions or some of the positions that are being pushed by the Government may not actually be in the Government's interest.

So, I would like to ask you, in addition to the -- to the questions that we're going to ask you later about the development of the CAPE system, for instance, and thank you for your declaration of today, which I recommend to everyone as useful reading if they're interested in how the CAPE system was developed. But I am going to, while you're sitting here, ask you to listen to my opening remarks.

We're here today to decide if an order of this Court, initially entered on March 4, 2026, and later amended, should have its suspension of immediate compliance lifted.

The lifting of the suspension would mean that the United States Government must immediately comply with the order, an order that provided for the liquidation or reliquidation of all entries of merchandise on which IEEPA duties had been collected, and as a result, for the refund of those duties.

In other words, the order provided for the refund of all of the unlawfully collected IEEPA duties. The order was the result of a February 2026 Supreme Court ruling that the IEEPA duties had been unlawfully imposed.

The legal effect of the Supreme Court's holding was that because all of the duties had been unlawfully collected, they must all be refunded. The Supreme Court's holding defined the legal relationship between the Government and the 330,000 importers, overwhelmingly Americans, who paid IEEPA tariffs.

Essentially, that relationship is one of debtor and creditor. Only a few of the 330,000 importers were actually before the Supreme Court as plaintiffs. But the court did not say that only the tariffs collected from those importers who were before it as plaintiffs were unlawfully collected, and that the other 330,000 importers would have to bring suits of their own in order to be entitled to refunds.

Nor did the court declare that only those duties paid by importers who took advantage of what would come to be called the CAPE system were imposed unlawfully.

Rather, the court held that all of the IEEPA duties were unlawfully imposed, and settled law directs that all of those duties must be refunded. The mandate in the Learning Resources DOS case, which is the one that went before the Supreme Court, was returned to the Court of International Trade on March 2, 2026.

I had previously scheduled a hearing in a related IEEPA case for March 4, 2026. At the close of that hearing,

I ordered the refund of all of the unlawfully collected IEEPA duties and then directed that a settlement conference be held on March 6, 2026.

At the March 6 conference, the Government acknowledged its responsibility to refund the unlawfully collected duties, proposed a method for doing so, and said that it would take 45 days to develop the method by which the refunds would take place.

I suspended immediate compliance with my order, and 45 days later, the CAPE portal was opened, and the first refund applications were submitted. A few days later, the first application for refund was approved, and a few days after that, the first payment was made to an importer.

Since that time, at least $85 billion worth of refunds have been approved, and more than $20 billion have been sent to the Treasury of -- to refund to importers. I note in passing that the Government has suggested that my order did not provide any impetus for the Government's quick action in developing the CAPE system. If you believe that, you believe in the tooth fairy.

As far as I'm concerned, the development of the CAPE system is a clear example of efficient Government at work. I didn't construct the CAPE system. It was constructed and made operational under the direction of Mr. Scott and Ms. Thomas.

And while it has its glitches, the Customs Service has worked diligently to correct them and indeed to give the system greater operational capability. For this, Ms. Thomas, Mr. Scott, and the people who are here today from the Customs Service are to be congratulated.

What may be most -- be the most important thing to come out of the development of the CAPE system, though, is that it offers convincing evidence that the Government intends to comply with the Supreme Court's holding and thus to refund all of the unlawfully collected duties.

The Government has said so all along in open court, and I believe that the Government wants to refund the money. The CAPE system is voluntary and was always meant to be voluntary. Importers can take advantage of it or not.

In my view, any importer that has the ability to use the system should use it because it provides a clear path for getting a prompt refund. But the CAPE system is not perfect, at least not yet. It does not accept applications for all of the various kinds of entries or entries at different stages of liquidation.

So, even though the Government is well on its way to authorizing refunds for more than half of the $166 billion of unlawfully collected duties, time has come to ensure that all of the duties are refunded. The removal of the suspension of the court's order will do just that.

The March 4th order and its subsequent amendments speaks in terms of liquidation and liquidation and reliquidation. Liquidation is the final assessment of duties on entered merchandise. I wrote the order in terms of liquidation and reliquidation because that is what customs does every day and how it traditionally makes refunds. That is why the CAPE system performs liquidations prior to making refunds.

Nonetheless, while developing the CAPE system, the Government has continued to liquidate entries and to collect duties, or at least it did for a time. It may have stopped now.

So, at least for a time, Customs continued to liquidate these entries and charge IEEPA duties and the Government has kept the money. And this took place; these liquidations took place after the Supreme Court's holding.

The Government has not used the voluntary reliquidation period to reliquidate those entries that were charged IEEPA duties and has permitted some of those entries to become final.

It has not extended the period of liquidation, letting some entries to finally liquidate when they should never have liquidated in the first place. And interest is running on the deposits. It's running at 6 percent and it's compounded daily.

So, the Treasury is suffering an injury here and the American taxpayers are suffering an injury. The Government has taken a position that before certain of the duties can be refunded, a court order is necessary. The Government singles out liquidations that have become final, in particular.

Of course, my March 4th order provides the needed authority in the form of a court order for the liquidation or reliquidation of all of the entries, including those that the Government has allowed to become final.

But the Government further claims that the order cannot perform the task of directing the necessary liquidations and reliquidations because the order has universal effect. For the Government, the order runs afoul of the Supreme Court's holding in Trump v. CASA.

The CASA case held that district courts had erred by entering injunctions that purported to bind the plaintiffs -- bind plaintiffs that were not before the district courts.

In my view, the CASA case is not applicable to the facts before us in the V.O.S. case. In CASA, lower courts sought to define the legal relationship between the Government and plaintiffs who were not before them and then enter injunctions to enforce that relationship.

Here, the legal relationship between importers and

Government has been defined by the Supreme Court. The Supreme Court only had a few importers as plaintiffs before it when holding that the IEEPA tariffs were unlawfully imposed. But it defined the legal relationship between all 330,000 importers and the Government.

Thus, the V.O.S. case is the reverse of the facts found in the CASA case. This is CASA turned on its head. But even if it could be said that CASA was binding on the facts that this Court now has before it, it is difficult to understand why the Government would appeal my order.

First, the order provides the Government with the tool it needs to effect the refund of all of the unlawfully collected IEEPA duties. It is clear from the Government's behavior to this point that it recognizes its responsibility to return all of the duties. So, the order provides an avenue for the Government to do just what it wants to do.

Second, even if the Government should prevail and the Court's order should be reversed, the Government won't get very much. It will not establish an important legal principle because the facts of this case are sufficiently unique that they are unlikely to be repeated anytime soon.

That is, it will not often be the case that the Supreme Court defines the legal relationship between the Government and hundreds of thousands of importers and that the Court of International Trade, the only court having

jurisdiction, is charged with effectuating the only legal permissible remedy, which is the refund of the unlawful collected duties.

Indeed, the American people could be forgiven for believing that by appealing my order, the Government is seeking to pick and choose which importers it favors and which duties it wishes to refund and which duties it wishes not to refund.

The CAPE system has worked very well to return duties for millions of entries. It is believed, however, that many of these entries were for large importers who had either the capacity to complete the CAPE forms themselves or had the wherewithal to hire customs brokers or lawyers to complete the forms for them.

And it is believed that those who have not taken advantage of CAPE are smaller importers who did not have the capacity or willingness to complete the forms. In Ms. Thomas' second declaration that was submitted to the Court today, she states that customs did an analysis in 2022 and found that between 86.4 percent and 96.4 percent of importers are small importers.

It has been understood from the first that the CAPE system was voluntary and that it would not be necessary for all importers to take advantage of the system in order to receive their refunds.

It is also likely that tens of thousands of these entries that have not been entered into the CAPE system were informal entries where the refund would not be in the hundreds and not be in the thousands -- would be in hundreds and not be in the thousands or hundreds of thousands of dollars.

Because these formal, informal entries liquidate quickly, the Government has allowed their liquidation, liquidations that charge the duties, to become final. It is also believed that tens of thousands of other entries that have become final and for which the Government appears to insist that there must be individual orders entered for the importers to receive their funds.

Many of these entries whose liquidations have become final after the Supreme Court made its ruling, but for which the Government has not chosen to re-liquidate, during the -- reliquidate the liquidations during the voluntary period, without -- thereby without charging duties.

The voluntary period is a 90-day period after liquidation during which the Customs Service can reliquidate the liquidated entries. And as far as I can tell, the Customs Service has not been voluntarily re-liquidating these liquidated duties without charging the IEEPA duties.

Thus, these entries have become final as a result

of Government action and subsequent inaction that resulted in their -- in the entries becoming final. Courts have long disfavored denial of a legal remedy when the action or inaction that led to the denial was solely in the hands of the Government.

I don't think it's the policy of the Government to favor the big importer by refunding their duties or grab money paid by little importers. I believe that what is thought to be a growing inequity is the unintended consequence of how the otherwise marvelously constructed CAPE system works.

I believe the Government wants to comply with the clear holding of the Supreme Court and return the money. One way to accomplish this would be -- would be for the Government not to appeal my order.

Another would be for the Government to stipulate the entry of my order or some other order that could be agreed upon that would provide for the reliquidation, for instance, of all of the finally liquidated entries. This would give the Government the tool it needs to do just what it wants to do. It would not result in any kind of legal precedent whatsoever.

Stipulation would just be a stipulation. There wouldn't be any precedent. There wouldn't be any reasoning to it. Plaintiffs have proposed a new order directing the

Government to program -- the Government to program the CAPE system to accept all entries, whether they're liquidated or not, and to process the refunds. This could help us along. I have drafted an order that sounds in law rather than in equity, thereby avoiding CASA. Maybe a stipulation could be agreed to for the entry of that order.

Finally, Plaintiffs ask for the certification of a class. I have stayed other proposed class actions, but it may be that things come down to a class action, a series of class actions, particularly a class for the entries whose liquidation has become final.

But whatever is done, I firmly believe that matters must be arranged in such a way that demonstrates that it's always been the Government's policy to refund all the duties to all the importers, whether large or small.

Indeed, in the papers filed for this hearing, the Government says, "Customs and Border Patrol shares the Court's desire to facilitate the availability of refunds for importers with liquidated final entries." And that, Ms. Thomas, is my pitch.

So, we're now going to enter the portion of our proceedings where we talk about whether or not the Court should lift the suspension of immediate compliance with our order. So, I am going to ask you a couple of questions. And Ms. Sinzdak may have some questions. And Ms. Burke may

have some questions. If you feel that any of these put you on the spot, just say so and maybe they won't be asked anymore.

My first question is, has the Customs Service taken any steps to comply with my order that whose immediate compliance with it has been suspended?

THE WITNESS: We have taken many steps to refund the IEEPA duties. One thing that I think I'd like to start with is just to give you a little bit of a background about me, because it really kind of played into how we developed CAPE and our process for moving forward. I started with the U.S. Customs Service back in January 1995.

So, I have been doing trade and cargo since then, over 31 years, right, as a frontline personnel, as an import specialist, working entries, liquidating, reviewing them to determine the classification, the value of the duty was correct.

From there, then I did work in policy and operations in the field in our -- in our technology space. And I really drew upon that experience, as well as my relationship with the trade community over the years, that we have a very historic, unprecedented challenge in front of us, right? Fifty-three, over 53 million entries with over $166 billion worth of IEEPA duties collected.

THE COURT: How many entries do you think have

been entered into CAPE?

THE WITNESS: How many entries?

THE COURT: Entry out of the 53 million.

THE WITNESS: So out of the 53 million, we've had over 16 million entries, or actually very close to the 17 million mark in CAPE, and that represents about $95 billion worth of the IEEPA duties on those nearly 17 million entries.

Those have all been accepted for processing, are in some level of the processing, right? Intake, liquidation, refunds, and then the final step, which is CBP certifying that refund for Treasury to disperse.

I do have an update to my declaration where we've already sent $23 billion in IEEPA duty refunds to Treasury for them to disperse. I track this daily. I have been heavily involved in this to ensure that we are doing all that we can.

So, we're in phase one at CAPE, right? I'm going to get into what we're looking at doing for the next couple of phases. But this week alone, we're going to send an additional $480 million in duties to Treasury to disperse.

And by the end of the month, we're going to have an additional $40 billion that will have been sent to Treasury, certified for Treasury to disperse. So, taking us well over the $60 billion mark, right?

And I think that really demonstrates that CAPE is working. It isn't everything. And I -- and I know that, right? If we approached this historic and really unprecedented volume, how we had done things in the past, I can tell you we probably wouldn't have issued one refund at all yet.

If we had to program the system that we have for trade to do everything at once, it would take much longer than we did. And that was part of our thought process, right? How do we do this in a way that isn't bureaucratic, isn't burdensome to the trade community, but also not burdensome to my frontline personnel, who are also responsible for making sure dangerous goods aren't coming in, making sure all the other priority trade issues that they handle, all the other issues that they have on their plate to ensure that we're protecting America's economic prosperity, that this did not cripple them.

And, you know, we looked at our old processes and how we would have asked for something in the past. And it would have resulted in over 4 million man hours. Like, we would just be doing it forever. And that's not what I wanted. And that's not what Commissioner Scott wanted.

So, in developing CAPE, right, we knew that at least 60 percent of all the IEEPA duties were on unliquidated entries and on those entries that were within

our reliquidation authority.

The one thing that was important to me was that knowing, to your point, right, there's small importers, small businesses, folks that this is not something that they do every day, that we weren't asking them for a whole lot of information like we would have done in the past.

In the past, we would have asked for a new entry summary, transmit to us a new entry summary. That's not something that a small business could have done. But the one thing that every single importer, whether you've imported once or you import every day, 365 days a year, you know your entry number, right?

THE COURT: Well, you certainly know your number as an importer. As it turns out, some importers don't know the entry number for all their entries. But nonetheless, the overwhelming majority of them do. So please continue.

THE WITNESS: Right. So, in developing CAPE, what we ask the trade community to give us is that entry number, right? Log into a web portal, don't have to use complicated infrastructure the way that we normally get entries from brokers, right, through ABI, through EDI, things that an average importer would not have or have the availability to get, right?

So, using the web portal, you have access to the internet, you can sign up and have an account, provide us

those entry numbers and a format. We even give a template, so they don't even have to go find their own. The template is in the CAPE portal. They import whether they have one or up to $9,999. We intake that and CBP does the rest. And in fact, what we --

THE COURT: So, wait a second so everybody understands. Part of the genius of the CAPE system is that rather than have each entry by an importer liquidated on its own, it accumulates all of that up to 9,999. All of the importer's entries in one place and liquidates them that way.

THE WITNESS: Correct. So, we intake them on one file. If you have more than 9,999, you can submit more than one CAPE claim. When we receive that, we automated a lot of the processes that even the import specialist, the frontline personnel that would be reviewing these, right? So less burdensome for the trade, less burdensome for our frontline personnel.

