IN THE UNITED STATES COURT
OF INTERNATIONAL TRADE
Before Honorable Richard K. Eaton, Judge

| | |
|---|---|
| V.O.S. SELECTIONS, INC., *et al.*,<br><br>                    Plaintiffs,<br><br>v.<br><br>DONALD J. TRUMP, *et al.*,<br><br>                    Defendants. | Case No. 25-00066-RKE |

**Reply Brief in Support of
Plaintiff's Motion for Class Certification**

Three crucial facts are undisputed:  First, the Supreme Court held that the International Emergency Economic Powers Act ("IEEPA") does not authorize the President to impose tariffs.  *Learning Res., Inc. v. Trump*, 607 U.S. 229, 255 (2026). Second, the government has an obligation to refund *all* the IEEPA tariffs it unlawfully collected.  *See* Dkt. No. 89 at 1.  And third, while the government built the Consolidated Administration and Processing of Entries ("CAPE") program to meet its refund obligation, it has refused to open CAPE for all importers who paid unlawful IEEPA tariffs.  Instead, the government has insisted that it cannot issue refunds through CAPE for any entry that liquidated more than 90 days ago absent an individualized court order.  Moreover, the government has refused to suspend the liquidation of entries with IEEPA tariffs, meaning that every day, more and more entries become ineligible for CAPE processing and more and more importers will be forced to file costly and burdensome suits to obtain their refunds.

This situation is untenable, and Federal Rule of Civil Procedure 23(b)(2) provides a ready means for addressing the problem.  Under Rule 23(b)(2), a court may

1

certify a mandatory class where a defendant "has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." That fits this case to a T. The government has arbitrarily refused to grant CAPE access to those with entries that liquidated more than 90 days ago, and this Court can redress that harm by issuing an injunction requiring the government to permit CAPE access to all importers who paid unlawful IEEPA tariffs—regardless of when their entries liquidated.

The government offers two responses; both fail. First, the government asserts that Plaintiff's request for class certification comes too late because the merits have already been decided. Def.'s Resp. at 4-8. But the government has no textual basis for this argument. Rule 23(c)(1)(A) merely requires that class certification be decided as "early" as "practicable," and here Plaintiff filed its motion for class certification as soon as it became clear that class relief would be necessary. The government therefore tries to rely (Def.'s Resp. at 5) on the prudential rule against "one-way intervention," under which courts typically resolve class certification issues before the merits to ensure that absent plaintiffs cannot wait to see the outcome before deciding whether to join a class. But that kind of gamesmanship is not at stake here. For one thing, Rule 23(b)(2) classes are mandatory, so parties have no choice whether to opt in. *See Gooch v. Life Invs. Ins. Co. of Am.*, 672 F.3d 402, 432-433 (6th Cir. 2012).

2

For another, gamesmanship of this kind is only possible where the relevant claims can be litigated in multiple forums, and these IEEPA refund claims cannot. It might well be unfair to certify a class after a plaintiff wins on the merits if doing so deprives the defendant of an opportunity to litigate against other plaintiffs in different courts and before different judges who might reach different outcomes. But the CIT is the *only* court with jurisdiction over these IEEPA refund claims, and this Court has made clear that only one judge will hear all of these cases. Accordingly, post-merits class certification does not deprive the government of anything; it merely ensures that the same judge does not have to do the same thing over and over again in thousands of different cases. The government offers no persuasive reason why its more burdensome approach is the right one.

Second, the government contends that a Rule 23(b)(2) class is unavailable because the requested relief is not final. Def.'s Resp. at 8-14. But the government's proposed definition of finality is flatly inconsistent with circuit precedent and fundamentally misunderstands the dispute. Plaintiff asks this Court to resolve the question whether the government must make CAPE available to all importers who paid unlawful IEEPA tariffs, regardless of when their entries liquidated and whether they filed an individual suit. The requested injunction provides final relief with respect to that legal dispute; any administrative processing through CAPE that follows resolution of that dispute is incidental. And, tellingly, the government does not argue that the *legal* claims of any of the prospective class members differ in any way that would prevent class-wide resolution of this matter.