Now we built in checks and balances. These entries are quite complex, right? Every line that has IEEPA duties has more than two HTS numbers. And to be frank, sometimes folks didn't put the right information on the right part of the HTS.

So, what we built was programming that looked at every single line to ensure that as we remove the IEEPA

duties, that everything else, right, remains intact, but is also correct. The system is doing that. And then that moves it to the next process, which is into liquidation, into the refund certification.

And that takes about, you know, we averaged about 60 days. So that's kind of where we were right on April 20th. As you said, we took our first claim. It went through the liquidation, the refund certification process, sent the money over to Treasury, and it was deposited into their bank account. That process is happening every single day. Every day we're still receiving claims. Like I said, nearly 17 million entries.

And when you think about what CBP normally does, we last year we took a look at how many refunds we did in fiscal year '25. It was only 338,000 entries that resulted in a refund. In the first six weeks in CAPE, we did 8.4 million entries.

And that's why I say, like, if we used the thought process, the way we would have done something in the past, I think you'd be yelling at me that why I haven't done one refund yet. And it's because we can't do it all at once.

So now we're on to phase two, right, which is the reconciliations, entries flagged for reconciliation that don't have a recon entry on file yet. That represents about 28.7 billion in IEEPA duties.

So combined with phase one, what was eligible, which was about 109 billion, 66 percent, the reconciliation, which is another 17 percent, we're at 83 percent of all of the IEEPA duties that were paid being eligible to be processed in CAPE.

And then phase three, so phase two is scheduled to deploy on June 29th. And then right behind that, we're working on the functionality to how do we process the finally liquidated entries. Now, I only have stats for you that has all of the IORs that fall into that category versus like plaintiff versus non-plaintiff.

But that represents about 6.9 percent in the IEEPA duties, about 11.4 billion. But the other piece of that is that there's 27 million entries associated with those as well, right?

So that but that would bring us up to just about 90 percent of all IEEPA duties paid would be eligible in phase one, two and three.

THE COURT: And what percentage would you say of the entries themselves would that be?

THE WITNESS: Just over 95 percent.

THE COURT: Just over 95.

THE WITNESS: It's about 51.3 million entries of the 53 million. So, then what remains are the recon entries where a reconciliation has already been filed, those that

are covered by a drawback claim, those that are on a protest. And then we do have entries as well that weren't filed in ACE, primarily the consolidated informals.

And we're going to attack each of those buckets, right? As we work through, you know, and again, that -- whether it's a small importer or a large importer, they're included in those phases.

One thing that we haven't provided to you yet, but I think it is really, really key is that we looked at CAPE, right, to see, you know, is it primarily large importers or small importers that are filing?

Over 40 percent of the 85,000 importers of record that have already had a CAPE claim in our system, of those, right, those 40 percent of those IORs, they filed less than 20 entries total in FY25. That was the other economic study we did, which showed that, you know, 86 to 96 percent of all IORs, or, you know, fall into the small importer category.

We are processing claims for small importers. And I've heard from some. I've been out talking to the trade. You know, probably think it's a little dangerous in this time, right? Why aren't you doing enough? But they're thankful. They've thanked CBP for a process that wasn't burdensome, that resulted in, like, money already being in their bank. And I have some tell me, like, we never thought you'd be able to do it.

THE COURT: So, but if I understood you correctly, 85,000 importers have used the system. Does that leave 245,000 who have not?

THE WITNESS: Not necessarily because I didn't include the brokers that have filed claims. So, there's importers that are filing claims directly, and then brokers that are submitting on behalf of importers.

So, there is a distinction in terms of, I mean, that's representing, like, of the IORs that are in CAPE, which is about 85,000 so far, 40 percent of them represent, they have less than 20 entries on file.

THE COURT: Yeah, but I'm still wondering if there are 245,000 importers out there who have not taken advantage of the CAPE.

THE WITNESS: What I can -- let me take that back to make sure I'm telling -- I know that it's 40 percent of the importers that have claims have those small entries, but I want to double check the number to know if I'm saying, like, that they filed it themselves or a broker filed on their behalf.

THE COURT: I'm going to interrupt you for a second and ask Ms. Burke a question. Ms. Burke, if I understood Ms. Thomas correctly, she was saying that phase three, or an eventual phase of CAPE, would accept entries whose liquidation has become final. Does CAPE have the

authority to accept those entries and reliquidate them?

MS. BURKE: Not until the order is final. What CBP is planning to do, and obviously the witness can do a better job than I can do, but what CBP is planning to do is get that capacity ready to go for whenever we know the answer as to whether they can -- whether they have the authority to do it.

The issues before the federal circuit, I do want to point out that we're talking about 6.9 percent of the total amount of money. 6.9 percent includes both the finally liquidated entries for which there are cases, and for which there aren't cases. That's the sole area of dispute, I think, today.

THE COURT: So, are we talking about $10 billion?

MS. BURKE: I'm terrible at math, but I think that's right about.

THE COURT: Well, even I think that's real money.

MS. BURKE: Oh, absolutely. But I also want to remind everybody that there are approximately 4,000 cases pending in this court. Many of the cases are plaintiffs that are huge players in this industry.

THE COURT: Well, I've -- we can get to that at some point. I've guessed, though I don't know, that many of those cases, the plaintiffs in many of them have taken advantage of CAPE.

MS. BURKE: Yeah, so we don't know, I don't know standing here what percentage of a particular plaintiff's claim are unliquidated entries versus liquidated entries.

We know that for these five Plaintiffs who are under the V.O.S. caption, that they have made CAPE claims for 98.5, I think, percent of the money that they're owed. So that suggests that their money is not tied up in the finally liquidated entries.

But we have no reason to believe that this community, which is a pretty sophisticated community, is not filing cases to protect themselves. I'd be willing to bet, and this is obviously not testimony, it's just based on my general experience, but I would be willing to bet that at the end of the day, that 6.9 percent is mostly captured in the existing cases.

THE COURT: I'm sorry, captured where?

MS. BURKE: In the existing cases, or the ones that will be filed before the end of the statute of limitations in another year or so.

THE COURT: Really?

MS. BURKE: Well, that's just --

THE COURT: That would not have been my guess. Thank you, though. I interrupted you.

THE WITNESS: Can I, I want to finish on phase three, right, as well. So, as I said --

THE COURT: That'd be great.

THE WITNESS: We are, you know, we're working on reconciliation right now with deployment date of June 29th, and then is the, you know, the timeline for the finally liquidated for the plaintiffs, right? And so, four weeks from when we start that, I'm looking at end of July, right? June 29th for recon, end of July for those that are Plaintiffs.

The one thing that is really, really key there, though, is that I really need the importer record numbers to be able to identify and slice and dice the data around that 6.9 percent, because without the importer record numbers, I run the danger of not identifying the right business.

We could have companies like the case that was filed by Susan Thomas. Is that Susan Thomas Inc? Susan Thomas LTD? Susan Thomas LLC? Something that's, you know, all together, separated by spaces. Those make a big difference, right?

And I wouldn't want to identify the wrong person. We have over 10 million importer record numbers in our systems. So that is a key identifier to be able to, you know, actually do phase three, because that's what I'm going to use to ensure it's the right company, right? The right plaintiff, the right person that's identified in that case to make sure that that's who we're processing.

You know, I, again, I can't speak to, you know, the appeal and -- but I can tell you that I will be prepared and I am working with the team to ensure that as we work through each bucket and each complexity of like, as -- and as those buckets get narrower and narrower that we account for, how are we going to build functionality to do that?

And that is like the issue around like the immediacy, right? If I have to program everything for the remaining types, the drawback, the recons that already have reconciliation filed and all these other things, then I run the risk of what I started with, which is like, if we had to do everything at the same time, I probably wouldn't have done anything yet.

This is allowing me to have a very strategic, tactical approach, but yet expedient, ensuring accuracy and also preventing fraud from anyone making a claim for something that they should not be making a claim to.

And I think the process we've developed is making sure that I can make sure that we're giving the right money back to the right person and we're doing it as quickly as possible. And I can tell you that I am pushing our teams to the limit. They are doing things that they really haven't done in the past.

This is a priority for myself. It's a priority for Commissioner Scott. We know what our responsibility is.

And I think the way that we're doing it is getting those refunds out in a very efficient and effective process.

THE COURT: Okay, I agree with you.

THE WITNESS: Thank you.

THE COURT: And I congratulate you.

THE WITNESS: Thank you.

THE COURT: And the others here --

THE WITNESS: Thank you.

THE COURT: -- for what you've done. Nonetheless, I do remain concerned about particularly the entries whose liquidation has become final. And so now we're going to talk about the order to show cause and whether or not I should remove the suspension of immediate compliance with respect to the March 4th order as it's been amended and changed over time. So, Ms. Sinzdak, do you think I should remove the suspension or not?

MS. SINZDAK: I think that some of it depends on the --

THE COURT: You have to come up here to speak at the lectern because if you don't, it doesn't get recorded and it's as though it never happened.

MS. SINZDAK: I was going to say, I think that some of the answer does depend on what we hear today I think in terms of the evidence, but as we understand it and based on the reading -- on the briefing that the Government

submitted, the Government has every intention to make the CAPE system available to process and pay all IEEPA refunds.

And to the extent it's only real objection is that it needs the time necessary to build out the rest of the system while working, I think the quotation in their brief was as, "Expeditiously as possible," we don't want to do anything to interfere with that.

And we are concerned that if the Government believed that it needed to do everything all at once, we might actually be in a worse situation than we're on right -- in right -- and we're in right now. But I want to put a little asterisk of course for those finally liquidated entries because I have heard the Government saying throughout today that it is -- it wants to move as expeditiously as possible to open up the CAPE system for everybody.

I think including the postal service entries that they flagged, it's just a matter of prioritizing and getting those done. But I still hear them insisting that they need individualized court orders in order to allow people whose claims are past -- are 90 days past liquidated to access CAPE. And I think there is not frankly a legal basis for that.

So, I do want to make sure that that issue gets addressed. And you know frankly, I think one thing that

would be helpful would be to just understand what the Government's legal basis for that 90-day cutoff, they have no ability to reliquidate of their own accord. I think that's an important question to be addressed.

And the second important question is why the Government has insisted that those orders need to be individualized. Because you know frankly, we've been scrutinizing the statutory text, we've been scrutinizing the precedent and we're not finding either of those requirements. So, I think just some more information on this -- in this would be very useful.

THE COURT: Okay, well, Ms. Burke, do you want to tell us what the Government's position is and why?

MS. BURKE: So, I want to point out that we agree with Ms. Sinzdak with the first part of what she said. We also don't think that it would be appropriate for the suspension of immediate compliance to be lifted at this point. The system is working really well.

Customs obviously can't do everything all at once. It has -- it shas a process, it has a schedule for exactly how it's going to approach all of the obstacles that it's going to face. And so we agree with the Plaintiffs that Customs should be permitted to continue to do that. As -- so as for this --

THE COURT: Forgive me.

MS. BURKE: Yeah.

THE COURT: Well, maybe I'm completely wrong, but I thought that one of the obstacles seemed to be the universality of my order. Is that an obstacle?

MS. BURKE: So, it is an obstacle, but we think that part of it is not really as big an obstacle as all of the discussion has sort of blown up into.

THE COURT: You can say, as you think.

MS. BURKE: So, for importers who have cases before the Court, yes, we think there should be individual orders. Are we asking for the court to write up 4,000 individual pieces of paper with 4,000 captions and entering them on each docket? No, I think there's much easier ways to do it. You can --

THE COURT: With respect to those cases, I'm sure that can all be worked out.

MS. BURKE: Yes.

THE COURT: All other -- all other cases, people who haven't brought a lawsuit.

MS. BURKE: So, I could be wrong, but I thought that -- I'm going to answer this question for sure.

THE COURT: Go ahead.

MS. BURKE: But I thought what Ms. Sinzdak said was that she was confused as to why we were -- we were insisting on court orders for each case. So, the question

about parties who are not even before -- or importers who are not even before the case, before the court, we just think there's an obvious problem with the Supreme Court's decision in CASA.

Now, I understand what I heard the court's remarks. And what I heard the court saying was that it doesn't believe that CASA applies in this situation. But respectfully, the Federal Circuit has already ordered the court in this case to -- I'm going to read the language, so I don't mess it up.

"On remand to consider in the first instance whether its grant of a universal injunction comports with the standards outlined in CASA." In our view, this court didn't do that. It doesn't actually have the authority to say it doesn't apply to us. The Federal Circuit already told you it applies to it, that CASA applies to this court.

THE COURT: Read that to me again, please.

MS. BURKE: Yeah. "On remand to consider in the first instance whether its grant of a universal injunction comports with the standards outlined by the Supreme Court and CASA."

THE COURT: Well, that's different from saying that CASA prohibits the issuance of a universal injunction court order in this case.

MS. BURKE: So, in our view, what CASA says, and

I'm paraphrasing a little bit here, but what CASA says is that the appropriate question for any district court or in a district court's position is whether an injunction will offer complete relief to the plaintiffs in the case.

That's the -- that is the inquiry that the court has to make. The Courts didn't decline to make that inquiry and said instead, CASA doesn't apply to us. So, our view is that the Court has to go through the inquiry.

And obviously our view is that the Court can't extend the release beyond the parties. That question is unappealable. And the Federal Circuit, I guess, is going to -- is going to tell us what the answer is if this -- if the Court doesn't want to either a) issue an injunction in each case or whether the Court insists on making the relief universal to all parties, whether they're before the Court or not.

THE COURT: So, as it stands now, it's the Government's position that phase three of the CAPE system, which would allow for the reliquidation of finally liquidated entries using the CAPE system, that Customs and Border Patrol isn't authorized to enter into phase three.

MS. BURKE: It's, I think, it's authorized on its own authority to build up the system to get it ready.

THE COURT: Yes.

MS. BURKE: I don't think it's authorized to

actually process any entries. I mean, it is already --

THE COURT: To throw the switch.

MS. BURKE: Right. I think that it's, in our view, the Court is the holdup here because the Court can just issue an injunction with a list of cases that it applies to and Customs can go forth and process all of those claims once it gets to IOR numbers, et cetera.

THE COURT: Well, let me see. Maybe I don't understand you completely here. So, you're not merely talking about the 4,000?

MS. BURKE: No, I am. I was talking about the 4,000.

THE COURT: Oh, you're talking about the 4,000.

MS. BURKE: For the rest of it, yes.

THE COURT: How about everybody else?

MS. BURKE: Right, that question is on appeal.

THE COURT: Okay. And so, my appeal to you is withdraw your appeal. Let them build up the system. Let them put the system in the place. You win nothing if the Court of Appeals says that my order is unlawful.