At bottom, the government asks this Court to erect an inefficient procedural barrier to class members' claims that is plainly inconsistent with Rule 23(b)(2), making it harder for importers to obtain their refunds and easier for the government to retain as much of the $166 billion in illegally collected IEEPA tariffs as it can.  The law does not demand that absurd result.  The Court should grant Plaintiff's motion and certify the proposed class.

## Argument

### I.     The Request For Class Certification Is Timely.

There is no textual barrier to class certification after a merits determination. Federal Rule of Civil Procedure 23, which is essentially the same as USCIT Rule 23, *Baxter Healthcare Corp. v. United States*, 925 F. Supp. 794, 797 n.4 (Ct. Int'l Trade 1996), imposes no deadline for certification.  Instead, it provides that a court should decide whether to certify a class "[a]t an early practicable time after a person sues." Fed. R. Civ. P. 23(c)(1)(A).  While that is usually before a merits determination, in some cases—like this one—the earliest "practicable time" arises after the merits have been decided because of the way the litigation unfolds.  Here, Plaintiff was unaware that the federal government would draw an arbitrary distinction in issuing refunds of unlawfully collected IEEPA tariffs until the government firmly committed to that position in writing on May 29, 2026, *see* Dkt. No. 88 at 2, and appealed this Court's March 27, 2026 order requiring the reliquidation and refund of *all* IEEPA tariffs on June 2, 2026, *see* Order at 1, *Atmus Filtration, Inc. v. United States*, No. 1:26-cv-1259 (Ct. Int'l Trade Mar. 27, 2026), Dkt. No. 50 ("*Atmus* Order"); Dkt. No. 91.  Until then, there remained a possibility that ongoing refund-related settlement negotiations

might yield a different result. As soon as it became clear they would not, Plaintiff promptly filed a motion for class certification under Rule 23(b)(2). That motion was therefore filed as soon as "practicable," and this Court has acted expeditiously to resolve the motion at the "earl[iest]" possible date. Fed. R. Civ. P. 23(c)(1)(A).

Because the government lacks a textual basis for its assertion that the class certification motion is untimely, it rests its objection on the judge-made, prudential rule against one-way intervention. Under that rule, courts typically resolve class certification before the merits because it would be unfair to allow absent class members to wait to see who wins, joining only if there is a favorable result. *See Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 547 (1974). In Rule 23(b)(3) class actions, where class members have a right to opt out, that is a valid concern. But it is of no moment here in a mandatory Rule 23(b)(2) class where class members have no opportunity to exclude themselves, dispelling concerns about gamesmanship.

*Gooch v. Life Investors Insurance Co. of America*, 672 F.3d 402 (6th Cir. 2012), is instructive. There, the Sixth Circuit expressly rejected the government's timing argument: "[W]e find no support for applying the prohibition on one-way intervention to Rule 23(b)(2) class certifications, in which class members may not opt out and therefore make no decision about whether to intervene." *Id.* at 433. Without a choice to intervene, there can be no one-way intervention and no gamesmanship.

The government attempts to distinguish *Gooch* because it involved a preliminary injunction rather than a merits decision. Def.'s Resp. at 7-8. That distinction is unavailing. *Gooch*'s reasoning that there is no one-way intervention

5

concern in Rule 23(b)(2) class actions follows from Rule 23(b)(2)'s mandatory character. That feature does not turn on whether a case is at the preliminary injunction or final merits stage. To be sure, there is language in *Gooch* and the other case the government cites, *Paxton v. Union National Bank*, 688 F.2d 552 (8th Cir. 1982), that suggests there *may* be "problems of judicial economy" and "fairness" if there is "a *deliberate* deferral" of class certification until after a full trial on the merits. *Id.* at 559 (emphasis added) (citation omitted); *see Gooch*, 672 F.3d at 433 (citing *Paxton* and making the same point). But those concerns do not apply here.

First, there was no deliberate deferral, nor does the government meaningfully claim there was. The government asserts that Plaintiff should have known the government would refuse to reliquidate finally liquidated entries absent individualized court orders. But the government's current position about the remedy—which the government included in a written submission for the first time on May 29, 2026—was hardly anticipable at the outset of this litigation. At that point, Plaintiff had no reason to suspect that if it won on the merits, the government would agree to refund well over 90% of IEEPA tariffs through an administrative system, while refusing to allow access to that system for entries that liquidated more than 90 days ago in the absence of an individualized court order. And Plaintiff certainly could not have anticipated that the government would set up an administrative system that would be open to only certain categories of entries at the outset—meaning that every day more entries would pass the 90-days-past-liquidation mark, rendering them ineligible for CAPE.