This is a situation that's simply never going to happen again. Or you could stipulate to the order and then you wouldn't have any precedent of any kind because there wouldn't be anything behind it, any explanation, anything just -- and then, as I say, we'd be in a world where phase

three can happen. This situation is unlikely to appear again.

And we could gain the refund of all the IEEPA duties, which I believe the United States Government wants to achieve.

MS. BURKE: Well, I mean, a couple of responses to that. It won't be any surprise to the Court that I do not have the authority to say yes to any of those things.

THE COURT: I understand that.

MS. BURKE: But I hear you.

THE COURT: Just like I'm not asking Ms. Thomas to make --

MS. BURKE: Right.

THE COURT: -- any policy decisions today, I'm not asking you to commit to anything.

MS. BURKE: Right. I will say, though, that the hearing where we are today, I will say, frightened the agency because all of a sudden, we really thought that we were going along the way that the Court wanted us to go along.

And then all of a sudden, there's this specter of immediate compliance that I thought everybody understood was impossible. So now what I hear Your Honor saying is the Customs should be able to continue at its pace. That's great. We support that.

Again, I am absolutely not minimizing the amount of money at stake, but they're 6.9 percent of the money is tied up in this question. It's we know it's less than 6.9 percent. We don't know. We don't know what portion of the 6.9 percent are tied up in the cases and what portion are not tied up in the cases.

But we know that the universe of disagreement here is something less than 6.9 percent. And so, I do want to make the point that the Government is not picking and choosing what it will pay and what it won't pay. We're talking about a number that's less than 6.9 percent. We think we have a valid legal basis for challenging it. And I just I really want to set the record straight about that.

THE COURT: Well, I know you think you have a valid legal basis for challenging it and you may well for all I know. I just wonder if you really want to. That's what I'm wondering.

Why would you take the trouble? It's you're challenging something that will set a precedent of no kind. And so that's what I'm hoping you'll take under consideration. And --

MS. BURKE: I hesitate to say --

THE COURT: Forgive me for just a second.

MS. BURKE: Oh, sure.

THE COURT: Oh, maybe I should move myself a

little closer.

MS. BURKE: I hesitate to say this, although I don't think that it's giving anyone any ideas. But I will say that the 120 -- the Section 122 case has already been appealed. That is very similar to this in the sense that the decision is going to be whether the president is authorized to use 122 in the way that it has.

And so, I understand that the Court is saying that this is the one off and it could potentially be hidden in some kind of stipulation. I really just don't think that's how it's going to work out. I think that very soon within the next year, we're going to be hit with a lot of people saying, why don't you just do it the same way that you did it before? And maybe we will. I don't know.

And I'm obviously not conceding that we're going to win or lose. But I just don't think it's right to say that this is a one off.

THE COURT: Okay.

MS. SINZDAK: Your Honor.

THE COURT: Well, I'll give you a chance.

MS. SINZDAK: Great. Thank you.

THE COURT: Well, it's going to be disappointing to me if we have to find our way into the world of class actions when it seems to me that let Customs and Border Patrol be Customs and Border Patrol. Let them do their job

and let them do what I believe the Government actually wants them to do.

MS. BURKE: Thank you.

THE COURT: All right, thank you. Ms. Sinzdak.

MS. SINZDAK: Thank you, Your Honor. I think I'm more troubled now, frankly, because my basic question was what the legal basis was for differentiating and saying that CBP lacked the authority to reliquidate voluntarily without a court order.

And I still have not heard an answer to that question. We haven't seen a statutory citation explaining why CBP can't simply reliquidate all of these entries that are post 90 days, many of which they allowed to go post 90 days after the Supreme Court's decision was in place after Your Honor had issued its orders.

So, I'm feeling a little bit frustrated because I hear this excellent testimony that is saying that CBP just wants to refund the money. CBP and the Government recognize that they cannot retain the $166 billion they unlawfully collected.

But now I'm hearing, but they're not going to do that for 6.5 percent of people. And we shouldn't worry about that.

THE COURT: It's not people.

MS. SINZDAK: It's -- pardon me, you're right,

it's entries. It's entries.

THE COURT: I imagine that it's many more people.

MS. SINZDAK: I think that the number, and Ms. Thomas could of course correct me. I think she said it was $11.4 billion that we're talking about right now.

And our frustration is that, again, we have not been able to find a reason that CBP can't simply, no court order at all, can't simply reliquidate. We think that the Federal Circuit's decision in Shinyei actually establishes that this idea of finality that applies under Section 1514, it doesn't apply when claims are not under Section 1514.

So, this whole concept of the 90-day finality we think is just being misapplied here. And certainly, we would want to at least have the Government explain here is our basis for that. We also, again, there's been no explanation of why it would have to be an individualized order. We appreciate the Government's CASA arguments. We think they're wrong.

And I can explain to you why. We think they're wrong many times over. But also, it seems like the easy explanation, if the Government really is committed to offering refunds to everyone, then they can simply agree to our, but they're worried about CASA, they can simply agree to our class action where everyone will be a plaintiff, and everyone will have an order.

So I think that my frustration today is hearing the Government say, and completely commendably, we want to refund everyone, and then saying, you know, oh, yes, there's the 6.5 percent, and we're taking this individualized order position without citing statutes, without citing precedent that would require them to do that, and without explaining why they wouldn't -- I mean, I share Your Honor's desire not to wander into class actions, but I sort of feel like if we're going to wander into class actions, or we're going to wander into a long fight over CASA, let's wander into class actions.

But I don't still understand why the Government is opposed to that. So, I think I want to return to what we said in our show cause order. We very much appreciate that the Government needs to do this in an orderly manner.

And that's why we do not think that it's necessary or maybe appropriate to lift the suspension that would put them in a situation where they would find it impossible. But we do think it's very important for there to be an order on the books to ensure that everyone has access to the CAPE system, because that is, frankly, what's required by the law, and also by equity.

There's simply no basis for saying that the Government unlawfully collected $166 billion, and now it'll return $156 billion. But this poor 6.5 percent of money is

just, you have to have people filing individual claims.

And I understand the Government disputes who those -- who those importers might be. Honestly, I don't think it matters. It's just that there is no basis for denying those people access to the administrative system that has been set up for everyone else.

The other thing is, and I also have a few small, like, factual questions that I think would be useful, particularly because I believe that part of the Government's arguments about why there shouldn't be an injunction are about the fact that they're already intending to do things.

And I have a few questions along those lines, but I don't need to raise those now if we're still discussing CASA. And I'm happy to answer any questions you might have.

THE COURT: Okay. Well, we'll let Ms. Burke.

MS. BURKE: So, if it's all right, Mr. Miller is going to handle this.

THE COURT: Okay.

MS. BURKE: But earlier, when I stood up, I remember saying, I think what Ms. Sinzdak said was X. But, of course, she had asked a totally separate question, which now Mr. Miller will answer.

THE COURT: Maybe you could straighten me out on something, though. Even if we got down to the, in order to get to the 6.9 percent, don't we have to reliquidate a lot

of finally liquidated entries?

MS. BURKE: Sorry, you mean before we get to the 6.9 percent?

THE COURT: Yeah.

MS. BURKE: No.

THE COURT: We think that -- we think that as far as the money is concerned, the only -- and aren't they regularly becoming finalized every day?

MS. BURKE: Well, they may be. I mean, I --

THE COURT: Yeah, please.

MS. BURKE: I don't -- Ms. Thomas may know the answer to this. I don't know how many are readily becoming liquidated, because so many people have used CAPE. And people are really exercising their rights quickly. It could be that not many of them are falling into that liquidated category.

THE COURT: Well, stay right there. Do you have any idea how many are becoming final?

THE WITNESS: Well, the numbers I provided you today, the $11.4 billion in duties that are on finally liquidated entries for all of the IORs, whether they're appointed or not, that's $11.4 billion as of like, we ran the data, right, this week in preparation for here. So you have the unliquidated entries that folks can use CAPE to claim on. For those entries that are currently liquidated,

if someone is coming up upon that 80 a day --

THE COURT: No, I'm just wondering if you don't (indiscernible) --

THE WITNESS: Right, so --

THE COURT: -- I'm guessing that as we speak some entry --

THE WITNESS: Some.

THE COURT: -- is becoming final.

THE WITNESS: Yes, right, those that --

THE COURT: But do we have any idea what the rate is?

THE WITNESS: No, I mean, I can go back (indiscernible) rate --

THE COURT: No, that's okay. That's -- and so they are -- so more are becoming final every day.

MS. BURKE: Well, I -- so what I'm about to do is really ill-advised, because I'm going to do a little bit of the math.

THE COURT: You don't have to (indiscernible) --

MS. BURKE: I want to do a little bit of math, because we know that about 60 percent of the total amount are in unliquidated entries, right?

THE WITNESS: And those that are within the 80 -- so Phase I is (indiscernible) liquidated --

MS. BURKE: No, (indiscernible) 80 days.

THE WITNESS: -- and within 80 days, and that was 109 billion.

MS. BURKE: Right, and we also know that soon about $89 billion/$90 billion are in process to be --

THE WITNESS: (Indiscernible).

MS. BURKE: Okay, so what I can't do, because I'm bad at math, is figure out what percentage that $90 billion is. I know that it's more than half of $166 billion.

THE COURT: Yes, you were right before.

MS. BURKE: Right, that's all I know, but what my point being is that we were right, that if 60 percent of the unliquidated, of 60 percent of the total are unliquidated entries, and we're in the process of refunding more than 50 percent, most of those parties have exercised their rights timely, and we don't necessarily have a whole bunch of entries that are falling into liquidated status. Does that make sense?

THE COURT: It makes sort of sense, but I guess we just simply don't know.

MS. BURKE: We don't know. Right, I mean, I'm sort of hypothesizing, yeah. So Mr. Miller is going to answer Ms. Sinzdak's questions about why Customs is not authorized to use CAPE for liquidated entries.

THE COURT: Okay.

MR. MILLER: Good afternoon, Your Honor. The rule

of finality has been a subject of discussion and investigation over the course of 15 years before this Court and the federal circuit. I've dived into these issues deeply over the years, both in this case but also in the Section 301 case that came about, about seven years ago. And what I've discovered is, as Ms. Thomas described today, is that the agency, the authority of the agency, is defined by statute. And they take that limitation very seriously in that they don't take action unless Congress has specifically provided a statutory authority for them to do so.

And in this space, there's really only three statutes that play into this space. So 19 U.S.C. 1500 gives the agency the statutory authority to effectuate a liquidation. If we move to the next provision, 19 U.S.C. 1501, the agency then has 90 days to accomplish a reliquidation if in fact they have discovered that there's a basis to do so. And if we go further down Title 19 to 19 U.S.C. 1514, this is the statute that embodies the rule of finality, and as the Court is well aware, it describes this process by which a protest is filed, and that keeps that liquidation from becoming final, but if a protest in that whole module isn't followed, then a decision by the Customs service becomes final.

Apart from those three statutes, there isn't any other statutory authority that I'm aware of that allows the

agency the ability to effectuate a liquidation or a reliquidation. Now, the courts have started to dive into this rule of finality, first in the context of the AD/CVD, the antidumping and countervailing duty context in Zenith Radio. And they're the ones who initially looked at the statutory scheme and here said that "the statutory scheme has no provision permitting reliquidation and liquidation." Because of that conclusion, we now have --

THE COURT: Now, that was some years ago.

MR. MILLER: That was some years ago as well -- I know this case law is very familiar to Your Honor, because it resulted in the statutory injunctions that we know so well today in terms of the Court Form 24 that prevents liquidation from occurring in that context. If we move forward a few more years to Shinyei, Shinyei was the case before the federal circuit that looked at it in the context of Section 1581(i). And what's interesting about that case, if we actually dive into it, is a number of different arguments were raised before the Court of Appeals in that case.

And again, it was an (i) case. It wasn't an AD/CVD Section 1581(c) case, and it wasn't a 1581(a) Customs case. And one of the arguments that the government raised there is whether the rule of finality applies in the particular facts of Shinyei. And at Pages 1311 and 1312 of

the Court's decision, the federal circuit held that the rule of finality did not apply, and that is what is allowing us to then move to what is, would be sort of the next step in the academic analysis is, well, if the rule of finality doesn't apply, how do we effectuate relief?

And in Shinyei, what the Court did is it then went to its own remedial powers, 28 U.S.C. 2643, and in Shinyei, ultimately that's how relief is effectuated, is they held that the rule of finality did not apply, so therefore, it opened up some opportunity. It opened up some flexibility for the Court, and the Court didn't use one of the agency's statutory powers to effectuate the reliquidation. It used its own statutory basis for relief --

THE COURT: Which is what I'm trying to do here.

MR. MILLER: Yes, Your Honor. I quite understand, but in context to Ms. Sinzdak's question, that why the government has taken this position that a Court order is necessary for the agency to effectuate relief in a category of entries that we've been discussing that have been -- where the liquidations have become final.

THE COURT: Okay, I understand. And we'll give you a chance -- come on up to the mic here if you would, please.

MS. SMITH: You -- okay. (Indiscernible).

THE COURT: Which -- Ms. Burke will tell me who I

should really ask this question to. Why hasn't the Customs and Border Control, why haven't you taken advantage of the -- your ability to extend the period of liquidation, to extend it two years?

MS. SMITH: That would not -- I wouldn't be able to extend liquidation on those entries that had already liquidated.

THE COURT: No, well, I was thinking that in order to stop final liquidation, we start at the beginning and extend liquidation.

MS. SMITH: Are you speaking from like, when the Supreme Court decision was made?

THE COURT: Yes, or even today. For all I know, they're -- if it's 314 days from the -- on average, it's 314 days for a regular liquidation to take place after entry. Is that true, Ms. Smith?

MS. SMITH: Yes, (indiscernible).

THE COURT: (Indiscernible). And so there could still certainly be entries out there that haven't liquidated yet, and you would think you would have taken advantage of that, your power to (indiscernible). You don't need a court order to do that, to extend liquidation and stop this final -- these final liquidations from happening.

MS. SMITH: But for those entries that are unliquidated, including those that are in the 314-day cycle,

those are covered in Phase I, because if an entry reaches the 314 days --

THE COURT: That's Phase I, but my point is, I'm talking about people who don't take advantage of Phase I.

MS. SMITH: Right, well, then, they'll be -- it'll be continued to be in an eligible bucket, though, right, because --

THE COURT: Possibly.

MS. SMITH: Possibly, but for Phase I, and for those that --

THE COURT: Ms. Burke is doing everything she can to get the Court of Appeals to stop Phase III. So I --

MS. SMITH: (Indiscernible) --

THE COURT: -- so my question is, why -- you haven't taken advantage of the extended period of liquidation?