Indeed, no one could have anticipated the government's bizarre position. The government itself *still* has not offered any persuasive basis for drawing its seemingly arbitrary line, which finds no footing in any statute or remedial doctrine of which Plaintiff is aware. Nor do any of the government's citations (Def.'s Resp. at 6-7) establish that the government committed to this position before May 29, 2026. If anything, the government led everyone to expect the opposite. To obtain a stay pending appeal, it told the Federal Circuit that a stay "would not cognizably harm plaintiffs" because "[i]f tariffs imposed on plaintiffs during these appeals are ultimately held unlawful, then the government will issue refunds to plaintiffs, including any post-judgment interest that accrues." Mot. for Stay Pending Appeal at 25, *V.O.S. Selections, Inc. v. Trump*, No. 25-1812 (Fed. Cir. May 29, 2025), Dkt. No. 6. Having secured that stay by assuring the courts that refunds would follow a merits victory, the government cannot now fault Plaintiff for litigating the merits first.

This Court's own refund orders further confirm that Plaintiff sought class certification as soon as "practicable." On March 27, 2026, this Court correctly ordered the government to process and pay refunds on *all* IEEPA tariffs—no exceptions. *Atmus* Order, *supra*, at 1. The government did not appeal that order until more than two months later, on June 2, 2026, Dkt. No. 91, and during those months, the government participated in settlement conferences designed to resolve the refund issues. Plaintiff had no reason to short-circuit those settlement discussions through a class certification motion. And once the government appealed, Plaintiff sought class

certification out of an abundance of caution to obviate the need for drawn-out litigation over *CASA*'s application.

Second, this case does not present the sort of "fairness" and "judicial economy" concerns that typically prompt pre-merits class certification. Fairness concerns arise from gamesmanship. There was none here, and there is no opportunity for it going forward. Plaintiff did not deliberately delay bringing this motion; rather, the motion is a response to the government's arbitrary decision to deny class members the remedy *Learning Resources* entails. And because membership in the proposed class is mandatory under Rule 23(b)(2), class members cannot make a strategic choice to opt out.

Further, while post-merits class certification might sometimes be used as an unfair means of preventing other trial courts from weighing in on an issue, that is not a problem here because the CIT is the *only* court with jurisdiction to hear these cases. *See Learning Res.*, 607 U.S. at 240 n.1. And this Court has already indicated that all IEEPA refund cases will be before the same judge. Accordingly, there is no risk that class certification will inequitably deprive the government of an opportunity to litigate refund claims in other courts or before other judges. To the contrary, class certification will benefit both this Court *and* the government by eliminating the need for costly and burdensome individualized proceedings that will inevitably end in the same result for all.

Nor does the government identify any prejudice it has suffered. It points to no merits issue it would have litigated differently, evidence it lost, or settlement choice

8

it made in reliance on the absence of a class. The government instead relies on small snippets of *Gooch* and *Paxton* that identify abstract problems that *could* arise in this posture. Yet it ignores the Sixth and Eighth Circuits' analyses of those fairness concerns. *See Gooch*, 672 F.3d at 433; *Paxton*, 688 F.2d at 559. In neither case did the court find prejudice. The same is true here.

Finally, class certification at this stage presents no problems of judicial economy. As in *Gooch,* the government "has not demonstrated that . . . issues of judicial economy . . . weigh in [its] favor." 672 F.3d at 433. It does not even attempt to argue that judicial economy has been hampered *in this case* by not certifying a class before the merits ruling. That is hardly surprising given that considerations of judicial economy cut in the opposite direction. Accepting the government's position would foist needlessly duplicative litigation on putative class members, this Court, and the government itself. Rule 23(b)(2) is a procedural vehicle to avoid precisely that kind of problem.