MS. SMITH: I have not, but based on what we've just discussed, right, which is like, those that would have been extended are those that were unliquidated in Phase I, and we've already received paid claims on $95-point billion of the $109 billion that was eligible for Phase I.

THE COURT: I understand.

MS. SMITH: So for those importers listening, I encourage them to continue to use CAPE --

THE COURT: Me too, but it's still --

MS. SMITH: -- because their claim can be processed immediately.

THE COURT: -- over ten billion -- it's still over $10 billion.

MS. SMITH: It's still over $10 billion, and we're prepared to process it.

THE COURT: Okay, so --

MS. SMITH: We -- we're prepared.

THE COURT: All right. Well, please consider extending the period of liquidation with respect to those entries. Now --

MS. ROH SINZDAK: Yes.

THE COURT: -- what is wrong with Mr. Miller's analysis?

MS. ROH SINZDAK: I first, I want to just clarify at the outset, I think he got away from this, but the government has already made clear that Section 514's finality, the finality rule in Section 514, does not apply. So this was in the AGS case, where the government came in and said that there was no need for a preliminary injunction barring liquidation, because there would be the capacity to reliquidate afterwards. And in distinguishing a prior case target, the government expressly said that unlike here, target involved CBP decisions made under Section 5 -- 1514 and its finality principle.

So I just want to make clear that the government had like, kind of in the bucket, that the government is not arguing and cannot be arguing that 1514 applies. And of course, the -- this -- and another group of this Court based on that stipulation denied summary judgment, so -- and pardon me, denied a preliminary injunction, so there's judicial estoppel at play there as well.

But I took Mr. Miller to not be arguing, actually, that the finality principle applies. I think what he was saying is there is no finality principle, but the CBP just has no -- needs some statutory, express statutory authorization in order to reliquidate. And so it needs that from the Court, because it can't do it on its own authority. And I do think Shinyei expressly rejected this idea that statutory silence constitutes a bar on reliquidation.

I think Mr. Miller is correct, that in that case the Court was considering its own power to order reliquidation, because the government was actually fighting that it owed money at all. So the Court was saying there will be the -- I will have the power to order reliquidation. It wasn't saying that the only way that CBP would be able to reliquidate would be if there was a Court order.

So I continue to think that if you look at the statutory scheme, there is no bar on reliquidation in these circumstances. In fact, Section 1520 expressly contemplates

that if there has been an overpayment on reliquidation, CBP has the authority to refund it. And we think the best reading of that is that Congress contemplated that where there has been a situation like this, where there have simply been unlawfully collected tariffs, that there can be reliquidation and refund. So that's the statutory scheme.

Then Shinyei says the one thing you can't do is rely on statutory silence to find a bar on reliquidation. And I'm just not sure how to explain what the government is arguing, other than their reliance on statutory silence. So I do think their arguments are foreclosed on the inability of CBP to do it without some kind of order. I think those are foreclosed by the statute and the federal circuit precedent.

I then want to turn to the other two reasons those arguments really don't make sense if CBP is sincere in its intent to refund all of the unlawfully collected tariffs. The first one is that Your Honor has issued an order. And as I explained, I -- that order, which requires reliquidation and is a broad order and, we think, could be pertinent to a permanent order that accounts for the need for the CAPE system to operate as soon as practicable, we think that order is permissible under CASA, both for several reasons.

As Your Honor says, there are strong arguments

that CASA does not apply at all here, because CASA itself was expressly focused on the Judiciary Act of 1789 and the traditional equitable powers of district courts, but the CIT has additional, has another statutory provision that gives it injunctive authority, and there's every reason to think that Congress wanted that injunctive authority to be broad, because it was specifically designing a Court that could decide tariff issues uniformly throughout the country in concordance with the uniformity clause of the Constitution.

So I think there's loads of reasons to say that CASA just is not applicable. Even if you don't want to go into that set of arguments, you can also just say CASA recognized that there needs to be complete relief for the plaintiffs, and I think I heard the government earlier on saying, well, some of our plaintiffs didn't pay refund -- pay tariffs at all. That's incorrect. They paid them through third parties, as did many businesses. Many businesses paid someone like DHL or a trading company or something like that, and they can't get their money back until that trading company or DHL gets all of their money back.

And so there is a direct effect on my client, not just from their ability to access CAPE, but on other -- the ability of other importers to access CAPE. And of course, more broadly, my clients have been hurt by the -- by the

increased prices that they've been paying, and all that's based on the increased -- based on the unlawful tariffs. So there's the complete relief piece.

Then you have the uniformity clause, which does say that tariffs need to be uniform. If you say, well, only plaintiffs have -- can get refunds, you're effectively charging different rates to different people. So in our view, this Court can't require that, because you can't make an unconstitutional order, and the government can't implement that, because the government can't unconstitutionally offer different rates. And I think that might be all of the reasons that, even if CASA applies, this Court's order is lawful.

So we think you sort of have so many ways going, and then, lurking in the background, that I still haven't quite heard the government take a position on, is there can be -- if the government doesn't want to get into CASA, there can be a class action under 12 -- 23(b)(2) to issue class-wide injunctive relief to ensure that -- the reliquidation of all of these finally liquidated entries.

THE COURT: Okay, well, before I certify a class --

MS. ROH SINZDAK: Yes.

THE COURT: -- we'll have a hearing of a different kind.

MS. ROH SINZDAK: Yes, absolutely.

THE COURT: And we'll give the government notice and an opportunity to be heard.

Is there anything the government wants to say before we conclude the --

MR. MILLER: I see Your Honor is very familiar with the rule of finality. I'm happy to address the points on Shinyei that my colleague just addressed, if you'd like to hear points on that, but I defer to Your Honor.

THE COURT: Sure, come on up. I've got a -- I'm not --

MR. MILLER: (Indiscernible) --

THE COURT: -- entirely understanding what you're going to say, but come on up and say it --

MR. MILLER: Sure.

THE COURT: -- and then I'll, maybe, I'll catch on.

MR. MILLER: Just very briefly, I believe my colleague was saying that under Shinyei she was interpreting the Court to hold that there was no prohibition on the agency using its own authority to effectuate a reliquidation. There's really only two sentences of Shinyei that even kind of vaguely hints on this, and it's on Page 1311, and they were looking at Section 19 U.S.C. 1514. And there the Court stated that we disagree that the statute

allows for reliquidation only under the protest provisions of Section 1514.

So in that context, they were looking at the authority of Customs to reliquidate and the protest-type scheme. Again, I would go back to just the only statute that gives the agency the express authority their own independent authority to reliquidate, would be 1501. My colleague did reference 1520, but the constraints of liquidation and reliquidation equally apply to that statute, given the nature of how that statute is structured, because it talks about when an excess amount of monies have been calculated on a liquidation or a reliquidation.

So in order to get into the framework of 1520, there is this prerequisite of a liquidation and reliquidation, and then we're back to the sort of chicken and egg situation of rule of finality and all the constraints that we have with 1500, 1501, and 1514.

THE COURT: Okay, thank you.

Yeah, sure.

MS. ROH SINZDAK: Thank you, Your Honor. I just have one point about the uniformity clause. The uniformity clause of the Constitution is about whether a tax or a refund is uniform upon imposition. It has nothing to do with the remedy phase, and the Court sees this --

THE COURT: Is it a policy statement?

MS. ROH SINZDAK: I'm sorry?

THE COURT: Is it a policy statement that -- you seem to suggest in your papers that it was a policy statement, (indiscernible) expressed a policy rather than --

MS. ROH SINZDAK: The uniformity clause?

THE COURT: Yeah.

MS. ROH SINZDAK: Well, in our appellate papers?

THE COURT: I don't have it. You did say --

MS. ROH SINZDAK: Okay, well, no, I don't -- I don't -- I hope that we didn't say that. (Indiscernible) --

THE COURT: I don't think they were written by your office (indiscernible).

MS. ROH SINZDAK: That's right. I was going to point out that the Court sees this every day in the antidumping/countervailing duty context, where somebody sues and says Commerce did something unlawful. The Court says, yes, it was unlawful. It goes up on appeal. It's really, really unlawful. And the remedy is just for the party to the lawsuit, and all of the other parties, particularly all of the all others parties, for example, all of the other parties that could have gotten the benefit of that change in rate because of the federal circuit decision, they don't get the benefit unless they're in the lawsuit. Everybody else's entries gets liquidated at their -- at the original rate, and the person in the lawsuit gets the benefit of the new

rate, and that's a good example of how the uniformity clause has absolutely no application at the remedy stage.

THE COURT: Well, okay. The Supreme Court found that all of the duties were unlawfully collected, uniformly across the whole United States.

MS. ROH SINZDAK: Well, what the Supreme Court said is that the -- that IEEPA does not provide the president with the authority to impose tariffs --

THE COURT: Okay.

MS. ROH SINZDAK: -- which is different than what you're saying.

THE COURT: Not exactly, but we'll fight about that some other time.

MS. ROH SINZDAK: Thank you.

THE COURT: Okay, thank you very much for coming. It's awfully nice of you. Your declaration, your -- this declaration, everybody should go to look at the docket, read this declaration. You'll find out what Customs did, and you might even find out why I suspended the immediate compliance with my order to give you an opportunity to do it. If there's nothing else for the good of the order, the Court is adjourned.

(Whereupon these proceedings were concluded)

# C E R T I F I C A T I O N

I, Sonya Ledanski Hyde, certified that the foregoing transcript is a true and accurate record of the proceedings.

Sonya Ledanski Hyde

Veritext Legal Solutions
330 Old Country Road
Suite 300
Mineola, NY 11501

Date: June 12, 2026

**&**

**&** 3:1

**1**

**10** 26:14 28:20 52:4,5
**10278** 1:15 2:21
**109** 23:2 46:2 51:21
**11.4** 23:13 41:5 44:20,22
**1101** 2:5
**11501** 61:23
**12** 56:18 61:25
**120** 39:4
**12151** 61:6
**122** 39:4,7
**1300** 3:3
**1311** 48:25 57:24
**1312** 48:25
**15** 47:2
**1500** 47:12 58:17
**1501** 47:15 58:7,17
**1514** 41:10,11 47:18 52:24 53:3 57:24 58:2,17
**1520** 53:25 58:8,13
**156** 42:25
**1581** 48:17,22 48:22
**16** 18:5
**166** 9:22 17:24 40:19 42:24 46:8
**17** 18:5,7 22:12 23:3
**1789** 55:2
**19** 47:12,14,17 47:17 57:24
**1995** 17:12
**1:30** 1:18

**2**

**2** 7:23 56:18
**20** 8:15 24:15 25:11
**20004** 3:4
**20005** 2:6
**20044** 2:14
**2022** 13:19
**2026** 1:17 6:13 6:24 7:23,25 8:3 61:25
**20th** 22:7
**23** 18:14 56:18
**24** 48:13
**245,000** 25:3 25:13
**25** 22:15
**25-00066** 1:3 4:4
**26** 2:20
**2643** 49:7
**27** 23:14
**28** 49:7
**28.7** 22:25
**29th** 23:7 28:3 28:7

**3**

**300** 61:22
**301** 47:5
**31** 17:14
**314** 50:14,14 50:25 51:2
**330** 61:21
**330,000** 7:5,8 7:12 12:5
**338,000** 22:15
**365** 20:11

**4**

**4** 6:13 7:25 19:20
**4,000** 26:19 33:11,12 36:10 36:12,13
**40** 18:23 24:12 24:14 25:10,16
**45** 8:7,10
**480** 2:12 18:21
**4th** 10:1 11:7 30:14

**5**

**5** 52:24
**50** 46:13
**51.3** 23:23
**514** 52:18
**514's** 52:17
**53** 17:23 18:3,4 23:24

**6**

**6** 8:3,4 10:24
**6.5** 40:22 42:4 42:25
**6.9** 23:12 26:9 26:10 27:14 28:12 38:2,3,5 38:8,11 43:25 44:3
**60** 18:25 19:24 22:6 45:21 46:11,12
**66** 23:2

**8**

**8.4** 22:16
**80** 45:1,23,25 46:1
**83** 23:3
**85** 8:14
**85,000** 24:12 25:2,10
**86** 24:16
**86.4** 13:20
**89** 46:4

**9**

**9** 1:17
**9,999** 21:4,9,13
**90** 14:20 23:17 31:21 32:2 40:13,13 41:12 46:4,7 47:15
**95** 18:6 23:21 23:22 51:20
**96** 24:16
**96.4** 13:20
**98.5** 27:6

**a**

**abi** 20:21
**ability** 9:15 32:3 48:1 50:3

55:23,24
**able** 24:25 28:11,21 37:24 41:7 50:5 53:21
**absolutely** 26:18 38:1 57:1 60:2
**academic** 49:4
**accept** 9:18 16:2 25:24 26:1
**accepted** 18:9
**access** 20:24 31:21 42:20 43:5 55:23,24
**accomplish** 15:14 47:15
**accord** 32:3
**account** 20:25 22:10 29:5
**accounts** 54:21
**accumulates** 21:9
**accuracy** 29:15
**accurate** 61:4
**ace** 24:3
**achieve** 37:5
**acknowledged** 8:5
**act** 55:2
**action** 4:20 8:19 15:1,3 16:9 41:24 47:9 56:18
**actions** 16:8,10 39:24 42:8,9
42:11
**actually** 4:17 5:23 6:4 7:9 18:5 28:22 31:10 34:14 36:1 40:1 41:9 48:18 53:8,18
**ad** 48:3,22
**addition** 6:5
**additional** 18:21,23 55:4
**address** 57:7
**addressed** 31:25 32:4 57:8
**adjourned** 60:22
**administrative** 43:5
**advantage** 7:16 9:14 13:16,24 25:13 26:25 50:2,20 51:4,15
**advised** 45:17
**affirm** 4:20
**afoul** 11:14
**afternoon** 46:25
**agency** 37:18 47:7,7,13,15 48:1 49:18 57:21 58:6
**agency's** 49:11
**ago** 47:5 48:9 48:10
**agree** 30:3 32:14,22 41:22 41:23
**agreed** 15:18 16:6
**ags** 52:19
**ahead** 33:22
**al** 1:6,9 4:5,5
**allow** 31:20 35:19
**allowed** 11:10 14:8 40:13
**allowing** 29:14 49:2
**allows** 47:25 58:1
**amended** 6:14 30:14
**amendments** 10:1
**america's** 19:16
**american** 11:2 13:4
**americans** 7:6
**amount** 26:10 38:1 45:21 58:11
**analysis** 13:19 49:4 52:14
**answer** 26:6 30:23 33:21 35:12 40:10 43:14,22 44:12 46:22
**antidumping** 48:4 59:15
**anymore** 17:3
**anytime** 12:21
**apart** 47:24
**appeal** 12:10 15:15 29:2 36:16,17,18 59:17
**appealed** 39:5
**appealing** 13:5
**appeals** 36:20 48:19 51:12
**appear** 37:1
**appears** 14:11
**appellate** 59:7
**applicable** 11:20 55:11
**application** 8:12 60:2
**applications** 8:11 9:19
**applies** 34:7,16 34:16 36:6 41:10 48:24 53:3,9 56:12
**apply** 34:15 35:7 41:11 49:2,5,9 52:18 55:1 58:9
**appointed** 44:22
**appreciate** 41:17 42:14
**approach** 29:15 32:21
**approached** 19:3