## II. The Requested Injunction Provides Final Relief To The Class As A Whole.

### A. Finality turns on the legal dispute the injunction resolves.

The government's finality argument begins by misdescribing the requested relief. Plaintiff does not seek an order granting mere "access" to a website. Def.'s Resp. at 8-9. It seeks an order removing a uniform legal barrier—the government's refusal to open the CAPE system to all importers who paid unlawful IEEPA tariffs, regardless of when their entries liquidated or whether they filed an individual suit. To be sure, once this legal barrier is removed, class members will then submit their

claims through CAPE. But this subsequent mechanical tallying of the refund amount owed—a calculation governed by fixed rules—is incidental to the requested relief.

The government treats relief as "final" only if nothing remains to be done after the injunction issues—that is, only if every class member has already received their full refund. Def.'s Resp. at 8-10. But neither Rule 23 nor the cases it cites impose that requirement. Finality does not require the injunction itself to perform every administrative act needed to implement the judgment. It requires only that the injunction provide uniform, final relief on the class-wide legal claim. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). That is exactly what the injunctive relief sought here would do. It would prohibit the government from categorically withholding CAPE access from the class members.

In response, the government seeks to rely (Def.'s Resp. at 12-13) on a mischaracterization of *Johnson v. Meriter Health Services Employee Retirement Plan*, 702 F.3d 364 (7th Cir. 2012) (Posner, J.), and *Amara v. CIGNA Corp.*, 775 F.3d 510 (2d Cir. 2014). In *Johnson*, the Seventh Circuit approved a Rule 23(b)(2) class where the court would resolve the governing legal question—what the pension plan required—before any resulting benefits would be calculated by applying the reformed plan to each pensioner's employment records. 702 F.3d at 371. That is precisely analogous to this case. The government's only attempt to distinguish *Johnson* is based on the complexity of the calculation of the refunds. Def.'s Resp. at 12-13. But that is immaterial to the Rule 23(b)(2) analysis, which turns only on the finality of relief on a legal claim that is uniform across a class.

10

The government makes the same mistake with *Amara*. There, as in *Johnson*, the monetary consequences flowed from a uniform equitable remedy—reformation of the plan—and did not defeat Rule 23(b)(2) certification. 775 F.3d at 523-524. So too here. Once this Court decides whether the government may categorically exclude class members from CAPE absent individualized court orders, CBP will apply that ruling to open up CAPE access, reliquidate entries, and issue refunds. Of course, different entries will yield different refund amounts, just as different pension records yielded different benefit amounts in *Johnson* and *Amara*. But that does not make the legal relief any less final or uniform.

The government's effort to rely (Def.'s Resp. at 9) on *Jamie S. v. Milwaukee Public Schools*, 668 F.3d 481 (7th Cir. 2012), is equally unavailing. There, the proposed injunction created a "hybrid IEP" process to determine, on a claimant-by-claimant basis, class membership, liability, and remedy. *Id.* at 489, 499. The relief sought here does none of those things. Plaintiff does not ask for procedures to determine class membership; the motion includes a definition of the proposed class. A liability determination has already been made in *Learning Resources*, as the government is quick to point out elsewhere in its Response. *See* Def.'s Resp. at 16. And the remedy sought—access to CAPE—is uniform and class-wide. Rule 23(b)(2) demands nothing more.

**B.    The administrative processing that will follow is incidental to the injunction.**

The government also fails in its attempt to recast the requested injunction as a request for individualized monetary relief. Def.'s Resp. at 10-14. Plaintiff asks this

Court to resolve one legal question for the class: whether all importers who paid

IEEPA tariffs are entitled to access CAPE, regardless of when their entries liquidated

or whether they brought an individual suit in this Court.  Answering that question

does not require resolving how much any particular importer should receive in

refunds.  Any refund amounts that eventually flow to class members will come from

CBP's reliquidation calculations.  Rule 23(b)(2) does not forbid that.  *See Dukes*, 564

U.S. at 360; *Johnson*, 702 F.3d at 371; *Amara*, 775 F.3d at 523-524.

The government introduces a red herring by emphasizing CAPE's complexity.

But all the examples the government points to (Def.'s Resp. at 9)—calculating

interest, determining the duties paid on submitted entries, and accounting for other

entry-specific circumstances—are administrative steps, not individualized

adjudications of legal entitlement.[1]  Only the latter matters under Rule 23(b)(2).