**appropriate** 32:16 35:2 42:17
**approved** 8:12 8:15
**approximately** 26:19
**april** 22:6
**area** 26:12
**arguing** 53:3,3 53:8 54:10
**arguments** 41:17 43:10 48:19,23 54:11 54:16,25 55:12
**arranged** 16:13
**asked** 5:19 17:2 19:19 20:7 43:21
**asking** 20:5 33:11 37:11,15
**assessment** 10:3
**assistant** 5:4
**associated** 23:14
**asterisk** 31:12
**attack** 24:4
**attorney** 2:4,11 2:19 3:2
**attorneys** 4:5
**authority** 5:19 11:8 20:1 26:1 26:7 34:14 35:23 37:8 40:8 47:7,10 47:13,25 53:13 54:2 55:5,6 57:21 58:4,6,7 60:8
**authorization** 53:12
**authorized** 35:21,22,25 39:7 46:23
**authorizing** 9:22
**automated** 21:14
**availability** 16:18 20:22
**available** 31:2
**avenue** 2:5 3:3 12:16
**average** 20:22 50:14
**averaged** 22:5
**avoiding** 16:5
**aware** 47:19,25
**awfully** 60:16

**b**

**b** 1:23 56:18
**back** 6:1 17:12 25:15 29:20 45:12 55:19,21 58:5,15
**background** 17:9 56:15
**bad** 46:7
**balances** 21:19
**bank** 22:10 24:24
**bar** 53:15,24 54:8
**barring** 52:21
**based** 27:12 30:24 51:17 53:4 56:2,2
**basic** 40:6
**basis** 31:22 32:2 38:12,15 40:7 41:15 42:23 43:4 47:17 49:13
**becoming** 15:2 44:8,12,18 45:8,15 47:21
**beginning** 50:9
**behalf** 25:7,20
**behavior** 12:14
**believe** 8:19,20 9:12 15:8,12 16:12 27:9 34:7 37:4 40:1 43:9 57:18
**believed** 13:10 13:15 14:10 31:9
**believing** 13:5
**ben** 2:13
**benefit** 59:21 59:23,25
**best** 54:2
**bet** 27:11,13
**better** 26:4
**beyond** 5:23 35:10
**big** 5:8 15:7 28:17 33:6
**billion** 8:14,15 9:23 17:24 18:6,14,23,25 22:25 23:2,13 26:14 40:19 41:5 42:24,25 44:20,22 46:2 46:4,4,7,8 51:20,21 52:3 52:4,5
**bind** 11:17,18
**binding** 12:8
**bit** 17:9 35:1 40:16 45:17,20
**blown** 33:7
**books** 42:20
**border** 3:1 4:12 5:6 16:17 35:21 39:24,25 50:2
**box** 2:12
**branch** 2:10
**brief** 31:5
**briefing** 30:25
**briefly** 57:18
**bring** 7:13 23:16
**broad** 54:20 55:6
**broadly** 55:25
**broker** 25:19
**brokers** 13:13 20:21 25:5,6
**brought** 33:19
**bucket** 29:4 51:6 53:2

**buckets** 24:4 29:5
**build** 29:6 31:4 35:23 36:18
**built** 21:19,24
**bunch** 46:15
**burdensome** 19:11,12 21:17 21:17 24:23
**bureaucratic** 19:10
**burke** 2:16 4:10,10 16:25 25:22,22 26:2 26:15,18 27:1 27:17,21 32:12 32:14 33:1,5,9 33:17,20,23 34:18,25 35:22 35:25 36:3,11 36:14,16 37:6 37:10,13,16 38:22,24 39:2 40:3 43:15,16 43:19 44:2,5,9 44:11 45:16,20 45:25 46:3,6 46:10,20 49:25 51:11
**business** 20:9 28:13
**businesses** 20:4 55:17,18

**c**

**c** 2:1 4:1 48:22 61:1,1
**calculated** 58:12
**called** 7:17
**capability** 9:3
**capacity** 13:12 13:17 26:5 52:21
**cape** 6:7,9 7:17 8:10,19,22,23 9:7,13,17 10:7 10:9 13:9,12 13:16,23 14:2 15:11 16:1 17:11 18:1,6 18:18 19:1,23 20:17 21:3,7 21:14 22:16 23:5 24:9,13 25:9,14,24,25 26:25 27:5 31:2,15,22 35:18,20 42:20 44:13,24 46:23 51:24 54:22 55:23,24
**caption** 27:5
**captions** 33:12
**captured** 27:14 27:16
**cargo** 17:13
**casa** 11:15,16 11:20,21 12:7 12:7,8 16:5 34:4,7,13,16 34:21,23,25 35:1,7 41:17 41:23 42:10 43:14 54:23 55:1,1,11,12 56:12,17
**case** 1:3 7:21 7:25 11:16,20 11:21 12:6,7 12:20,22 28:14 28:24 33:25 34:2,9,24 35:4 35:14 39:4 47:4,5 48:11 48:15,17,20,21 48:22,23 52:19 52:22 53:16
**cases** 26:11,12 26:19,20,24 27:11,15,17 33:9,15,18 36:5 38:5,6
**catch** 57:16
**category** 23:10 24:17 44:16 49:18
**cause** 30:12 42:14
**cbp** 18:11 21:4 22:13 24:22 26:3,4 40:8,12 40:17,18 41:7 52:24 53:10,21 54:1,12,16
**certain** 11:3
**certainly** 20:13 41:13 50:19
**certification** 16:7 22:4,8
**certified** 18:24 61:3
**certify** 56:21
**certifying** 18:12
**cetera** 36:7
**challenge** 17:22
**challenging** 38:12,15,19
**chance** 39:20 49:22
**change** 59:21
**changed** 30:15
**charge** 10:14 14:9
**charged** 10:19 13:1
**charging** 14:18 14:24 56:7
**check** 25:18
**checks** 21:19
**chicken** 58:15
**choose** 13:6
**choosing** 38:10
**chosen** 14:16
**circuit** 26:8 34:8,15 35:11 47:3 48:16 49:1 54:13 59:22
**circuit's** 41:9
**circumstances** 53:25
**cit** 55:3
**citation** 40:11

**citing** 42:5,5
**claim** 21:14 22:7 24:1,13 27:3 29:16,17 44:25 52:1
**claims** 11:11 22:11 24:18 25:5,6,17 27:5 31:21 36:7 41:11 43:1 51:20
**clarify** 52:15
**class** 16:8,8,9 16:10,10 39:23 41:24 42:8,9 42:10 56:18,18 56:21
**classification** 17:16
**claudia** 2:16 4:10
**clause** 55:9 56:4 58:21,22 59:5 60:1
**clear** 8:22 9:16 12:13 15:13 52:17 53:1
**clerk** 4:2,19,23 5:1
**client** 5:14,17 5:24 55:22
**clients** 55:25
**close** 7:25 18:5
**closer** 39:1
**colleague** 57:8 57:19 58:8
**collect** 10:10
**collected** 6:20 6:23 7:3,10,12 8:1,6 9:10,23 12:13 13:3 17:24 40:20 42:24 54:5,17 60:4
**colleen** 2:8 4:8
**combined** 23:1
**come** 4:17 7:16 9:7,23 16:9 30:19 49:22 57:10,14
**coming** 5:7 19:13 45:1 60:15
**commendably** 42:2
**commerce** 59:16
**commercial** 2:10
**commissioner** 5:5 19:22 29:25
**commit** 37:15
**committed** 41:21
**community** 17:21 19:11 20:18 27:10,10
**companies** 28:14
**company** 28:23 55:18,20
**complete** 13:12 13:14,17 35:4 55:13 56:3
**completely** 33:2 36:9 42:2
**complex** 21:20
**complexity** 29:4
**compliance** 6:14 8:9 16:23 17:6 30:13 32:17 37:22 60:19
**complicated** 20:19
**comply** 6:17 9:9 15:12 17:5
**comports** 34:12,20
**compounded** 10:25
**conceding** 39:15
**concept** 41:12
**concerned** 8:21 30:10 31:8 44:7
**conclude** 57:5
**concluded** 60:23
**conclusion** 48:8
**concordance** 55:9
**conference** 8:2 8:4
**confused** 33:24
**congratulate** 30:5
**congratulated** 9:5
**congress** 47:9 54:3 55:6
**consequence** 15:10
**consider** 34:11 34:18 52:9
**consideration** 38:21
**considering** 53:17
**consolidated** 24:3
**constitutes** 53:15
**constitution** 55:9 58:22
**constraints** 58:8,17
**construct** 8:23
**constructed** 8:24 15:10
**contemplated** 54:3
**contemplates** 53:25
**context** 48:3,4 48:14,16 49:16 58:3 59:15
**continue** 20:16 32:23 37:24 51:24 53:23

**continued** 10:10,13 51:6
**control** 50:2
**convincing** 9:8
**correct** 9:2 17:17 21:12 22:2 41:4 53:16
**correctly** 25:1 25:23
**counsel** 5:22
**countervailing** 48:4 59:15
**country** 55:8 61:21
**couple** 16:24 18:19 37:6
**course** 11:7 31:12 41:4 43:21 47:2 53:4 55:24
**court** 1:1,13 4:2,4,14,17 5:3 5:7,16 6:13,24 7:9,10,15,18 7:22,22 9:12 11:4,8 12:1,2,9 12:23,25,25 13:18 14:15 15:13 16:22 17:25 18:3 20:13 21:6 23:19,22 25:1 25:12,21 26:14 26:17,20,22 27:16,20,22 28:1 30:3,5,7,9 30:19 31:20 32:12,25 33:2 33:8,10,11,15 33:18,22,25 34:2,6,9,13,16 34:17,20,22,24 35:2,5,8,9,13 35:14,15,17,24 36:2,4,4,8,13 36:15,17,20 37:7,9,11,14 37:19 38:14,23 38:25 39:8,18 39:20,22 40:4 40:9,24 41:2,7 43:15,18,23 44:4,6,10,17 45:2,5,8,10,14 45:19 46:9,18 46:24 47:2,19 48:9,13,19 49:6,11,11,14 49:17,21,25 50:8,12,13,18 50:21 51:3,8 51:11,12,14,22 51:25 52:3,7,9 52:13 53:4,13 53:17,19,22 55:7 56:8,21 56:24 57:2,10 57:13,16,20,25 58:18,24,25 59:2,6,8,11,14 59:16 60:3,3,6 60:9,12,15,21
**court's** 7:1,3 9:9,25 10:16 11:15 12:18 16:18 34:3,5 35:3 40:14 49:1 56:13
**courts** 11:16 11:19,21 15:2 35:6 48:2 55:3
**covered** 24:1 51:1
**creditor** 7:8
**cripple** 19:17
**currently** 44:25
**customs** 3:1 4:12 5:5 9:1,5 10:6,13 13:13 13:19 14:21,23 16:17 17:4,12 32:19,23 35:20 36:6 37:24 39:24,25 46:22 47:22 48:22 50:1 58:4 60:18
**cutoff** 32:2
**cvd** 48:3,22
**cycle** 50:25

**d**

**d** 4:1
**daily** 10:25 18:15
**danger** 28:13
**dangerous** 19:13 24:20
**data** 28:11 44:23
**date** 28:3 61:25
**day** 10:6 14:20 20:5,11 22:11 22:11 27:14 32:2 41:12 44:8 45:1,15 50:25 59:14
**days** 8:7,10,11 8:12 20:11 22:6 31:21 40:13,14 45:25 46:1 47:15 50:14,15 51:2
**dc** 2:6,14 3:4
**debtor** 7:7
**decide** 6:12 55:8
**decision** 34:4 39:6 40:14 41:9 47:22 49:1 50:12 59:22
**decisions** 37:14 52:24
**declaration** 6:8 13:18 18:13 60:16,17,18
**declare** 7:15
**decline** 35:6
**deeply** 47:4
**defendants** 1:10
**defer** 57:9
**define** 11:22

**defined** 7:4 12:1,4 47:7
**defines** 12:23
**demonstrates** 16:13 19:1
**denial** 15:3,4
**denied** 53:5,6
**denying** 43:4
**department** 2:10,18
**depend** 30:23
**depends** 30:17
**deploy** 23:7
**deployment** 28:3
**deposited** 22:9
**deposits** 10:24
**described** 47:6
**describes** 47:19
**designing** 55:7
**desire** 16:18 42:7
**determine** 17:16
**develop** 8:7
**developed** 6:10 17:10 29:18
**developing** 8:19 10:9 19:23 20:17
**development** 6:7 8:21 9:7
**dhl** 55:18,20
**dice** 28:11
**difference** 28:18
**different** 9:20 34:22 48:18 56:7,7,11,24 60:10
**differentiating** 40:7
**difficult** 12:9
**diligently** 9:2
**direct** 55:22
**directed** 8:2
**directing** 11:12 15:25
**direction** 8:24
**directly** 25:6
**directs** 7:19
**disagree** 57:25
**disagreement** 38:7
**disappointing** 39:22
**discovered** 47:6,16
**discussed** 51:18
**discussing** 43:13 49:19
**discussion** 5:16 5:17 33:7 47:1
**discussions** 5:25
**disfavored** 15:3
**disperse** 18:12 18:15,21,24
**dispute** 26:13
**disputes** 43:2
**distinction** 25:8
**distinguishing** 52:22
**district** 11:16 11:19 35:2,3 55:3
**dive** 48:2,18
**dived** 47:3
**docket** 33:13 60:17
**doing** 8:6 17:13 18:16,19 19:21 22:2 24:21 29:20,22 30:1 51:11
**dollars** 14:6
**dos** 7:21
**double** 25:18
**drafted** 16:4
**drawback** 24:1 29:9
**drew** 17:20
**duties** 6:20,21 6:23,25 7:2,15 7:19,20 8:2,6 9:10,23,24 10:4,11,14,19 11:4 12:13,15 13:3,7,7,10 14:9,19,24,24 15:7 16:15 17:8,24 18:7 18:21 19:24 21:21 22:1,25 23:4,13,17 37:4 44:20 60:4
**duty** 17:16 18:14 48:4 59:15