Further, even if administrative considerations were relevant, CAPE's

operational success to date refutes the government's argument.  The system has

successfully processed more than 24.4 million entries, accepted approximately

$121.75 billion in potential and certified refunds for processing, and completed

approximately $86.3 billion in refunds for Treasury disbursement.  Decl. of Brandon

Lord ¶¶ 4-5, *Euro-Notions Florida, Inc. v. United States*, No. 1:25-cv-595 (Ct. Int'l

---

[1] The government implicitly asserts that CAPE is an adjudicatory program because not every importer who submits a refund claim to CAPE is "necessarily eligible for one." Def.'s Resp. at 13.  That is not a concern here.  The proposed class comprises only importers who paid IEEPA tariffs for entries that "are not currently eligible for processing and refund through [CAPE]."  Mot. at 1.  And because all IEEPA tariffs were illegally collected, all members of the class are eligible for a refund.

Trade July 13, 2026), Dkt. No. 45.  These numbers show that CAPE is a mass-processing system, not a sequence of individualized lawsuits or mini-trials.

### C.    *Baxter* does not foreclose class certification.

The government asserts that *Baxter* supports its position because this Court declined to certify a Rule 23(b)(2) class in a case involving the unlawful Harbor Maintenance Tax.  Def.'s Resp. at 13-14.  But *Baxter* turned on two considerations that are conspicuously absent here.  First, by the time the *Baxter* Court considered whether to certify a class, the case had become "predominantly an action for monetary relief."  925 F. Supp. at 798.  Second, the Court had already entered injunctive and declaratory relief in *United States Shoe Corp. v. United States*, 924 F. Supp. 1191 (Ct. Int'l Trade 1995), leaving the *Baxter* Court "little doubt" that, if the decision were affirmed, the government would comply and "make refund[s] to the extent required by law."  925 F. Supp. at 798.  On that record, a Rule 23(b)(2) injunction was unnecessary.

Neither circumstance exists here.  Plaintiff does not ask this Court to calculate or award refunds.  Instead, it seeks an injunction removing the government's categorical bar to processing class members' entries through CAPE.  Class members could obtain relief by filing individual suits, but that incredibly inefficient avenue is the only alternative the government offers.  Dkt. No. 98 at 7.  That is nothing like *Baxter*, where Judge Restani found class treatment unnecessary because the existing injunction and expected government compliance provided a preferable remedial path.  Here, the government's proposed path requires thousands of identically situated

13

plaintiffs to bring identical claims for identical relief. That is exactly the needless waste of judicial and party resources that Rule 23(b)(2) is built to avoid.

## Conclusion

For the reasons set forth herein, Plaintiff respectfully requests that this Court certify the proposed class under Rule 23(b)(2).

Dated: July 22, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

14

## Certificate of Compliance

I, Neal Kumar Katyal, hereby certify that this brief complies with the 7,000-word limitation of the United States Court of International Trade set forth in Standard Chambers Procedure § 2(B)(1) because this brief contains 3,538 words.  In making this certification, I have relied upon the word-count function of the Microsoft Word processing system used to prepare this brief.

Dated: July 22, 2026

Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*

## Certificate of Service

I, Neal Kumar Katyal, one of the attorneys for Plaintiffs, certify that the foregoing document was filed electronically with the Court's Case Management/ Electronic Case Filing (CM/ECF) system on July 22, 2026.  The Court and/or Clerk of Court may serve and give notice to counsel by CM/ECF electronic transmission.


Dated: July 22, 2026                    Respectfully submitted,

/s/ *Neal Kumar Katyal*
Neal Kumar Katyal
Colleen E. Roh Sinzdak
Milbank LLP
1101 New York Ave. NW
Washington, DC 20005
202-835-7505
nkatyal@milbank.com
crohsinzdak@milbank.com

Jeffrey M. Schwab
Reilly W. Stephens
James McQuaid
Liberty Justice Center
7500 Rialto Blvd.
Suite 1-250
Austin, TX 78735
512-481-4400
jschwab@ljc.org
rstephens@ljc.org
jmcquaid@ljc.org

*Counsel for Plaintiffs V.O.S. Selections, Inc., Plastic Services and Products LLC d/b/a Genova Pipe, Microkits LLC, FishUSA Inc., and Terry Precision Cycling LLC*