**e**

**e** 1:23,23 2:1,1 4:1,1 61:1
**earlier** 43:19 55:14
**easier** 33:13
**easy** 41:20
**eaton** 1:24 4:3
**economic** 19:16 24:15
**edi** 20:21
**effect** 7:1 11:14 12:12 55:22
**effective** 30:2
**effectively** 56:6
**effectuate** 47:13 48:1 49:5,12,18 57:21
**effectuated** 49:8
**effectuating** 13:1
**efficient** 8:22 30:2
**egg** 58:16
**either** 13:12 32:9 35:13
**eligible** 23:1,4 23:17 51:6,21
**elizabeth** 2:8
**else's** 59:23

**embodies** 47:18
**encourage** 51:24
**enforce** 11:24
**ensure** 9:24 18:16 19:16 21:25 28:23 29:3 42:20 56:19
**ensuring** 29:15
**enter** 11:24 16:21 35:21
**entered** 6:13 10:4 14:2,12 18:1
**entering** 11:17 33:12
**entirely** 57:13
**entitled** 7:13
**entries** 6:19 9:19,20 10:10 10:14,18,19,22 11:9 13:10,11 14:2,3,7,10,14 14:22,25 15:2 15:19 16:2,10 16:19 17:15,23 17:25 18:2,5,8 19:25,25 20:15 20:20 21:10,20 22:12,15,17,23 23:9,14,20,23 23:24 24:2,15 25:11,17,24 26:1,11 27:3,3 27:8 30:10 31:13,17 35:20 36:1 40:12 41:1,1 44:1,21 44:24,25 45:22 46:13,16,23 49:19 50:6,19 50:24 52:11 56:20 59:24
**entry** 15:17 16:6 18:3 20:7 20:8,12,15,18 21:1,8 22:24 45:6 50:15 51:1
**equally** 58:9
**equitable** 55:3
**equity** 16:5 42:22
**erred** 11:16
**essentially** 7:7
**establish** 12:19
**establishes** 41:9
**estoppel** 53:7
**et** 1:6,9 4:5,5 36:7
**eventual** 25:24
**everybody** 21:6 26:19 31:16 36:15 37:22 59:23 60:17
**evidence** 9:8 30:24
**exactly** 32:20 60:12
**example** 8:22 59:20 60:1
**excellent** 5:22 40:17
**excess** 58:11
**executive** 5:4
**exercised** 46:14
**exercising** 44:14
**existing** 27:15 27:17
**expedient** 29:15
**expeditiously** 31:6,15
**experience** 17:20 27:13
**explain** 41:14 41:19 54:9
**explained** 54:19
**explaining** 40:11 42:6
**explanation** 36:24 41:16,21
**express** 53:11 58:6
**expressed** 59:4
**expressly** 52:23 53:14,25 55:2
**extend** 35:10 50:3,4,6,10,22
**extended** 10:21 51:15,19
**extending** 52:10
**extent** 31:3

**f**

**f** 1:23 61:1
**face** 32:22
**facilitate** 16:18
**fact** 5:18 21:5 43:11 47:16 53:25
**facts** 11:21 12:6,9,20 48:25
**factual** 43:8
**fairy** 8:20
**fall** 23:10 24:17
**falling** 44:15 46:16
**familiar** 48:11 57:6
**far** 8:21 14:22 25:10 44:6
**favor** 15:7
**favors** 13:6
**february** 6:24
**federal** 1:14 2:20 26:8 34:8 34:15 35:11 41:9 47:3 48:16 49:1 54:13 59:22
**feel** 17:1 42:8
**feeling** 40:16
**field** 2:18 17:19

**fifty** 17:23
**fight** 42:10 60:12
**fighting** 53:18
**figure** 46:7
**file** 21:13 22:24 25:11
**filed** 16:16 23:25 24:3,14 25:5,19,19 27:18 28:15 29:10 47:20
**filing** 24:11 25:6 27:11 43:1
**final** 10:3,20 11:5,10 14:9 14:11,15,25 15:2 16:11,19 18:11 25:25 26:2 30:11 44:18 45:8,15 47:21,23 49:20 50:9,22,23
**finality** 41:10 41:12 47:1,19 48:3,24 49:2,4 49:9 52:18,18 52:25 53:9,10 57:7 58:16
**finalized** 44:8
**finally** 10:22 15:19 16:7 23:9 26:11 27:8 28:4 31:12 35:19 44:1,20 56:20
**find** 21:2 39:23 41:7 42:18 54:8 60:18,19
**finding** 32:9
**finish** 27:24
**firmly** 16:12
**first** 8:10,12,13 10:23 12:11 13:22 17:4 22:7,16 32:15 34:11,19 48:3 52:15 54:18
**fiscal** 22:15
**five** 27:4
**flagged** 22:23 31:18
**flexibility** 49:10
**focused** 55:2
**folks** 20:4 21:22 44:24
**followed** 47:22
**foreclosed** 54:11,13
**foregoing** 61:3
**forever** 19:21
**forgive** 32:25 38:23
**forgiven** 13:4
**form** 11:8 48:13
**formal** 14:7
**format** 21:1
**forms** 13:12,14 13:17
**forth** 36:6
**forward** 17:11 48:15
**found** 12:7 13:20 60:3
**four** 28:5
**framework** 58:13
**frank** 21:21
**franklin** 2:13
**frankly** 31:22 31:25 32:7 40:6 42:21
**fraud** 29:16
**frightened** 37:17
**front** 17:22
**frontline** 17:14 19:12 21:15,17
**frustrated** 40:16
**frustration** 41:6 42:1
**full** 4:23
**functionality** 23:8 29:6
**funds** 14:13
**further** 11:11 47:17
**fy25** 24:15

**g**

**g** 4:1
**gain** 37:3
**general** 27:13
**genius** 21:7
**getting** 9:17 30:1 31:18
**give** 4:20 9:2 15:20 17:9 20:18 21:1 39:20 49:21 57:2 60:20
**given** 58:10
**gives** 47:12 55:4 58:6
**giving** 29:19 39:3
**glitches** 9:1
**go** 21:2 26:5 33:22 35:8 36:6 37:19 40:13 45:12 47:17 55:11 58:5 60:17
**goes** 59:17
**going** 5:9,10,11 5:14,15,19 6:6 6:10 16:21,24 18:18,20,22 24:4 25:21 28:22 29:6 30:11,22 32:21 32:22 33:21 34:9 35:11,12 36:21 37:19 39:6,11,12,15 39:22 40:21 42:9,9 43:17 45:17 46:21 56:14 57:14 59:13
**good** 46:25 60:1,21

**goods** 19:13
**gotten** 59:21
**government** 4:10,11 6:3,17 7:5 8:4,17,22 9:8,11,12,21 10:10,15,17 11:3,5,10,11 11:14,23 12:1 12:5,10,11,16 12:17,18,24 13:5 14:8,11 14:16 15:1,5,6 15:12,15,16,20 16:1,1,17 30:25 31:1,8 31:13 32:6 37:4 38:9 40:1 40:18 41:14,21 42:2,12,15,24 43:2 48:23 49:17 52:17,19 52:23 53:1,2 53:18 54:9 55:14 56:9,10 56:16,17 57:2 57:4
**government's** 6:4 8:18 12:13 16:14 32:2,13 35:18 41:17 43:9
**grab** 15:7
**grant** 34:12,19
**great** 28:1 37:25 39:21
**greater** 9:3
**group** 53:4
**growing** 15:9
**guess** 27:22 35:11 46:18
**guessed** 26:23
**guessing** 45:5

**h**

**half** 9:22 46:8
**hand** 4:19
**handle** 19:15 43:17
**hands** 15:4
**happen** 5:15 36:22 37:1
**happened** 30:21
**happening** 22:10 50:23
**happy** 43:14 57:7
**head** 12:7
**hear** 30:23 31:19 37:10,23 40:17 57:9
**heard** 24:19 31:13 34:5,6 40:10 55:14 56:16 57:3
**hearing** 7:24 7:25 16:16 37:17 40:21 42:1 56:24
**heavily** 18:16
**held** 7:18 8:3 11:16 49:1,8
**help** 16:3
**helpful** 32:1
**hesitate** 38:22 39:2
**hidden** 39:9
**hints** 57:23
**hire** 13:13
**historic** 17:22 19:3
**hit** 39:12
**hold** 57:20
**holding** 7:1,4 9:9 10:16 11:15 12:3 15:13
**holdup** 36:4
**hon** 1:24
**honestly** 43:3
**honor** 37:23 39:19 40:5,15 46:25 48:11 49:15 54:18,25 57:6,9 58:20
**honor's** 42:7
**honorable** 4:3
**hope** 59:10
**hoping** 38:20
**hours** 19:20
**hts** 21:21,23
**huge** 26:21
**hundreds** 12:24 14:4,4,5
**hurt** 55:25
**hyde** 61:3,8
**hypothesizing** 46:21

**i**

**idea** 41:10 44:18 45:10 53:14
**ideas** 39:3
**identified** 28:24
**identifier** 28:21
**identify** 28:11 28:19
**identifying** 28:13
**ieepa** 6:19,23 6:25 7:6,18,25 8:2 10:14,19 12:3,13 14:24 17:8,24 18:7 18:14 19:24 21:20,25 22:25 23:4,12,17 31:2 37:3 60:7
**iii** 51:12
**imagine** 41:2
**immediacy** 29:8
**immediate** 6:14 8:9 16:23 17:5 30:13 32:17 37:22 60:19
**immediately** 6:17 52:2
**impetus** 8:18
**implement** 56:10

**import** 17:14 20:11 21:3,15
**important** 9:6 12:19 20:2 32:4,5 42:19
**imported** 20:11
**importer** 8:13 9:15 15:7 20:10,14,22 21:8 24:6,6,17 28:10,12,20
**importer's** 21:10
**importers** 7:5 7:8,11,12,16 8:16 9:14 11:25 12:2,5 12:24 13:6,11 13:16,21,21,24 14:13 15:8 16:15,19 20:3 20:14 24:10,11 24:12,18 25:2 25:6,7,13,17 33:9 34:1 43:3 51:23 55:24
**impose** 60:8
**imposed** 6:25 7:17,19 12:4
**imposition** 58:23
**impossible** 37:23 42:18
**inability** 54:11
**inaction** 15:1,4
**include** 25:5
**included** 24:7
**includes** 26:10
**including** 11:9 31:17 50:25
**incorrect** 55:16
**increased** 56:1 56:2
**independent** 58:7
**indiscernible** 45:3,13,19,24 45:25 46:5 49:24 50:17,18 50:21 51:13 57:12 59:4,10 59:12
**individual** 14:12 33:10,12 43:1
**individualized** 31:20 32:7 41:16 42:4
**industry** 26:21
**inequity** 15:9
**informal** 14:3 14:7
**informals** 24:3
**information** 20:6 21:22 32:10
**infrastructure** 20:20
**initially** 6:13 48:5
**injunction** 34:12,19,23 35:3,13 36:5 43:10 52:20 53:6
**injunctions** 11:17,24 48:12
**injunctive** 55:5 55:6 56:19
**injury** 11:1,2
**inquiry** 35:5,6 35:8
**insist** 14:12
**insisted** 32:6
**insisting** 31:19 33:25
**insists** 35:14
**instance** 6:7 15:19 34:11,19
**intact** 22:1
**intake** 18:10 21:4,12
**intending** 43:11
**intends** 9:9
**intent** 54:17
**intention** 31:1
**interest** 6:4 10:23
**interested** 6:9
**interesting** 48:17
**interfere** 31:7
**international** 1:1,13,25 2:18 4:2 7:23 12:25
**internet** 20:25
**interpreting** 57:19
**interrupt** 25:21
**interrupted** 27:23
**investigation** 47:2
**involved** 18:16 52:24
**ior** 36:7
**iors** 23:10 24:14,17 25:9 44:21
**issuance** 34:23
**issue** 29:7 31:24 35:13 36:5 56:18
**issued** 19:5 40:15 54:18
**issues** 19:14,15 26:8 47:3 55:8
**it'll** 42:24 51:5

**j**

**january** 17:12
**job** 5:3 26:4 39:25
**judge** 1:25
**judgment** 53:5
**judicial** 53:7
**judiciary** 55:2
**july** 28:6,7
**june** 1:17 23:7 28:3,7 61:25
**jurisdiction** 13:1
**justice** 2:10,18
**justin** 2:23 4:11

**k**

**k** 1:24 4:3
**keeps** 47:20
**kept** 10:15
**key** 24:9 28:9 28:21
**kind** 15:21 17:10 22:6 36:23 38:19 39:10 53:2 54:12 56:25 57:23
**kinds** 9:19
**knew** 19:23
**know** 5:8 19:2 19:18 20:12,13 20:14 22:5 24:5,10,16,17 24:20 25:16,18 26:5,23 27:1,1 27:4 28:2,4,16 28:22 29:1,1 29:25 31:25 32:7 38:3,4,4,7 38:14,16 39:14 42:3 44:11,12 45:21 46:3,8 46:10,19,20 48:11,12 50:13
**knowing** 20:3

**l**

**lacked** 40:8
**language** 34:9
**large** 13:11 16:15 24:6,10
**law** 7:19 16:4 42:22 48:11
**lawful** 56:13
**lawsuit** 33:19 59:19,23,25
**lawyers** 5:21 5:22 13:13
**learning** 7:21
**leave** 25:2
**lectern** 30:20
**led** 15:4
**ledanski** 61:3,8
**legal** 5:22,23 6:2 7:1,4 11:22 11:25 12:4,19 12:23 13:1 15:3,21 31:22 32:2 38:12,15 40:7 61:20
**letting** 10:22
**level** 18:10
**lift** 16:23 42:17
**lifted** 6:15 32:17
**lifting** 6:16
**likely** 14:1
**limit** 29:22
**limitation** 47:8
**limitations** 27:19
**line** 21:20,25
**lines** 43:12
**liquidate** 10:10 10:14,22 14:7 14:16
**liquidated** 10:23 14:22,24 15:19 16:2,19 21:8 23:9 26:11 27:3,8 28:5 31:12,21 35:20 44:1,13 44:15,21,25 45:24 46:16,23 50:7,19 56:20 59:24
**liquidates** 21:10
**liquidating** 14:23 17:15
**liquidation** 6:18 9:20 10:2 10:2,3,5,21 11:8 14:8,21 16:11 18:11 22:3,8 25:25 30:11 47:14,21 48:1,7,14 50:3 50:6,9,10,15 50:22 51:16 52:10,21 58:9 58:12,14
**liquidations** 10:7,16 11:5 11:13 14:9,14 14:17 49:20 50:23
**list** 36:5
**listen** 6:11
**listening** 51:23
**litigation** 2:10
**little** 15:8 17:9 24:20 31:12 35:1 39:1 40:16 45:17,20
**llc** 28:16
**llp** 2:3
**loads** 55:10
**log** 20:19
**long** 15:2 42:10
**longer** 19:8
**look** 22:14 53:23 60:17
**looked** 19:18 21:24 24:9 48:5,16
**looking** 18:19 28:6 57:24 58:3
**lose** 39:16
**lot** 20:5 21:14 39:12 43:25
**lower** 11:21
**lurking** 56:15

**m**

**made** 8:13,24 14:15 27:5 50:12 52:17,24
**majority** 20:16
**make** 5:11 25:16 28:17,25 29:19 31:1,24 35:6,6 37:12 38:9 46:17 53:1 54:16 56:8
**makes** 10:6 46:18
**making** 10:8 19:13,14 29:16 29:17,18 35:14

**man** 19:20
**mandate** 7:20
**manner** 42:15
**march** 6:13 7:23,25 8:3,4 10:1 11:7 30:14
**mark** 18:6,25
**marvelously** 15:10
**math** 26:15 45:18,20 46:7
**matter** 1:5 31:18
**matters** 16:13 43:4
**mean** 6:16 25:8 36:1 37:6 42:7 44:2,9 45:12 46:20
**meant** 9:13
**merchandise** 6:19 10:4
**merely** 36:9
**mess** 34:10
**method** 8:6,7
**mic** 49:22
**milbank** 2:3
**miller** 2:23 4:11,11 43:16 43:22 46:21,25 48:10 49:15 53:8,16 57:6 57:12,15,18
**miller's** 52:13
**million** 17:23 18:3,4,5,6,7,21 19:20 22:12,17 23:14,23,24 28:20
**millions** 13:10
**mineola** 61:23
**minimizing** 38:1
**misapplied** 41:13
**module** 47:22
**money** 9:13 10:15 15:8,13 22:9 24:23 26:10,17 27:6 27:7 29:19 38:2,2 40:18 42:25 44:7 53:19 55:19,20
**monies** 58:11
**month** 18:22
**move** 31:14 38:25 47:14 48:14 49:3
**moves** 22:3
**moving** 17:11

**n**

**n** 2:1 4:1 61:1
**name** 4:23
**names** 4:6
**narrower** 29:5 29:5
**nature** 58:10
**nearly** 18:7 22:12
**necessarily** 25:4 46:15
**necessary** 11:4 11:12 13:23 31:4 42:16 49:18
**neck** 5:8
**need** 28:10 31:19 32:6 43:13 50:21 52:20 54:21 56:5
**needed** 11:7 31:9
**needs** 12:12 15:20 31:4 42:15 53:11,12 55:13
**never** 10:23 24:24 30:21 36:21
**new** 1:15 2:5 2:21 15:25 20:7,8 59:25
**nice** 60:16
**non** 23:11
**normally** 20:20 22:13
**note** 8:17
**notice** 57:2
**notion** 6:2
**number** 20:12 20:13,15,18 25:18 38:11 41:3 48:18
**numbers** 21:1 21:21 28:10,12 28:20 36:7 44:19
**nw** 2:5
**ny** 1:15 2:21 61:23

**o**

**o** 1:23 4:1 61:1
**objection** 31:3
**obstacle** 33:4,5 33:6
**obstacles** 32:21 33:3
**obvious** 34:3
**obviously** 26:3 27:12 32:19 35:9 39:15
**occasionally** 5:16,21
**occurring** 48:14
**offer** 35:4 56:11
**offering** 41:22
**offers** 9:8
**office** 2:18 5:5 59:12
**oh** 26:18 36:13 38:24,25 42:3
**okay** 4:14 30:3 32:12 36:17 39:18 43:15,18 45:14 46:6,24 49:21,24 52:7 56:21 58:18 59:9 60:3,9,15
**old** 19:18 61:21
**once** 19:8 20:11 22:21 31:9 32:19

36:7
**ones** 27:17 48:5
**open** 5:16 9:11 31:15
**opened** 8:10 49:10,10
**opening** 6:11
**operate** 54:22
**operational** 8:24 9:3
**operations** 17:19
**opportunity** 49:10 57:3 60:20
**opposed** 42:13
**order** 6:12,18 6:18,22,23 7:13 8:9,18 9:25 10:1,4 11:4,7,8,11,13 11:14 12:10,11 12:15,18 13:5 13:24 15:15,17 15:17,25 16:4 16:6,24 17:5 26:2 30:12,14 31:20 33:4 34:24 36:20,22 40:9 41:8,17 41:25 42:4,14 42:19 43:24 49:17 50:8,22 53:12,17,20,22 54:12,18,19,20 54:21,23 56:9
56:13 58:13 60:20,21
**ordered** 8:1 34:8
**orderly** 42:15
**orders** 14:12 31:20 32:6 33:11,25 40:15
**original** 59:24
**outlined** 34:13 34:20
**outset** 52:16
**overpayment** 54:1
**overwhelming** 20:16
**overwhelmin...** 7:5
**owed** 27:6 53:19
**own** 7:13 21:2 21:9 32:3 35:23 49:7,13 53:13,17 57:21 58:6

**p**

**p** 2:1,1 4:1
**p.m.** 1:18
**p.o.** 2:12
**pace** 37:24
**page** 57:23
**pages** 48:25
**paid** 7:6,16 15:8 23:4,17 51:20 55:16,18
**pain** 5:8
**paper** 33:12
**papers** 16:16 59:3,7
**paraphrasing** 35:1
**pardon** 40:25 53:6
**part** 5:14,21 19:9 21:7,23 32:15 33:6 43:9
**particular** 11:6 27:2 48:25
**particularly** 16:10 30:10 43:9 59:19
**parties** 34:1 35:10,15 46:14 55:17 59:19,20 59:21
**party** 59:18
**passing** 8:17
**past** 19:4,19 20:6,7 22:19 29:23 31:21,21
**path** 9:17
**patrol** 16:17 35:21 39:25,25
**paula** 3:6 4:12
**pay** 31:2 38:10 38:10 55:15,16
**paying** 56:1
**payment** 8:13
**pending** 26:20
**pennsylvania** 3:3
**people** 9:4 13:4 31:20 33:18 39:12 40:22,24 41:2 43:1,5 44:13,14 51:4 56:7
**percent** 10:24 13:20,20 19:24 23:2,3,3,12,17 23:21 24:12,14 24:16 25:10,16 26:9,10 27:6 27:14 28:12 38:2,4,5,8,11 40:22 42:4,25 43:25 44:3 45:21 46:11,12 46:14
**percentage** 23:19 27:2 46:7
**perfect** 9:18
**perform** 11:12
**performs** 10:7
**period** 10:18 10:21 14:18,20 14:20 50:3 51:15 52:10
**permanent** 54:21
**permissible** 13:2 54:23
**permitted** 10:19 32:23
**permitting** 48:7

**person** 28:19 28:24 29:20 59:25
**personnel** 17:14 19:12 21:16,18
**pertinent** 54:21
**phase** 18:18 22:22 23:1,6,6 23:18 25:23,24 27:24 28:22 35:18,21 36:25 45:24 51:1,3,4 51:9,12,19,21 58:24
**phases** 18:20 24:7
**pick** 13:6
**picking** 38:9
**piece** 23:13 56:3
**pieces** 33:12
**pitch** 16:20
**place** 8:8 10:15 10:16,23 21:10 36:19 40:14 50:15
**plaintiff** 1:7 4:7 23:11,11 28:24 41:24
**plaintiff's** 27:2
**plaintiffs** 4:9 7:9,11 11:18 11:18,23 12:2 15:25 16:7 26:20,24 27:4 28:5,8 32:22 35:4 55:14,15 56:6
**planning** 26:3 26:4
**plate** 19:16
**play** 47:12 53:7
**played** 17:10
**players** 26:21
**plaza** 1:14 2:20
**please** 4:6,23 5:1 20:16 34:17 44:10 49:23 52:9
**point** 12:14 20:3 26:9,23 32:14,18 38:9 46:11 51:3,20 58:21 59:14
**points** 57:7,9
**policy** 5:11 15:6 16:14 17:18 37:14 58:25 59:2,3,4
**poor** 42:25
**portal** 8:10 20:19,24 21:3
**portion** 16:21 38:4,5
**position** 11:3 32:13 35:3,18 42:5 49:17 56:16
**positions** 5:23 6:2,3
**possible** 6:1 29:21 31:6,15
**possibly** 51:8,9
**post** 40:13,13
**postal** 31:17
**potentially** 39:9
**power** 50:21 53:17,20
**powers** 49:7,12 55:3
**practicable** 54:22
**precedent** 15:22,24 32:9 36:23 38:19 42:5 54:14
**preliminary** 52:20 53:6
**preparation** 44:23
**prepared** 29:2 52:6,8
**prerequisite** 58:14
**president** 39:6 60:8
**presiding** 4:4
**pretty** 27:10
**prevail** 12:17
**preventing** 29:16
**prevents** 48:13
**previously** 7:24
**prices** 56:1
**primarily** 24:3 24:10
**principle** 12:20 52:25 53:9,10
**prior** 10:8 52:22
**prioritizing** 31:18
**priority** 19:14 29:24,24
**probably** 19:5 24:20 29:12
**problem** 34:3
**proceedings** 16:22 60:23 61:4
**process** 16:3 17:11 19:9 22:3,8,10,19 23:8 24:22 29:18 30:2 31:2 32:20 36:1,6 46:4,13 47:20 52:6
**processed** 23:5 52:2
**processes** 19:18 21:15
**processing** 18:9,10 24:18 28:25
**program** 16:1 16:1 19:7 29:8
**programming** 21:24
**prohibition** 57:20
**prohibits** 34:23

**prompt** 9:17
**proposed** 8:6 15:25 16:8
**prosperity** 19:17
**protect** 27:11
**protecting** 19:16
**protection** 3:1 4:13 5:6
**protest** 24:2 47:20,21 58:1 58:4
**provide** 8:18 15:18 20:25 60:7
**provided** 6:18 6:22 24:8 44:19 47:10
**provides** 9:16 11:7 12:11,15
**provision** 47:14 48:7 55:4
**provisions** 58:1
**purported** 11:17
**push** 5:22
**pushed** 6:3
**pushing** 29:21
**put** 5:10 17:1 21:22 31:11 36:19 42:17

**q**

**question** 17:4 25:22 32:4,5 33:21,25 35:2 35:10 36:16 38:3 40:6,11 43:21 49:16 50:1 51:14
**questions** 5:10 6:6 16:24,25 17:1 43:8,12 43:14 46:22
**quick** 8:18
**quickly** 14:8 29:20 44:14
**quite** 21:20 49:15 56:16
**quotation** 31:5

**r**

**r** 1:23 2:1 4:1 61:1
**radio** 48:5
**raise** 4:19 43:13
**raised** 48:19,23
**ran** 44:22
**rate** 45:10,13 59:22,24 60:1
**rates** 56:7,11
**rather** 7:18 16:4 21:8 59:4
**reaches** 51:1
**read** 34:9,17 60:17
**readily** 44:12
**reading** 6:9 30:25 54:3
**ready** 26:5 35:23
**real** 26:17 31:3
**really** 17:10,20 19:1,3 24:9,9 27:20 28:9,9 28:10 29:22 32:18 33:6 37:18 38:13,16 39:10 41:21 44:14 45:17 47:11 50:1 54:16 57:22 59:17,18
**reason** 27:9 41:7 55:5
**reasoning** 15:24
**reasons** 54:15 54:24 55:10 56:12
**receive** 13:25 14:13 21:14
**received** 51:20
**receiving** 22:11
**recognize** 40:18
**recognized** 55:13
**recognizes** 12:14
**recommend** 6:8
**recon** 22:24 23:24 28:7
**reconciliation** 22:23 23:2,25 28:3 29:10
**reconciliations** 22:23
**recons** 29:9
**record** 4:6,24 24:12 28:10,12 28:20 38:13 61:4
**recorded** 30:20
**reference** 58:8
**refund** 6:20,22 8:1,5,11,12,16 9:10,12,17 12:12 13:2,7,8 14:3 16:14 17:7 18:12 19:5 22:4,8,16 22:21 37:3 40:18 42:3 54:2,6,17 55:15 58:23
**refunded** 7:3 7:20 9:24 11:4
**refunding** 15:7 46:13
**refunds** 7:14 8:8,15 9:22 10:7,8 13:25 16:3,18 18:11 18:14 22:14 30:2 31:2 41:22 56:6
**regular** 50:15
**regularly** 44:8

**reinhart** 2:23
**rejected** 53:14
**related** 7:24
**relationship** 7:4,7 11:22,24 11:25 12:4,23 17:21
**release** 35:10
**reliance** 54:10
**relief** 35:4,14 49:5,8,13,18 55:13 56:3,19
**reliquidate** 10:18 14:17,21 26:1 32:3 40:8 40:12 41:8 43:25 52:22 53:12,22 58:4 58:7
**reliquidation** 6:19 10:3,5,18 11:9 15:18 20:1 35:19 47:16 48:2,7 49:12 53:15,18 53:20,24 54:1 54:6,8,20 56:19 57:22 58:1,9,12,15
**reliquidations** 11:13
**rely** 54:8
**remain** 30:10
**remaining** 29:9
**remains** 22:1 23:24
**remand** 34:11 34:18
**remarks** 6:11 34:6
**remedial** 49:7
**remedy** 13:2 15:3 58:24 59:18 60:2
**remember** 43:20
**remind** 26:19
**removal** 9:24
**remove** 21:25 30:13,16
**repeated** 12:21
**represent** 25:10
**representing** 25:9
**represents** 18:6 22:24 23:12
**require** 42:6 56:8
**required** 42:21
**requirements** 32:10
**requires** 54:19
**resources** 7:21
**respect** 30:14 33:15 52:10
**respectfully** 34:8
**responses** 37:6
**responsibility** 8:5 12:14 29:25
**responsible** 19:13
**rest** 21:4 31:4 36:14
**result** 6:20,24 14:25 15:21
**resulted** 15:1 19:20 22:15 24:23 48:12
**retain** 40:19
**return** 12:15 13:9 15:13 42:13,25
**returned** 7:22
**reverse** 12:6
**reversed** 12:18
**reviewing** 17:15 21:16
**richard** 1:24 4:3
**right** 4:19 17:14,23 18:10 18:18,25 19:3 19:10,23 20:3 20:12,17,19,21 20:23 21:16,20 21:22,23 22:1 22:6,22 23:7 23:15 24:5,10 24:14,21 26:16 27:25 28:3,5,6 28:13,18,23,23 28:23,24 29:8 29:19,20 31:10 31:11,11 36:3 36:16 37:13,16 39:16 40:4,25 41:5 43:16 44:17,23 45:4 45:9,22 46:3,9 46:10,11,20 51:5,6,18 52:9 59:13
**rights** 44:14 46:14
**risk** 29:11
**road** 61:21
**roh** 2:8 52:12 52:15 56:23 57:1 58:20 59:1,5,7,9,13 60:6,10,14
**rule** 46:25 47:18 48:3,24 49:1,4,9 52:18 57:7 58:16
**ruling** 6:24 14:15
**run** 28:13 29:10
**running** 10:24 10:24
**runs** 11:14

**s**

**s** 2:1 4:1,25
**saying** 25:18 25:23 31:13 34:6,22 37:23 39:8,13 40:7 40:17 42:3,23 43:20 53:10,19 53:21 55:15 57:19 60:11

**says** 16:17 34:25 35:1 36:20 54:7,25 59:16,16
**schedule** 32:20
**scheduled** 7:24 23:6
**scheme** 48:6,6 53:24 54:6 58:5
**scott** 8:25 9:4 19:22 29:25
**scrutinizing** 32:8,8
**seated** 5:1
**second** 12:17 13:18 21:6 25:22 32:5 38:23
**section** 39:4 41:10,11 47:5 48:17,22 52:17 52:18,24 53:25 57:24 58:2
**see** 24:10 36:8 57:6
**seeking** 13:6
**seem** 59:3
**seemed** 33:3
**seems** 39:24 41:20
**seen** 40:11
**sees** 58:24 59:14
**selections** 1:6 2:4 4:4
**send** 18:20
**sense** 39:5 46:17,18 54:16
**sent** 8:16 18:14 18:23 22:9
**sentences** 57:22
**separate** 43:21
**separated** 28:17
**series** 16:9
**seriously** 47:8
**service** 9:1,5 14:21,23 17:4 17:12 31:17 47:23
**session** 4:3
**set** 38:13,19 43:5 55:12
**settle** 5:20
**settled** 7:19
**settlement** 5:15 5:17,19 8:2
**seven** 47:5
**several** 54:23
**share** 42:7
**shares** 16:17
**shas** 32:20
**shinyei** 41:9 48:15,15,25 49:6,7 53:14 54:7 57:8,19 57:22
**show** 30:12 42:14
**showed** 24:16
**sign** 20:25
**signature** 61:6
**silence** 53:15 54:8,10
**similar** 39:5
**simply** 36:21 40:12 41:7,8 41:22,23 42:23 46:19 54:5
**sincere** 54:16
**single** 20:10 21:25 22:10
**singles** 11:5
**sinzdak** 2:8 4:8 4:8 16:25 30:15,17,22 32:15 33:23 39:19,21 40:4 40:5,25 41:3 43:20 52:12,15 56:23 57:1 58:20 59:1,5,7 59:9,13 60:6 60:10,14
**sinzdak's** 46:22 49:16
**sitting** 5:12 6:11
**situation** 31:10 34:7 36:21 37:1 42:18 54:4 58:16
**six** 22:16
**slice** 28:11
**small** 13:21 16:15 20:3,4,9 24:6,11,17,18 25:17 43:7
**smaller** 13:16
**smith** 3:6 4:12 4:12 49:24 50:5,11,16,17 50:24 51:5,9 51:13,17,23 52:1,5,8
**sole** 26:12
**solely** 15:4
**solemnly** 4:19
**solutions** 61:20
**somebody** 59:15
**sonya** 61:3,8
**soon** 12:21 39:11 46:3 54:22
**sophisticated** 27:10
**sorry** 27:16 44:2 59:1
**sort** 5:15 33:7 42:8 46:18,21 49:3 56:14 58:15
**sought** 11:22
**sounds** 16:4
**space** 17:19 47:11,12
**spaces** 28:17
**speak** 29:1 30:19 45:5
**speaking** 50:11
**speaks** 10:2
**specialist** 17:15 21:15

**specifically** 47:9 55:7
**specter** 37:21
**spot** 5:11 17:2
**stage** 60:2
**stages** 9:20
**stake** 38:2
**standards** 34:13,20
**standing** 27:2
**stands** 35:17
**start** 17:8 28:6 50:9
**started** 17:11 29:11 48:2
**starting** 4:6
**state** 4:6,23
**stated** 57:25
**statement** 58:25 59:2,4
**states** 1:1,9 2:11,19 3:2 4:2 4:5 6:17 13:19 37:4 60:5
**station** 2:13
**stats** 23:9
**status** 46:16
**statute** 27:18 47:8,18 54:13 57:25 58:5,9 58:10
**statutes** 42:5 47:12,24
**statutory** 32:8 40:11 47:10,13 47:25 48:6,6 48:12 49:12,13 53:11,11,15,24 54:6,8,10 55:4
**stay** 44:17
**stayed** 16:8
**step** 18:11 49:3
**steps** 17:5,7
**stipulate** 15:16 36:22
**stipulation** 15:23,23 16:5 39:10 53:5
**stood** 43:19
**stop** 50:9,22 51:12
**stopped** 10:11
**straight** 38:13
**straighten** 43:23
**strategic** 29:14
**strong** 54:25
**structured** 58:10
**study** 24:15
**subject** 47:1
**submit** 21:13
**submitted** 8:11 13:18 31:1
**submitting** 25:7
**subsequent** 10:1 15:1
**sudden** 37:18 37:21
**sues** 59:15
**suffering** 11:1 11:2
**sufficiently** 12:20
**suggest** 59:3
**suggested** 8:17
**suggests** 27:7
**suite** 61:22
**suits** 7:13
**summary** 20:8 20:8 53:5
**support** 37:25
**supreme** 6:24 7:1,3,9,22 9:9 10:16 11:15 12:1,2,23 14:15 15:13 34:3,20 40:14 50:12 60:3,6
**sure** 19:13,14 25:16 28:25 29:19,19 31:24 33:15,21 38:24 54:9 57:10,15 58:19
**surprise** 37:7
**susan** 4:25 28:15,15,15,16
**suspended** 8:9 17:6 60:19
**suspension** 6:14,16 9:25 16:23 30:13,16 32:17 42:17
**swear** 4:18,20
**switch** 36:2
**sworn** 5:8
**system** 6:7,10 7:17 8:19,22 8:23 9:3,7,13 9:16,17 10:7,9 13:9,23,24 14:2 15:11 16:2 19:7 21:7 22:2 24:13 25:2 31:2,5,15 32:18 35:18,20 35:23 36:18,19 42:21 43:5 54:22
**systems** 28:21

**t**

**t** 61:1,1
**tactical** 29:15
**take** 6:1 8:7,8 9:14 13:24 19:8 25:15 38:18,20 47:8 47:9 50:15 51:4 56:16
**taken** 11:3 13:15 17:5,7 25:13 26:24 49:17 50:2,20 51:15
**takes** 22:5
**talk** 16:22 30:12
**talking** 24:19 26:9,14 36:10 36:11,13 38:11 41:5 51:4
**talks** 58:11
**target** 52:23,24
**tariff** 55:8

**tariffs** 7:6,10 12:3 54:5,17 55:16 56:2,5 60:8
**task** 11:12
**tax** 58:22
**taxpayers** 11:2
**team** 29:3
**teams** 29:21
**technology** 17:19
**tell** 14:22 19:5 24:24 29:2,21 32:13 35:12 49:25
**telling** 25:16
**template** 21:1 21:2
**ten** 52:3
**tens** 14:1,10
**terms** 10:2,4 25:8 30:24 48:13
**terrible** 26:15
**testimony** 4:20 27:12 40:17
**text** 32:8
**thank** 4:14 5:2 5:7 6:7 27:23 30:4,6,8 39:21 40:3,4,5 58:18 58:20 60:14,15
**thanked** 24:22
**thankful** 24:22
**that'd** 28:1
**thing** 9:6 17:8 20:2,10 24:8 28:9 31:25 43:7 54:7
**things** 16:9 19:4 20:21 29:10,22 37:8 43:11
**think** 15:6 17:8 17:25 19:1 22:13,20 24:9 24:20 26:13,15 26:17 27:6 29:18 30:1,15 30:17,22,23 31:5,17,22,25 32:3,10,16 33:5,8,10,13 34:3 35:22,25 36:3 38:12,14 39:3,10,11,16 40:5 41:3,4,8 41:13,18,19 42:1,13,16,19 43:3,8,20 44:6 44:6 50:20 52:16 53:9,14 53:16,23 54:2 54:11,12,20,23 55:5,10,14 56:11,14 59:11
**thinking** 50:8
**third** 55:17
**thomas** 4:15,16 4:22,25 8:25 9:4 13:18 16:20 25:23 28:15,15,16,16 37:11 41:4 44:11 47:6
**thought** 15:9 19:9 22:18 24:24 33:3,20 33:23 37:18,22
**thousands** 12:24 14:1,4,5 14:5,10
**three** 17:23 23:6,18 25:24 27:25 28:22 35:18,21 37:1 47:11,24
**throw** 36:2
**tied** 27:7 38:3 38:5,6
**time** 8:14 9:23 10:11,13 24:21 29:12 30:15 31:4 60:13
**timeline** 28:4
**timely** 46:15
**times** 41:20
**title** 5:3 47:17
**today** 5:15,20 5:25 6:8,12 9:4 13:19 26:13 30:23 31:14 37:14,17 42:1 44:20 47:6 48:13 50:13
**together** 28:17
**told** 34:16
**took** 7:16 10:15,16 22:7 22:14 53:8
**tool** 12:12 15:20
**tooth** 8:20
**total** 24:15 26:10 45:21 46:12
**totally** 43:21
**track** 18:15
**trade** 1:1,13,25 2:18 4:3 5:5 7:23 12:25 17:13,21 19:8 19:11,14 20:18 21:17 24:19
**trading** 55:18 55:20
**traditional** 55:3
**traditionally** 10:6
**transcript** 61:4
**transmit** 20:8
**treasury** 8:16 11:1 18:12,14 18:21,24,24 22:9
**trouble** 38:18
**troubled** 40:6
**true** 4:15 50:16 61:4
**trump** 11:15
**truth** 4:21,21 4:21
**trying** 49:14
**turn** 5:25 54:15

**turned** 12:7
**turns** 20:14
**two** 21:21 22:22 23:6,18 50:4 54:15 57:22
**type** 58:4
**types** 29:9

**u**

**u.s.** 1:13,25 2:10,18 3:1 4:12 5:5 17:12
**u.s.c.** 47:12,14 47:18 49:7 57:24
**ultimately** 49:8
**unappealable** 35:11
**unconstitutio...** 56:9
**unconstitutio...** 56:11
**under** 8:24 27:5 38:20 41:10,11 52:24 54:23 56:18 57:19 58:1
**understand** 12:10 30:24 32:1 34:5 36:9 37:9 39:8 42:12 43:2 49:15,21 51:22
**understanding** 4:15 57:13
**understands** 21:7
**understood** 13:22 25:1,23 37:22
**uniform** 56:5 58:23
**uniformity** 55:9 56:4 58:21,21 59:5 60:1
**uniformly** 55:8 60:4
**unintended** 15:9
**unique** 12:21
**united** 1:1,9 2:11,19 3:2 4:2 4:5 6:17 37:4 60:5
**universal** 11:14 34:12,19 34:23 35:15
**universality** 33:4
**universe** 38:7
**unlawful** 13:2 36:20 56:2 59:16,17,18
**unlawfully** 6:23,25 7:2,11 7:17,19 8:1,5 9:10,23 12:3 12:12 40:19 42:24 54:5,17 60:4
**unliquidated** 19:25 27:3 44:24 45:22
46:12,12 50:25 51:19
**unprecedented** 17:22 19:4
**update** 18:13
**use** 9:16,16 20:19 28:23 39:7 44:24 46:23 49:11 51:24
**used** 10:17 22:18 25:2 44:13 49:12
**useful** 5:13,16 5:23 6:9 32:11 43:8
**using** 20:24 35:20 57:21

**v**

**v** 1:8 11:15
**v.o.s.** 1:6 2:4 4:4,8 11:21 12:6 27:5
**vaguely** 57:23
**valid** 38:12,15
**value** 17:16
**various** 9:19
**veritext** 61:20
**versus** 4:5 23:10,11 27:3
**view** 9:15 11:20 34:13,25 35:7,9 36:4 56:8
**volume** 19:4
**voluntarily** 14:23 40:8
**voluntary** 9:13 9:14 10:17 13:23 14:18,20

**w**

**wait** 21:6
**wander** 42:8,9 42:10,10
**want** 25:18 26:8,18 27:24 28:19 31:6,11 31:24 32:12,14 35:13 38:8,13 38:16 41:14 42:2,13 45:20 52:15 53:1 54:15 55:11 56:17
**wanted** 19:22 19:22 37:19 55:6
**wants** 9:12 12:16 15:12,21 31:14 37:4 40:1,18 57:4
**washington** 2:6,14 3:4 6:1
**way** 5:8 9:21 15:14 16:13 19:10 20:20 21:11 22:19 30:1 37:19 39:7,13,23 53:21
**ways** 33:13 56:14
**we've** 5:8 18:4 18:13 29:18

32:7,8 49:19 51:17,20
**web** 20:19,24
**week** 18:20 44:23
**weeks** 22:16 28:5
**went** 7:21 22:7 49:6
**whatsoever** 15:22
**wherewithal** 13:13
**wide** 56:19
**willing** 27:11 27:13
**willingness** 13:17
**win** 36:19 39:16
**wishes** 13:7,7
**withdraw** 36:18
**witness** 4:25 5:2,4 17:7 18:2 18:4 20:17 21:12 23:21,23 25:4,15 26:3 27:24 28:2 30:4,6,8 44:19 45:4,7,9,12,23 46:1,5
**wonder** 38:16
**wondering** 25:12 38:17 45:2
**words** 6:22
**work** 8:23 17:18 24:5 29:3 39:11
**worked** 9:2 13:9 33:16
**working** 17:15 19:2 23:8 28:2 29:3 31:5 32:18
**works** 15:11
**world** 36:25 39:23
**worried** 41:23
**worry** 40:22
**worse** 31:10
**worth** 8:14 17:24 18:7
**write** 33:11
**written** 59:11
**wrong** 28:19 33:2,20 41:18 41:20 52:13
**wrote** 10:4

**x**

**x** 1:4,11 43:20

**y**

**yeah** 25:12 27:1 33:1 34:18 44:4,10 46:21 58:19 59:6
**year** 20:11 22:14,15 27:19 39:12
**years** 17:14,21 47:2,4,5 48:9 48:10,15 50:4
**yelling** 22:20
**york** 1:15 2:5 2:21

**z**

**zenith** 48:4